STEVE MARSHALL
*Attorney General of Alabama*
Edmund G. LaCour Jr. (*pro hac vice* pending)
*Solicitor General*
James W. Davis (*pro hac vice* pending)
*Deputy Attorney General*
A. Barrett Bowdre (*pro hac vice* pending)
*Deputy Solicitor General*
Office of the Alabama Attorney General
  501 Washington Ave.
P.O. Box 300152
Montgomery, AL 36130
Telephone: (334) 353-2196
Fax: (334) 353-8400
E-mail: edmund.lacour@AlabamaAG.gov
       jim.davis@AlabamaAG.gov
       barrett.bowdre@AlabamaAG.gov

Paul Beard II (SBN 210563)
FISHER BROYLES LLP
  5670 Wilshire Blvd., Ste. 1800
Los Angeles, CA 90036-5653
Telephone: (818) 216-3988
Fax: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

*Attorneys for Proposed Defendant-Intervenor State of Alabama*

TIMOTHY C. FOX
*Attorney General of Montana*
Melissa Schlichting (SBN 220258)
*Deputy Attorney General*
Montana Department of Justice
  215 N. Sanders St.
P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-2026
Fax: (406) 444-3549
E-mail: MSchlichting@mt.gov

*Attorneys for Proposed Defendant-Intervenor State of Montana*

*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>DAVID BERNHARDT, U.S. Secretary of the Interior, *et al.*,<br><br>        Defendants. | Case No. 4:19-cv-05206-JST<br><br>**NOTICE OF MOTION AND MOTION OF THE STATES OF ALABAMA, ALASKA, ARIZONA *ex rel.* the ARIZONA GAME and FISH COMMISSION, ARKANSAS, IDAHO, KANSAS, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, UTAH, WEST VIRGINIA, and WYOMING TO INTERVENE AS DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS IN SUPPORT THEREOF.**<br><br>Date: February 26, 2020<br>Time: 2:00 p.m.<br>Place: Courtroom 6, 2nd Floor<br>Judge: Hon. Jon S. Tigar |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO INTERVENE

TO THIS HONORABLE COURT AND COUNSEL FOR THE PARTIES:

PLEASE TAKE NOTICE, pursuant to Civil Local Rule 7-2, that on February 26, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jon S. Tigar (Courtroom 6, 2nd Floor), the States of Alabama, Alaska, Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming, will and hereby do move to intervene as defendants in the above-entitled action.

With this Motion, the Proposed Defendant-Intervenors seek an Order from the Court permitting them to intervene in this action under Federal Rule of Civil Procedure 24. This Motion is supported by the accompanying Memorandum of Points and Authorities, the proposed Order, declarations from several Proposed Defendant-Intervenor States, and any oral argument the Court may allow. In accordance with Federal Rule of Civil 24(c), the Proposed Defendant-Intervenors have also attached a proposed Answer.

Counsel for the Proposed Defendant-Intervenors informed counsel for the parties about this motion, and counsel for the parties stated that the parties take no position on the motion.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO INTERVENE .......................................................... i

LIST OF DECLARATIONS IN SUPPORT ........................................................................ iv

TABLE OF AUTHORITIES ............................................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

I.      BACKGROUND .................................................................................................. 2

        A.      Several Proposed Defendant-Intervenors Challenge the Services'
                2016 Rules. .......................................................................................... 2

        B.      The Services Issue Revised Rules ........................................................ 4

                1.      Regulations for Listing Species and Designating Critical
                        Habitat, 84 Fed. Reg. 45,020…………… ........................................... 6

                2.      Regulations for Prohibitions to Threatened Wildlife and
                        Plants, 84 Fed. Reg. 44,753………… ................................................ 7

                3.      Regulations for Interagency Cooperation, 84 Fed. Reg.
                        44,976………. ............................................................................... 8

        C.      Plaintiffs Challenge the 2019 Rulemaking. ....................................... 10

        D.      The Proposed Defendant-Intervenor States Have Interests That Will
                Be Affected By This Action. ............................................................... 11

II.     ARGUMENT ................................................................................................... 14

        A.      The Proposed Defendant-Intervenors Are Entitled to Intervene as a
                Matter of Right. ................................................................................. 14

                1.      The Motion is Timely. .......................................................... 15

                2.      The Proposed Defendant-Intervenors Have Significantly
                        Protectable Interests Relating to This Action. ....................... 16

                3.      Plaintiffs' Challenge Threatens to Impair the Interests of the
                        Proposed Defendant-Intervenors. ......................................... 19

                4.      The Federal Defendants Cannot Adequately Represent the
                        Interests of the Proposed Defendant-Intervenors.................... 21

        B.      In the Alternative, the Court Should Grant the Proposed Defendant-
                Intervenors Permission to Intervene. ................................................. 23

III.    CONCLUSION ................................................................................................ 24

1

CERTIFICATE OF SERVICE ................................................................................................ 27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## LIST OF DECLARATIONS IN SUPPORT

1. Declaration of Christopher M. Blankenship, Commissioner of the Alabama Department of Conservation and Natural Resources

2. Declaration of Douglas Vincent-Lang, Commissioner of the Alaska Department of Fish and Game

3. Declaration of Jim DeVos, Arizona Game and Fish Department

4. Declaration of Scott Pugrud, Administrator of the Idaho Governor's Office of Species Conservation

5. Declaration of Jeffrey A. Chanay, Chief Deputy Attorney General for the State of Kansas

6. Declaration of Melissa Schlichting, Deputy Attorney General for the State of Montana

7. Declaration of James N. Douglas, Director of the Nebraska Game and Parks Commission

8. Declaration of John M. Masslon II, Assistant Solicitor General for the State of West Virginia

9. Declaration of Angela Bruce, Deputy Director of the Wyoming Game and Fish Department

1

## TABLE OF AUTHORITIES

2

### CASES

3

Pages

4

*Ala. ex rel. Steven T. Marshall v. Nat'l Marine Fisheries Serv.*,
   No. 1:16-cv-00593-CG-MU (S.D. Ala. Feb. 2, 2017) ........................................................ 2, 4

5

6

*Animal Legal Defense Fund v. Bernhardt*,
   No. 4:19-cv-06813-JST (filed Oct. 21, 2019) .......................................................................... 1

7

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ................................................................................................. 21

8

9

*Ariz. Cattle Growers' Ass'n v. Salazar*,
   606 F.3d 1160 (9th Cir. 2010) ................................................................................................... 3

10

11

*Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Transp.*,
   No. 2:11-cv-267-WKW, 2016 WL 233672 (M.D. Ala. Jul. 19, 2016) ................................... 18

12

*California v. Bernhardt*,
   No. 4:19-cv-06013-JST (filed Sept. 25, 2019) ......................................................................... 1

13

14

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) ................................................................................................... 16

15

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998) ................................................................................................. 22

16

17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ............................................................................................. 16, 20

18

19

*County of Fresno v. Andrus*,
   622 F.2d 436 (9th Cir. 1980) ............................................................................................. 16, 19

20

21

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
   698 F.3d 1101 (9th Cir. 2012) ................................................................................................... 9

22

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995) ................................................................................................... 22

23

24

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011 ..................................................................................................... 23

25

26

*Fund For Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ................................................................................................. 18

27

28

*Georgia v. U.S. Army Corps of Eng'rs,*
    302 F.3d 1242 (11th Cir. 2002) ....................................................................... 22

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) .......................................................................... 16

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) .................................................................. 23, 24

*Nat'l Farm Lines v. Interstate Commerce Comm'n,*
    564 F.2d 381 (10th Cir. 1977) ....................................................................... 22

*San Luis & Delta-Mendota Water Auth.,*
    747 F.3d 581 (9th Cir. 2014) .......................................................................... 10

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ....................................................... 15, 16, 19, 21

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) .......................................................................... 22

*Smith v. L.A. Unified Sch. Dist.,*
    830 F.3d 843 (9th Cir. 2016) .......................................................................... 15

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987) ...................................................................................... 21

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .................................................................... 21, 22

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972)....................................................................................... 21

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) .......................................................................... 15

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) ................................................................ 15, 16, 19

*United States v. Stringfellow,*
    783 F.2d 821 (9th Cir. 1986) .......................................................................... 21

*Vivid Entm't, LLC v. Fielding,*
    774 F.3d 566 (9th Cir. 2014) .......................................................................... 21

*WildEarth Guardians v. Jewell,*
    320 F.R.D. 1 (D.D.C. 2017).......................................................................17, 22

*WildEarth Guardians v. Nat'l Park Serv.*,
  604 F.3d 1192 (10th Cir. 2010) .................................................. 18, 19

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ...................................................... passim

## STATUTES

16 U.S.C. § 1532(5)(A)(i) ................................................................. 3, 20

16 U.S.C. § 1532(5)(A)(ii) ...................................................................... 3

16 U.S.C. § 1532(6) .................................................................................. 6

16 U.S.C. § 1532(13) ............................................................................. 11

16 U.S.C. § 1532(20) ............................................................................... 6

16 U.S.C. § 1533(d) ................................................................................. 7

16 U.S.C. § 1536(a) .............................................................................. 3, 8

16 U.S.C. § 1536(a)(2) ............................................................................. 3

16 U.S.C. § 1538(a) ................................................................................. 7

## REGULATIONS

50 C.F.R. § 17.31(a) ................................................................... 8, 13, 17

50 C.F.R. § 17.31(c) .............................................................................. 17

50 C.F.R. § 17.71(a) ................................................................................ 8

50 C.F.R. § 402.02 .............................................................................. 9, 10

50 C.F.R. § 402.14(c) ............................................................................ 10

50 C.F.R. § 402.14(g) ............................................................................ 10

50 C.F.R. § 402.14(h) ............................................................................ 10

50 C.F.R. § 402.14(l) ............................................................................. 10

50 C.F.R. § 402.17(a) .............................................................................. 9

50 C.F.R. § 402.17(b) ............................................................................ 10

50 C.F.R. § 424.11(b) .............................................................................. 7

50 C.F.R. § 424.11(d) .............................................................................. 7

50 C.F.R. § 424.11(e) .............................................................................. 6

50 C.F.R. § 424.12(b)(1-5) ....................................................................... 2

50 C.F.R. § 424.12(b)(2) ............................................................................................... 6

### FEDERAL REGISTER

43 Fed. Reg. 18,180 (Apr. 28, 1978) ............................................................................. 8

49 Fed. Reg. 38,900 (Oct. 1, 1984) ............................................................................... 2

71 Fed. Reg. 34,154 (June 13, 2006) ..................................................................... 12, 17

77 Fed. Reg. 76,740 (Dec. 28, 2012) .......................................................................... 14

81 Fed. Reg. 7214 (Feb. 11, 2016) ....................................................................... 3, 4, 9

81 Fed. Reg. 7414 (Feb. 11, 2016) ................................................................... 2, 3, 6, 20

83 Fed. Reg. 35,174 (Jul. 25, 2018) .............................................................................. 4

83 Fed. Reg. 35,178 (Jul. 25, 2018) .......................................................................... 4, 9

83 Fed. Reg. 35,193 (Jul. 25, 2018) .............................................................................. 4

84 Fed. Reg. 44,753 (Aug. 27, 2019) .................................................................. 1, 4, 7, 12

84 Fed. Reg. 44,976 (Aug. 27, 2019) .................................................................. 1, 4, 8, 14

84 Fed. Reg. 45,020 (Aug. 27, 2019) ................................................................... 4, 6, 7

### RULES

Civil Local Rule 7-2 ...................................................................................................... i

Fed R. Civ. P. 24 ...................................................................................................... i, 20

Fed. R. Civ. P. 24(a) ......................................................................................... 14, 16, 23

Fed. R. Civ. P. 24(a)(1) .............................................................................................. 20

Fed. R. Civ. P. 24(a)(2) .................................................................................. 14, 16, 19, 20

Fed. R. Civ. P. 24(b) ................................................................................................... 23

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................... 23, 24

Fed. R. Civ. P. 24(b)(3) .............................................................................................. 24

Fed. R. Civ. P. 24(c) ..................................................................................................... i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

The U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") recently promulgated three Final Rules addressing how the Services will implement the Endangered Species Act ("ESA"). *See* 84 Fed. Reg. 45,020, 44,753, and 44,976 (Aug. 27, 2019). The Final Rules come on the heels of the Agencies' settlement of litigation challenging rules they promulgated in 2016, which covered several of the same issues as the Final Rules, but had unlawfully expanded the Agencies' authority under the ESA.

Plaintiffs challenge the Final Rules as unlawful under the ESA, the Administrative Procedure Act ("APA"), and the National Environmental Protection Act ("NEPA"). *See* First Am. Compl. at 30-41, ECF No. 28. The Proposed Defendant-Intervenors—Alabama, Alaska, Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming—seek to defend the Final Rules. Many of these States worked to secure these sensible regulatory changes, both by challenging the 2016 rules and by supporting the new Rules during the notice and comment period. All these States stand to benefit from the Rules. Thus, if Plaintiffs are successful in invalidating the Rules or enjoining their application, the Proposed Defendant-Intervenor States will be harmed.[1] The clarity and predictability the Rules bring will be wiped away; the States will face unnecessary and unlawful regulatory burdens; and the ability of States, non-profits, and landowners to creatively cooperate to help at-risk species will be reduced.

This motion presents the following issues:

1. Whether the Proposed Defendant-Intervenors are entitled to intervene as of right in this case.

2. Whether the Court should grant the Proposed Defendant-Intervenors' motion for permissive intervention.

---

[1] There are two related cases pending before the Court that present similar challenges. *See California v. Bernhardt*, No. 4:19-cv-06013-JST (Sept. 25, 2019); *Animal Legal Defense Fund v. Bernhardt*, No. 4:19-cv-06812-JST (Oct. 21, 2019). The Proposed Defendant-Intervenors moved to intervene in *California v. Bernhardt* on December 9, 2019, and now move to intervene in the other two cases.

## I.     BACKGROUND

### A.     Several Proposed Defendant-Intervenors Challenge the Services' 2016 Rules.

On February 11, 2016, the Services issued two regulations that were challenged as unlawful by a coalition of 20 States: Alabama, Arkansas, Alaska, Arizona, Colorado, Idaho, Kansas, Louisiana, Michigan, Missouri, Montana, Nebraska, Nevada, the New Mexico Department of Game and Fish, North Dakota, South Carolina, Texas, West Virginia, Wisconsin, and Wyoming. *See* First Am. Compl., *Ala. ex rel. Steven T. Marshall v. Nat'l Marine Fisheries Serv.*, No. 1:16-cv-00593-CG-MU (S.D. Ala. Feb. 2, 2017), ECF 30.

The first challenged regulation concerned the designation of "critical habitat" for threatened or endangered species. *See* Listing Endangered and Threatened Species and Designating Critical Habitat; Implementing Changes to the Regulation for Designating Critical Habitat, 81 Fed. Reg. 7414 (Feb. 11, 2016). That rule eliminated the two-step approach the Services had used to designate critical habitat since 1984. *See* 49 Fed. Reg. 38,900, 38,909 (Oct. 1, 1984) (previously codified at 50 C.F.R. § 424.12(b)(1-5)). Under that two-step approach, the Services first looked to lands the species already occupied and determined whether those lands were adequate to meet the species' conservation needs. If the lands were inadequate, the Services then proceeded to the second step: designating as "critical habitat" unoccupied areas that contained the biological or physical elements "essential to the conservation of the species." *Id.*

With the 2016 rule change, the Services collapsed this longstanding two-step approach: No longer did they first have to look to occupied areas before designating unoccupied areas as critical habitat. *See* 81 Fed. Reg. 7414, 7426-27. Not only that, but the Services could designate unoccupied areas as critical habitat more easily than they could designate occupied areas as critical habitat because "[t]he presence of physical or biological features [wa]s not required ... for the inclusion of unoccupied areas in a designation of critical habitat." 81 Fed. Reg. 7414, 7420. Thus, under the 2016 rule, the Services could deem unoccupied land as critical habitat even if the habitat where the species lived was adequate to ensure its conservation and even if the unoccupied land was not actually habitable by the species.

1    That situation was untenable under the ESA. The text of the statute specifically

2  "differentiates between 'occupied' and 'unoccupied' areas, [and] impos[es] a more onerous

3  procedure on the designation of unoccupied areas." *Ariz. Cattle Growers' Ass'n v. Salazar*, 606

4  F.3d 1160, 1163 (9th Cir. 2010). Indeed, under the ESA, "specific areas outside the geographical

5  area occupied by the species" may be designated as critical habitat only if the Services conclude

6  "that such areas are *essential* for the conservation of the species." 16 U.S.C. § 1532(5)(A)(ii)

7  (emphasis added). That ordering means that if designating an occupied area alone as critical

8  habitat would meet conservation goals, then designating unoccupied areas cannot be "essential"

9  for the conservation of the species. Yet that is exactly what the 2016 rules allowed.

10   At the same time, the Services also made the designation of *occupied* areas as critical

11  habitat easier than the ESA allows. As part of their rule change, the Services declared that the

12  "physical or biological features" essential for the conservation of the species "can include

13  features that allow for the periodic development of habitat characteristics" that do not actually

14  exist but could, in theory, exist one day. 81 Fed. Reg. 7414, 7422. That change, too, was in

15  contravention of the text of the ESA, which limits the designation of occupied habitat to areas

16  "*on which are found* those physical or biological features essential to the conservation of the

17  species," 16 U.S.C. § 1532(5)(A)(i) (emphasis added)—not "*on which one day may be found*

18  those physical or biological features essential to the conservation of the species."

19   The second regulation challenged by the States concerned the Services' new definition of

20  "destruction or adverse modification" of critical habitat. *See* Interagency Cooperation—

21  Endangered Species Act of 1973, as Amended; Definition of Destruction or Adverse

22  Modification of Critical Habitat, 81 Fed. Reg. 7214 (Feb. 11, 2016). Under the ESA, federal

23  agencies must consult with the Services to ensure that their actions do not "result in the

24  destruction or adverse modification of [critical] habitat" of an endangered species. 16 U.S.C.

25  § 1536(a)(2). In this way federal agencies must not act in a way that makes "essential" habitable

26  land or water uninhabitable for a listed species. *See id.* § 1532(5)(A)(i) (defining "critical

27  habitat"). But in their rule change, the Services defined "destruction or adverse modification" to

28

1   include alterations "that preclude or significantly delay development" of features that would be,

2   if only they existed, essential to the conservation of a species. 81 Fed. Reg. 7214, 7226.

3        In November 2016, a group of 18 States (later joined by two additional States) sued the

4   Services and the Secretaries of the Departments of the Interior and Commerce to challenge the

5   regulatory changes as unlawful under the ESA and APA. *See Ala. ex rel. Steven T. Marshall*, No.

6   1:16-cv-00593-CG-MU (S.D. Ala. Nov. 29, 2016). In March 2018, the case settled. As part of

7   the settlement agreement, the Services agreed to reconsider the critical habitat regulations and

8   their definition of "destruction or adverse modification." They also agreed to notify the States if

9   no rule change would be forthcoming, in which case the States could renew their challenge.

10   *See* Decl. of Christopher M. Blankenship, Ala. Dep't of Conservation & Natural Res. at 2-3;

11   Decl. of Douglas Vincent-Lang, Alaska Dep't of Game & Fish at 4.

12       **B.**     **The Services Issue Revised Rules.**

13        As they agreed to do in the settlement of the 2016 litigation, the Services did reconsider

14   the challenged regulations. In July 2018, they issued three notices of proposed rulemaking, two

15   of which concerned the regulations challenged in the 2016 lawsuit. *See* Revision of the

16   Regulation for Listing Species and Designating Critical Habitat, 83 Fed. Reg. 35,193 (Jul. 25,

17   2018); Revision of the Regulations for Prohibitions to Threatened Wildlife and Plants, 83 Fed.

18   Reg. 35,174 (Jul. 25, 2018); Revision of Regulations for Interagency Cooperation, 83 Fed. Reg.

19   35,178 (Jul. 25, 2018). The Services promulgated the Final Rules on August 27, 2019. *See*

20   Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45,020 (Aug. 27,

21   2019); Regulations for Prohibitions to Threatened Wildlife and Plants, 84 Fed. Reg. 44,753

22   (Aug. 27, 2019); Regulations for Interagency Cooperation, 84 Fed. Reg. 44,976 (Aug. 27, 2019).

23        Each of the Proposed Defendant-Intervenors voiced support for various aspects of the

24   new rules. *See* Joint Comments of the States of Alabama, Arkansas, Kansas, Louisiana,

25   Michigan, Montana, Nebraska, Texas, West Virginia, and Wyoming (FWS Comment ID FWS-

26   HQ-ES-2018-0006-56645, Sept. 23, 2018), *available at* https://bit.ly/34dRKSX; Comments of

27   Ala. Forestry Comm'n (FWS Comment ID FWS-HQ-ES-2018-0006-40361, Sept. 19, 2018),

28

1    *available at* https://bit.ly/34nXDgg; Comments of Alaska Dep't of Fish & Game (FWS

2    Comment IDs FWS-HQ-ES-2018-0006-58866, Sept. 23, 2018; FWS-HQ-ES-2018-0007-62966,

3    Sept. 23, 2018; and FWS-HQ-ES-2018-0009-59327, Sept. 23, 2018), *available at*

4    https://bit.ly/2P7PmXD, https://bit.ly/2rYcb80, and https://bit.ly/2DJkdnU; Comments of Ariz.

5    Game & Fish Dep't (FWS Comment ID FWS-HQ-ES-2018-0007-62271, Sept. 23, 2018),

6    *available at* https://bit.ly/2DQH0hF; Comments of Idaho Office of Species Conservation (FWS

7    Comment ID FWS-HQ-ES-2018-0006-57439, Sept. 23, 2018), *available at*

8    https://bit.ly/2P9ducm; Comments of Mo. Dep't of Conservation (FWS Comment IDs FWS HQ-

9    ES-2018-0006-43643, Sept. 20, 2018; FWS-HQ-ES-2018-0007-49309, Sept. 20, 2018; and

10   FWS-HQ-ES-2018-0009-48223, Sept. 20, 2018), *available at* https://bit.ly/34Px6cb,

11   https://bit.ly/2RjBMTN, and https://bit.ly/2OQ4PN0; Comments of N.D. Dep't of Transp. (FWS

12   Comment ID FWS-HQ-ES-2018-0009-56477, Sept. 24, 2018), *available at*

13   https://bit.ly/2YhVLUi; Comments of Utah Public Lands Policy Coordinating Office (FWS

14   Comment IDs FWS-HQ-ES-2018-0006-55392, Sept. 23, 2018; FWS-HQ-ES-2018-0007-60748,

15   Sept. 23, 2018; and FWS-HQ-ES-2018-0009-59338, Sept. 23, 2018), *available at*

16   https://bit.ly/34Tjmx7, https://bit.ly/2PeqoWw, and https://bit.ly/364AGzf; Comments of Wyo.

17   Gov. Matthew H. Mead (FWS Comment IDs FWS-HQ-ES-2018-0006-59914, Sept. 23, 2018;

18   FWS-HQ-ES-2018-0007-62581, Sept. 23, 2018; and FWS-HQ-ES-2018-0009-57022, Sept. 23,

19   2018), *available at* https://bit.ly/34QJCs0, https://bit.ly/38c76JV, and https://bit.ly/365F2WP.

20          In addition to rescinding the 2016 regulations, the new Rules are designed to make the

21   regulatory process more predictable and transparent, streamline interagency cooperation, and

22   spur innovation by States and other stakeholders to protect at-risk species. As their titles indicate,

23   the Rules concern three broad categories related to the Services' administration of the ESA:

24   regulations for listing species and designating critical habitat, regulations prohibiting "take" of

25   threatened wildlife and plants, and regulations governing interagency cooperation.

26

27

28

1    1.  <u>Regulations for Listing Species and Designating Critical Habitat</u>

2       <u>84 Fed. Reg. 45,020</u>

3   The Rule for listing species and designating critical habitat amends the regulations in the

4 following important ways:

5   *Designating Unoccupied Areas as Critical Habitat*. As noted above, under the 2016

6 rules, the Services could designate unoccupied areas as critical habitat even if occupied areas

7 alone would have satisfied conservation goals and even if the species would not have survived in

8 the unoccupied area because of the absence of critical physical or biological features. *See* 81 Fed

9 Reg. 7414, 7439 (Feb. 11, 2016). The first new Rule corrects these problems. Under the new

10 Rule (which is similar in substance to the old 1984 rule), "the Secretary will first evaluate areas

11 occupied by the species" and "will only consider unoccupied areas to be essential where a

12 critical habitat designation limited to geographical areas occupied would be inadequate to ensure

13 the conservation of the species." 50 C.F.R. § 424.12(b)(2). Moreover, "for an unoccupied area to

14 be considered essential, the Secretary must determine that there is a reasonable certainty both

15 that the area will contribute to the conservation of the species and that the area contains one or

16 more of those physical or biological features essential to the conservation of the species." *Id.*

17   *Delisting Standards*. The new Rule makes clear that the Services will use the same

18 standards for delisting species as they do for listing species. *See* 50 C.F.R. § 424.11(e). The

19 regulatory language is consistent with the Services' practice and clarifies that there is not a more

20 stringent standard for delisting than for an initial listing. The language helps ensure that species

21 do not remain on the "threatened" and "endangered" lists once they have recovered to such an

22 extent that they are no longer "threatened" or "endangered."

23   *Defining "Foreseeable Future."* The ESA defines the term "endangered species" as "any

24 species which is in danger of extinction," 16 U.S.C. § 1532(6), and the term "threatened species"

25 as "any species which is likely to become an endangered species within the foreseeable future,"

26 *id.* § 1532(20). The Rule now defines what "foreseeable future" means: "The term foreseeable

27 future extends only so far into the future as the Services can reasonably determine that both the

28

    Notice of Mot., Mot. to Intervene, & Mem. in Support
           of Mot., Case No. 4:19-cv-05206-JST

future threats and the species' responses to those threats are likely." 50 C.F.R. § 424.11(d). The Rule also provides that "[t]he Services will describe the foreseeable future on a case-by-case basis, using the best available data and taking into account considerations such as the species' life-history characteristics, threat-projecting timeframes, and environmental liability." *Id.* The definitions provide additional predictability for groups affected by or interested in ESA regulations.

   *Public Disclosure of (Though Not Reliance On) Economic Impacts In Listing Decisions.* Under the former version of 50 C.F.R. § 424.11(b), the decision to list a species as endangered or threatened could be made "solely on the basis of the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." Under the new Rule, the scientific and commercial information concerning the species' status will still be the "sole" basis for the agency's decision, but the agency may now provide the public information regarding the economic impacts of the listing determination. This change will not affect how the Services make their listing determinations, but it will promote governmental transparency and public awareness. *See* 84 Fed. Reg. 45,020, 45,024.

   2.   Regulations for Prohibitions to Threatened Wildlife and Plants
         84 Fed. Reg. 44,753

   Under the ESA, a species listed as endangered receives automatic protections, including against any "take" by a private or public entity. 16 U.S.C. § 1538(a). By contrast, the ESA does not afford the same statutory protections to threatened species. Instead, "[w]henever any species is listed as a threatened species ... the Secretary shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species." 16 U.S.C. § 1533(d). The Act also specifies that the Secretary "may" extend to threaten species all the protections afforded to endangered species. *Id.*

   Since 1978, FWS has extended those protections by blanket rule. Instead of issuing species-specific regulations to protect a threatened species, FWS promulgated a rule that

1   automatically extended to all threatened species the same statutory protections that apply to

2   endangered species. *See* Protection for Threatened Species of Wildlife, 43 Fed. Reg. 18,180,

3   18,181 (Apr. 28, 1978). The second new Rule repeals that blanket extension. Going forward,

4   FWS will take a more tailored approach to the protection of newly listed threatened species and

5   will promulgate species-specific prohibitions, protections, or restrictions when a species is listed

6   as threatened. *See* 50 C.F.R. §§ 17.31(a) (threatened wildlife), 17.71(a) (threatened plants). This

7   is the approach the National Marine Fisheries Service has always taken. By recognizing a middle

8   tier between endangered and unlisted species—as established in the ESA—the Rule encourages

9   creative conservation efforts, aligns the incentives of landowners with the interests of at-risk

10  species, and allows for activities that pose no threat to the species but which may not be allowed

11  if these species are automatically treated as "endangered" by blanket rule. The Rule also restores

12  to the States a greater role in the protection of their threatened species, as originally

13  contemplated by the Congress that passed the ESA.

14                    3.      Regulations for Interagency Cooperation

15                            84 Fed. Reg. 44,976

16          The third Rule promulgated by the Services concerns interagency consultation and

17  amends the provisions challenged in the 2016 lawsuit. As explained above, Section 7 of the ESA

18  requires federal agencies to consult with the Secretaries of the Interior and Commerce to ensure

19  that any action authorized, funded, or carried out by the agencies is not likely to jeopardize the

20  continued existence of endangered or threatened species or result in the destruction or adverse

21  modification of critical habitat for those species. *See* 16 U.S.C. § 1536(a). The activities by the

22  "action agencies" could include, *inter alia*, a decision whether to issue permits to States or

23  private parties to engage in economic development. The Rule adopts several procedural changes

24  to the informal and formal consultation processes, and amends the definitions of some of the

25  terms defining those processes. Some of the changes include:

26          *Amending Definition of "Destruction or Adverse Modification."* The new Rule provides:

27  "Destruction or adverse modification means a direct or indirect alteration that appreciably

28

                                    8              Notice of Mot., Mot. to Intervene, & Mem. in Support
                                                          of Mot., Case No. 4:19-cv-05206-JST

1   diminishes the value of critical habitat as a whole for the conservation of a listed species." 50

2   C.F.R. § 402.02. The Rule adds the phrase "as a whole," which codifies the approach the

3   Services have previously taken. *See* 81 Fed. Reg. 7214, 7221 (Feb. 11, 2016) (explaining that

4   "the question is whether the action will appreciably diminish the value of the critical habitat *as a*

5   *whole*, not just in the action area" (emphasis added)). The Rule also deletes from the relevant

6   2016 rule a second sentence which had provided: "Such alterations may include, but are not

7   limited to, those that alter the physical or biological features essential to the conservation of a

8   species or that preclude or significantly delay development of such features." This change helps

9   clarify that the Services will not deem activity to appreciably diminish the value of critical habit

10  based on speculation about the sorts of physical or biological features that could one day exist

11  there.

12          *Defining "Effects of the Action."* The Rule clarifies the standard the Services have

13  applied in the past when determining the "effects of the action" being considered. *See Ctr. for*

14  *Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1113 (9th Cir. 2012).

15  "Effects of the action" is now defined as "all consequences to listed species or critical habitat

16  that are caused by the proposed action," with the limitation that "[a] consequence is caused by

17  the proposed action if it would not occur but for the proposed action and it is reasonably certain

18  to occur." 50 C.F.R. § 402.02.

19          *Defining "Reasonably Certain to Occur."* The Rule also clarifies the application of the

20  "reasonably certain to occur" standard to activities "caused by but not included in the proposed

21  action and activities under cumulative effects." 83 Fed. Reg. 35,178, 35,189. Under the Rule,

22  "[a] conclusion of reasonably certain to occur must be based on clear and substantial

23  information, using the best scientific and commercial data available." 50 C.F.R. § 402.17(a). The

24  Rule also provides that "[c]onsiderations for determining that a consequence to the species or

25  critical habitat is not caused by the proposed action" include whether the consequence is (1) "so

26  remote in time from the action under consultation that it is not reasonably certain to occur"; (2)

27  "so geographically remote from the immediate area involved in the action that it is not

28

1    reasonably certain to occur"; and (3) "only reached through a lengthy causal chain that involves

2    so many steps as to make the consequence not reasonably certain to occur." *Id.* § 402.17(b). By

3    making clear to regulated parties that such remote consequences will not be attributed to their

4    proposed conduct, the Rule allows parties to arrange their conduct with greater certainty.

5         *Measuring "Effects of the Action" from the "Environmental Baseline."* When the

6    Services determine whether the effects of an agency's proposed actions are likely to have

7    consequences for listed species or critical habit, the Services measure those effects against an

8    "environmental baseline" that factors in current conditions. *See San Luis & Delta-Mendota*

9    *Water Auth.*, 747 F.3d 581, 638 (9th Cir. 2014). The Rule now defines "environmental baseline"

10   as "the condition of the listed species or its designated critical habitat in the action area, without

11   the consequences to the listed species or designated critical habitat caused by the proposed

12   action." 50 C.F.R. § 402.02. Added clarity in this definition provides additional certainty for

13   States that are considering various development or conservation actions.

14        *Revisions to the Formal Consultation Process*. The new Rule revises the formal

15   consultation process by describing what information is needed for an agency to initiate the

16   formal consultation process, 50 C.F.R. § 402.14(c); clarifying the responsibilities of each of the

17   States and the steps it will take in determining whether a proposed action may affect a listed

18   species or its critical habitat, *id.* § 402.14(g); and allowing the Services to adopt an agency's

19   initiation package as their own biological opinion, *id.* § 402.14(h). The new Rule also provides a

20   method for expedited consultations, which are appropriate for "[c]onservation actions whose

21   primary purpose is to have beneficial effects on listed species." *Id.* § 402.14(l).

22       **C.**    **Plaintiffs Challenge the 2019 Rulemaking.**

23        Plaintiffs in this action are a coalition of environmental organizations. They brought this

24   action against the Services and the Secretaries of the Departments of the Interior and Commerce

25   alleging that the new Rules violate the ESA, APA, and NEPA. They seek a declaratory judgment

26   from the Court to that effect, as well as an order vacating the Rules and "[e]njoin[ing] FWS and

27   NMFS from applying or otherwise relying upon the 2019 Revised ESA Regulations." First Am.

28

1    Compl., ECF No. 28 at 42. The Federal Defendants filed a motion to dismiss on December 6,

2    2019, ECF No. 33, and the Court has not yet ruled on any substantive matters.

3         **D.     The Proposed Defendant-Intervenor States Have Interests That Will Be**

4              **Affected By This Action.**

5         The Proposed Defendant-Intervenors are a coalition of 13 States: Alabama, Alaska,

6    Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri,

7    Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming. Many of the States were

8    plaintiffs in the litigation over the 2016 rule and thus have a particular interest in defending the

9    result of the settlement agreement that ended that litigation. And during the notice and comment

10   period that culminated in the Final Rules, each State filed comments supporting certain of the

11   proposed changes. Further, all of the States benefit from the Rules, which bring added clarity and

12   predictability to the regulatory process, streamline interagency cooperation, and create more

13   room for States to work creatively with the Services and other stakeholders to protect at-risk

14   species.

15        The Proposed Defendant-Intervenor States have an interest in how the Services designate

16   critical habitat and define its destruction or adverse modification. States are expressly covered by

17   the ESA, along with individuals, corporations, municipalities, and political subdivisions of each

18   State and the uses and activities upon lands owned or controlled by such persons. 16 U.S.C.

19   § 1532(13). Thus, State transportation projects, pipeline construction and maintenance, forest

20   and storm water management, and other key infrastructure operations must comply with any

21   applicable prohibitions protecting listed species and designated critical habitat for such species.

22   Accordingly, when the Services designate land as critical habitat, there are serious implications

23   for States' authority. That is why many of the Proposed Defendant-Intervenors challenged the

24   Services' 2016 rules, and why they seek to defend the new Rules, which provide States greater

25   clarity when planning and carrying out both development and conservation projects.

26        Moreover, as explained in more depth below and in the attached declarations, each of the

27   States acts as the primary protector of its wildlife. And because each State is home to threatened

28

                                           11

1    and endangered species protected by the ESA, each State benefits from the added flexibility of

2    the new Rules that encourage creative solutions for protecting wildlife while also recognizing the

3    interests of landowners. For example, in conjunction with FWS, Alabama has implemented a

4    "safe harbor" program to incentivize landowners to protect open, mature pine woodlands that

5    serve as habitat for the red-cockaded woodpecker (*Picoides borealis*), a federally listed

6    endangered species. *See* Decl. of Christopher M. Blankenship, Ala. Dep't of Conservation &

7    Natural Res. at 1-2; *see also* Proposed Programmatic Statewide Red-cockaded Woodpecker Safe

8    Harbor Agreement, AL, 71 Fed. Reg. 34,154 (June 13, 2006). Under the program, landowners

9    agree to manage their land in a way that is expected to benefit the red-cockaded woodpecker. In

10   exchange, the landowners will not incur any new restrictions if their woodpecker populations

11   expand beyond the baseline level that exists at the time of the agreement. While these sorts of

12   programs are possible under the previous regulations, the new Rules make it easier for such

13   creative and targeted solutions to be implemented. And such programs demonstrate that the

14   Rules are not an attempt to roll back vital protections, but are instead a continuation of the

15   Services' decision to take a more tailored and collaborative approach to conservation—either

16   through the allowance of a Section 10 take permit (as with the safe harbor program) or through

17   the issuance of special, species-specific Section 4(d) regulations (as contemplated by the Rules).

18   *See* 84 Fed. Reg. 44,753, 44,754; *see also* Decl. of Angela Bruce, Wyo. Game & Fish Dep't at

19   ¶ 6 (explaining that Wyoming used a Section 10(j) designation to successfully facilitate

20   reintroduction of the black-footed ferret); Comment of Mo. Dep't of Conservation (FWS

21   Comment ID FWS-HQ-ES-2018-0007-49309, Sept. 20, 2018), *available at*

22   https://bit.ly/2RjBMTN (noting that species considered for federal listing are often already

23   identified as species of concern by the State and that "State agencies can provide valuable,

24   experience-based information and guidance on the development of species-specific 4(d) rules

25   that might be effective in protecting and recovering the species, while avoiding prohibitions that

26   might make management and recovery more difficult and minimizing potential conflicts with

27   stakeholders").

28

1    Another example from Alabama is its Gopher Tortoise Project. *See* Decl. of Christopher

2    M. Blankenship, Ala. Dep't of Conservation Natural Res. at 2. The gopher tortoise (*Gopherus*

3    *polyphemus*) has been listed as a federally threatened species in west Alabama, and FWS is

4    expected to decide whether to list the tortoise as a threatened species in other parts of Alabama

5    by 2022. Because 95% of gopher tortoise habitat is owned by private landowners, enlisting the

6    landowners' help in protecting habitat and identifying where the gopher tortoise currently lives is

7    crucial. But landowners are understandably reticent about reporting whether they have tortoises

8    on their land because of the attendant regulatory burdens that could come if the tortoise is listed

9    as threatened throughout Alabama. *See id.* Fortunately, under the new Rules, those

10   understandable fears could be eased because threatened species would not necessarily be treated

11   the same as endangered species. *See* 50 C.F.R. § 17.31(a). Instead, following the lead of NMFS,

12   FWS will use a more tailored approach and consider special rules for each species at the time of

13   listing, thereby allowing additional room for Alabama to engage landowners in the protection of

14   the gopher tortoise while also accommodating the landowners' needs. *See also* Comment of

15   Idaho Office of Species Conservation (FWS Comment ID FWS-HQ-ES-2018-0006-57439, Sept.

16   23, 2018), *available at* https://bit.ly/2P9ducm (noting that the new Rules "will afford more

17   opportunity for [Idaho] to work with the FWS and capitalize on these benefits in tailoring the

18   regulations to the conservation needs of the species" and will "create consistency in the

19   application of Section 4(d) between FWS and NMFS" (quotation marks omitted)).

20   Alaska provides another good example. As it noted in its comment letter, how the

21   Services define "foreseeable future," and how they designate potential, unoccupied habitat as

22   "critical," are critically important to Alaska. *See* Comment of Alaska Dep't of Fish & Game

23   (FWS Comment ID FWS-HQ-ES-2018-0006-58866, Sept. 23, 2018), *available at*

24   https://bit.ly/2P7PmXD; *see also* Decl. of Douglas Vincent-Lang, Alaska Dep't of Game & Fish

25   at 6. Alaska is particularly concerned about the uncertainty involved in listing decisions based on

26   models forecasting out to 100 years—like the decision the NMFS made when listing bearded

27   seals as a threatened species. *See* Threatened Status for the Beringia and Okhotsk Distinct

28

1  Population Segments of the Erignathus barbatus nauticus Subspecies of the Bearded Seal, 77

2  Fed. Reg. 76,740 (Dec. 28, 2012). Alaska expects that the regulations concerning the definition

3  of "foreseeable future" and the designation of unoccupied "critical habitat" will alleviate some of

4  the uncertainty that previous listing rules produced.

5      Finally, the Rules will help the Proposed Defendant-Intervenors meet both their

6  development and conservation goals by providing clarity and efficiency to the Section 7

7  consultation process. *See* 84 Fed. Reg. 44,976; Comments of Utah Public Lands Policy

8  Coordinating Office (FWS Comment ID FWS-HQ-ES-2018-0009-59338, Sept. 23, 2018),

9  *available at* https://bit.ly/364AGzf ("[Utah] looks forward to working with the Services to utilize

10 programmatic consultations as defined in the proposed rule. Often, actions that occur routinely in

11 a particular geographic area[] have very well-known and understood effects on species. Though

12 the effects of an action are well-understood, projects are often delayed by the Services' use [of]

13 the consultation process. The proposed definition of programmatic consultation will reduce costs

14 while increasing the Services' ability to fulfill its duties under the ESA."). And each State will be

15 harmed if those Rules are invalidated, as Plaintiffs propose, or if a different compromise is

16 reached between Plaintiffs and the Federal Defendants.

17 **II.    ARGUMENT**

18      **A.    The Proposed Defendant-Intervenors Are Entitled to Intervene as a Matter**

19             **of Right.**

20      Federal Rule of Civil Procedure 24(a) provides: "On timely motion, the court must permit

21 anyone to intervene who ... claims an interest relating to the property or transaction that is the

22 subject of the action, and is so situated that disposing of the action may as a practical matter

23 impair or impede the movant's ability to protect its interest, unless existing parties adequately

24 represent that interest." Fed. R. Civ. P. 24(a)(2).

25      The Court must permit intervention of right so long as four requirements are met: (1) the

26 motion is timely; (2) the applicants "claim a significantly protectable interest relating to the

27 property or transaction" at issue; (3) "disposition of the action may as a practical matter impair or

28

1    impede [the applicants'] ability to protect that interest"; and (4) the existing parties may not

2    adequately represent the applicants' interests. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d

3    1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir.

4    1993)). The Ninth Circuit has "repeatedly instructed" that these requirements "are to be broadly

5    interpreted in favor of intervention." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir.

6    2016) (brackets omitted). That is because the Court is to be guided by "practicable and equitable

7    considerations," and "[a] liberal policy in favor of intervention serves both efficient resolution of

8    issues and broadened access to the courts." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *United*

9    *States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002)).

10          All four requirements are met here. First, the motion is timely because the action is in its

11   early stages—the Federal Defendants' responsive pleading was filed just weeks before this

12   motion was filed. Second, as demonstrated in this memorandum and the attached declarations,

13   the Proposed Defendant-Intervenors have significant protectable interests in this action. Third, if

14   Plaintiffs succeed in invalidating the Rules, the Proposed Defendant-Intervenors will be harmed

15   and become subject once again to the very rules that many of them challenged in the 2016

16   litigation as unlawful. Fourth, the Federal Defendants cannot adequately represent the unique,

17   sovereign interests of the Intervenor States.

18                    1.    The Motion is Timely.

19          The Proposed Defendant-Intervenor States meet the first element for intervention:

20   timeliness. Timeliness is "determined by the totality of the circumstances facing would-be

21   intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an

22   applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length

23   of the delay.'" *Smith*, 830 F.3d 843 at 854 (quoting *United States v. Alisal Water Corp.*, 370 F.3d

24   915, 921 (9th Cir. 2004)).

25          All those factors point to timeliness in this case. Plaintiffs filed their initial complaint on

26   August 21, 2019, and their first amended complaint on October 23, 2019. The Federal

27   Defendants' motion to dismiss was filed on December 6, just a few weeks before this motion

28

1   was filed. The Federal Defendants have not filed an answer, no substantive matters have been

2   ruled on, and the case management conference is set for March 3, 2020. There has thus been no

3   delay by the Proposed Defendant-Intervenors, and likewise no prejudice because intervention

4   will not result in any delay to the resolution of this case. All the "traditional features of a timely

5   motion" have been met. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893,

6   897 (9th Cir. 2011); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392,  1397 (9th Cir.

7   1995) (intervention motion was timely when filed four months after the complaint and two

8   months after the answer).

9                      2.          The Proposed Defendant-Intervenors Have Significantly Protectable

10                                 Interests Relating to This Action.

11          The Proposed Defendant-Intervenors also meet the second element for intervention: They

12   have "'significantly protectable' interest[s] relating to the property or transaction which is the

13   subject of the action." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club*, 995 F.2d at

14   1481). "[T]he 'interest' test directs courts to make a 'practical, threshold inquiry,' and 'is

15   primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

16   persons as is compatible with efficiency and due process.'" *City of Los Angeles*, 288 F.3d at 398

17   (quoting *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). The test "does not

18   require a specific legal or equitable interest," *Wilderness Soc'y*, 630 F.3d at 1179, nor must the

19   "prospective intervenor[s'] asserted interest ... be protected by the statute under which the

20   litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Id.* (quoting

21   *Sierra Club*, 995 F.2d at 1481). Instead, "prospective intervenor[s] 'ha[ve] a sufficient interest

22   for intervention purposes if [they] will suffer a practical impairment of [their] interests as a result

23   of the pending litigation.'" *Id.* (quoting *California ex rel. Lockyer v. United States,* 450 F.3d 436,

24   441 (9th Cir. 2006)); *see also id.* at 1180 ("[T]he operative inquiry should be whether the

25   'interest is protectable under some law' and whether 'there is a relationship between the legally

26   protected interest and the claims at issue.'" (quoting *Sierra Club*, 995 F.2d at 1484)).

27

28

1        The Proposed Defendant-Intervenors have just this kind of interest. Indeed, the outcome

2  of the case will affect not just Plaintiffs or the Federal Defendants, but each and every State. That

3  is because the challenged regulations affect how at-risk species are protected in each State.

4        If Plaintiffs succeed, States will be burdened by a regulatory regime that violates the text

5  of the ESA and impairs the abilities of the States to protect their at-risk species in creative ways.

6  As already noted above, under the Rules challenged by Plaintiffs, there is more room for States

7  to take the lead in protecting threatened species in ways that also protect landowners' rights to

8  make reasonable use of their properties. Such cooperative federalism was possible under the

9  prior rules, but it was onerous—requiring either a special permit under Section 10 or a species-

10 specific rule under Section 4 of the ESA because FWS treated "endangered" and "threatened"

11 species exactly alike. *Cf.* Proposed Programmatic Statewide Red-cockaded Woodpecker Safe

12 Harbor Agreement, AL, 71 Fed. Reg. 34,154 (June 13, 2006) (notice of application by Alabama

13 for Section 10 permit to create a safe harbor program for the endangered red-cockaded

14 woodpecker). By removing the blanket extension for threatened species, the new Rules provide

15 for a more tailored approach by which FWS may determine that the State's regulation of the

16 species is adequate—or it may issue a species-specific rule. *See* 50 C.F.R. § 17.31(a), (c);

17 Comment of Idaho Office of Species Conservation (FWS Comment ID FWS-HQ-ES-2018-

18 0006-57439, Sept. 23, 2018), *available at* https://bit.ly/2P9ducm (noting that the new Rules "will

19 afford more opportunity for [Idaho] to work with the FWS and capitalize on these benefits in

20 tailoring the regulations to the conservation needs of the species" and will "create consistency in

21 the application of Section 4(d) between FWS and NMFS" (quotation marks omitted)). The

22 Proposed Defendant-Intervenor States thus have an interest in defending the Rules challenged by

23 Plaintiffs, because the States benefit from those very Rules. *See, e.g.*, *WildEarth Guardians v.*

24 *Jewell*, 320 F.R.D. 1, 4 (D.D.C. 2017) (allowing intervention by group of States to defend

25 against environmental groups' NEPA challenge to federal government's approval of certain oil

26 and gas leases on public lands because the intervening States would be affected by the revocation

27 of that approval); *see also WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th

28

1   Cir. 2010) (recognizing that "the interest of a prospective defendant-intervenor may be impaired

2   where a decision in the plaintiff's favor would return the issue to the administrative decision-

3   making process, notwithstanding the prospective intervenor's ability to participate in formulating

4   any revised rule or plan"); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003)

5   (permitting Mongolia to intervene in an action challenging the Secretary of the Interior's

6   classification of a Mongolian sheep as threatened).

7        The Proposed Defendant-Intervenors likewise have significantly protectable interests in

8   the Rules that alter the 2016 definitions of "unoccupied critical habitat" and "destruction or

9   adverse modification"—definitions that led many of the States to sue the Services in 2016. The

10  new Rules benefit the Intervenor States by reducing the likelihood that their land and waters will

11  be unlawfully designated as critical habit and by increasing regulatory predictability by

12  providing a clearer definition of when activity will trigger the consultation process. *See*

13  Comment of Alaska Dep't of Fish & Game (FWS Comment IDs FWS-HQ-ES-2018-0006-

14  58866, Sept. 23, 2018), *available at* https://bit.ly/2P7PmXD (explaining that, because of climate

15  change, "[m]ore than any other state, Alaska deals with threats to habitat that cannot be

16  addressed through management, one factor for consideration of critical habitat designation," and

17  is thus directly benefitted by rules that bring clarity to the designation process).

18       Moreover, the Proposed Defendant-Intervenors often must cooperate with action agencies

19  before engaging in infrastructure projects and other development, which often triggers Section 7

20  consultation with the Services. *See* Comments of N.D. Dep't of Transp. (FWS Comment ID

21  FWS-HQ-ES-2018-0009-56477, Sept. 24, 2018), *available at* https://bit.ly/2YhVLUi (noting

22  that North Dakota "recently implemented a programmatic consultation with [the Federal

23  Highway Administration] and USFWS which has facilitated a standardized, efficient approach

24  for Section 7 ESA compliance"); *Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Transp.*, No.

25  2:11-cv-267-WKW, 2016 WL 233672, at *23, *33-34 (M.D. Ala. Jul. 19, 2016) (challenging an

26  environmental impact statement conducted by State Department of Transportation and the

27  Federal Highway Administration regarding highway project that would, plaintiffs alleged,

28

unlawfully impact endangered species). Because the new Rules streamline aspects of the

consultation process, they will promote more efficient determinations by action agencies and the

Services, which will allow States to more effectively serve their citizens. *See* Comments of Utah

Public Lands Policy Coordinating Office (FWS Comment ID FWS-HQ-ES-2018-0009-59338,

Sept. 23, 2018), *available at* https://bit.ly/364AGzf ("Streamlining the consultation process for

actions or projects with minimal adverse impact[s] that are known and predictable will

streamline the consultation process. This proposal could also incentivize more rapid development

of projects that are beneficial to species recovery, but may result in minimal incidental [take]

through project development and implementation. This outcome also increases interagency ESA

consultation support, and other modular capacity to accelerate restoration in priority areas.").

Finally, the States have an interest in not re-litigating the 2016 rule changes all over

again, which they will have to do if Plaintiffs' challenge succeeds. It is far more "compatible

with efficiency and due process" to allow the Proposed Defendant-Intervenors to intervene in

this action to defend the 2019 rule changes so that, if they are successful, they will not have to

re-litigate the 2016 changes anew. *City of Los Angeles*, 288 F.3d at 398 (quoting *County of

Fresno*, 622 F.2d at 438).

3.   Plaintiffs' Challenge Threatens to Impair the Interests of the Proposed
     Defendant-Intervenors.

For these same reasons, the third element for intervention is also met: "[D]isposition of

the action may as a practical matter impair or impede [the intervenors'] ability to protect [their]

interest." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club*, 995 F.2d at 1481); *see* Fed.

R. Civ. P. 24(a)(2). This element "presents a minimal burden." *Nat'l Park Serv.*, 604 F.3d at

1199. To satisfy the "practical impairment" requirement, applicants need only show that the

disposition of the action "*may* as a practical matter impair or impede the[ir] ability to protect

[their] interest"—not that the disposition necessarily will do so. Fed. R. Civ. P. 24(a)(2)

(emphasis added); *see City of Los Angeles*, 288 at 401 ("[T]he relevant inquiry is whether the

[disposition] 'may' impair rights 'as a practical matter' rather than whether the [disposition] will

'necessarily' impair them." (quoting Fed. R. Civ. P. 24(a)(2)). In other words, if applicants may be affected "in a practical sense by the determination made in an action, [they] should, as a general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed R. Civ. P. 24 advisory committee's note).

As demonstrated above, the interests of the Proposed Defendant-Intervenors will be impaired if Plaintiffs succeed in their challenge. To take but one more example, if the Court grants Plaintiffs' requested relief, the 2016 rule changes will come back in full force. That will mean that the Proposed Defendant-Intervenor States (and indeed all States) will once again be subject to the unlawful single-step critical habitat rule in which the Services may deem unoccupied land as critical habitat even if the habitat where the species already lives can meet all conservation goals and even if the unoccupied land is not actually habitable by the species. *See* 81 Fed. Reg. 7414, 7426-27. This effect would subject States to regulations that would be unlawful under the ESA and would infringe on the States' ability to protect both their lands and their wildlife. *See* 16 U.S.C. § 1532(5)(A)(i) (limiting designation of occupied habitat to areas "on which are found those physical or biological features essential to the conservation of the species").

The Proposed Defendant-Intervenors directly benefit from the challenged Rules. In addition to repealing the unlawful 2016 regulations, the Rules provide additional clarity and certainty to how the Services designate critical habitat, list and de-list species, protect threatened species, and work with other governmental agencies in formulating biological opinions. If Plaintiffs succeed in their lawsuit, those Rules would be voided, and the benefits to States that they bring will go away. On the other hand, these harms will be avoided if this Court upholds the Services' Rules. *See* Decl. of Douglas Vincent-Lang, Alaska Dep't of Fish & Game at 7-9 (detailing ways that Alaska will be harmed if the plaintiffs in the three related actions prevail). It is thus clear that "disposing of the action may as a practical matter impair or impede the [Proposed Defendant-Intervenors'] ability to protect [their] interests." Fed. R. Civ. P. 24(a)(1).

1        4.   The Federal Defendants Cannot Adequately Represent the Interests of the

2             Proposed Defendant-Intervenors.

3        Finally, the Proposed Defendant-Intervenors also meet the fourth element for intervention

4   of right: Their interests will "be inadequately represented by the parties to the action."

5   *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club*, 995 F.2d at 1481). "The burden on

6   proposed intervenors in showing inadequate representation is minimal, and would be satisfied if

7   they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki v.*

8   *Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *Trbovich v. United Mine Workers*, 404

9   U.S. 528, 538 n.10 (1972)). Factors to consider in making this determination include: (1)

10  whether the present parties "will undoubtedly make all the intervenor[s'] arguments," (2)

11  whether the present parties are "capable and willing to make such arguments," and (3) whether

12  the intervenors "would offer any necessary elements to the proceedings that other parties would

13  neglect." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

14  Importantly, "it is not Applicants' burden at this stage in the litigation to anticipate specific

15  differences in trial strategy. It is sufficient for Applicants to show that, because of the difference

16  in interests, it is likely that Defendants will not advance the same arguments as Applicants."

17  *Id.* at 824.

18       While it is expected that the Federal Defendants will defend the challenged Rules for the

19  foreseeable future, it is unclear how the Federal Defendants will do so or for how long. As the

20  settlement of the 2016 litigation itself shows, the Federal Defendants may in fact decide to

21  change direction. That would harm the interests of the Proposed Defendant-Intervenors just as

22  surely as if Plaintiffs receive the full relief they seek from this Court.[2] *See United States v.*

23  *Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (observing that "should settlement become a

24  viable alternative in this litigation, it is highly unlikely that" the government defendants would

25  craft "a settlement that would adequately address [the intervenor's] interests"), *vacated on other*

26  *grounds by Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).

27  [2]   It is well established that the Proposed Defendant-Intervenors need not show Article III
          standing to intervene. *See Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014).

28

1      Moreover, the Federal Defendants simply cannot adequately represent the sovereign

2  interests of States. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499

3  (9th Cir. 1995) (noting that the federal government is "required to represent a broader view than

4  the more narrow, parochial interests" of the proposed state and county intervenors), *abrogated*

5  *on other grounds by Wilderness Soc'y*, 630 F.3d at 1117. Each Proposed Defendant-Intervenor

6  State has unique interests in defending its at-risk species, and each State likewise has unique

7  ways that it will serve those interests. In this way the States can explain to the Court how any

8  potential ruling will affect them specifically, thereby "offer[ing] important elements to the

9  proceedings that the existing parties would likely neglect." *Sw. Ctr. for Biological Diversity*, 268

10  F.3d at 822.

11      Not only that, but the interests of the States and the Federal Defendants will not always

12  be aligned with regard to the implementation of the regulations. For example, not only does each

13  State own the wildlife within its borders, but it also owns land that could be subject to FWS's

14  "critical habitat" designation. It is no wonder, then, that federal courts have routinely held that

15  federal agencies cannot adequately represent other interests in lawsuits challenging federal

16  decision-making. *See Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,

17  152 F.3d 1184, 1190 (9th Cir. 1998) (affirming grant of intervention to labor union "because the

18  employment interests of [the union's] members were potentially more narrow and parochial than

19  the interests of the public at large"); *see also Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d

20  1242, 1256 (11th Cir. 2002) (holding that federal defendant did not adequately represent State's

21  interest in interstate waters); *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (finding

22  that the government did not adequately represent the interests of intervenors because "[t]he

23  government must represent the broad public interest"); *Nat'l Farm Lines v. Interstate Commerce*

24  *Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977) ("We have here also the familiar situation in which

25  the governmental agency is seeking to protect not only the interest of the public but also the

26  private interest of the petitioners in intervention, a task which is on its face impossible."); *Jewell*,

27  320 F.R.D. at 4-5 ("While the Federal Defendants' duty runs to the interests of the American

28

people as a whole, the state-intervenors will primarily consider the interests of their own citizens.").

All four requirements for intervention have thus been satisfied. The motion is timely; the Proposed Defendant-Intervenors have significant protectable interests in this action; those interests will be harmed if Plaintiffs succeed in their challenge; and the existing parties do not adequately represent those interests.

**B.      In the Alternative, the Court Should Grant the Proposed Defendant-Intervenors Permission to Intervene.**

If the Court does not grant intervention as a matter of right, it should permit the Proposed Defendant-Intervenors to intervene under Federal Rule of Civil Procedure 24 (b)(1)(B). That Rule provides: "On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The requirements for permissive intervention are laxer than those for intervention as of right. "Unlike Rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that the intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting Fed. R. Civ. P. 24(b)), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173. A movant must typically show "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

Those requirements are met here. First, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Id.* at 844. Because the Proposed Intervenors seek to intervene as defendants, they raise no new claims and thus present no concerns about any "enlargement of federal jurisdiction." *Id.*

Second, as explained above, this motion to intervene is timely and will not delay these proceedings. *See supra* Part II.A.1. The motion is being filed just a few weeks after the Federal Defendants filed a motion to dismiss. That motion has not yet been ruled on, or even briefed by Plaintiffs.

Third, the Proposed Defendant-Intervenors will "assert 'defenses' of the government rulemaking that squarely respond to the challenges made by [P]laintiffs." *Kootenai Tribe*, 313 F.3d at 1111. Plaintiffs seek to challenge the Final Rules issued by the Services; the Proposed Defendant-Intervenors seek to defend them. Such a defense clearly "shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b) (1)(B).

Finally, intervention will "not unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b) (3). The litigation is still at an early stage, and the Proposed Defendant-Intervenors do not seek to modify the existing scheduling order. The Court should therefore grant the Proposed Defendant-Intervenors permission to intervene in order to allow them to represent their unique interests in this action.

## III.   CONCLUSION

For the foregoing reasons, the Proposed Defendant-Intervenors respectfully request that the Court grant their motion to intervene.

1    DATED:  January 7, 2020                    Respectfully submitted,

2    STEVE MARSHALL                             TIMOTHY C. FOX
     Attorney General of Alabama                Attorney General of Montana
3
     /s/ Edmund G. LaCour Jr.                   /s/ Melissa Schlichting
4    Edmund G. LaCour Jr. (*pro hac vice* pending)   Melissa Schlichting (SBN 220258)
     *Solicitor General*                        *Deputy Attorney General*
5    James W. Davis (*pro hac vice* pending)     Montana Department of Justice
     *Deputy Attorney General*                  215 N. Sanders St., P.O. Box 201401
6    A. Barrett Bowdre (*pro hac vice* pending)  Helena, MT 59620-1401
     *Deputy Solicitor General*                 Telephone: (406) 444-2026
7    Office of the Alabama Attorney General      Fax: (406) 444-3549
     501 Washington Ave.                         E-mail: MSchlichting@mt.gov
8    P.O. Box 300152
     Montgomery, AL 36130                        *Attorneys for Proposed Defendant-Intervenor*
9    Telephone: (334) 353-2196                   *State of Montana*
     Fax: (334) 353-8400
10   E-mail: edmund.lacour@AlabamaAG.gov
     jim.davis@AlabamaAG.gov                     *[Additional counsel listed on next page]*
11   barrett.bowdre@AlabamaAG.gov

12   /s/ Paul Beard II
     Paul Beard II (SBN 210563)
13   FisherBroyles LLP
     5670 Wilshire Blvd., Ste. 1800
14   Los Angeles, CA 90036-5653
     Telephone: (818) 216-3988
15   Fax: (213) 402-5034
     E-mail: paul.beard@fisherbroyles.com
16
     *Attorneys for Proposed Defendant-Intervenor*
17   *State of Alabama*

18   MARK BRNOVICH
     Attorney General of Arizona
19
     /s/ L. John LeSueur
20   L. John LeSueur (*pro hac vice* forthcoming)
     Arizona State Bar No. 022556
21   Assistant Attorney General
     Office of the Arizona Attorney General
22   2005 N. Central Avenue
     Phoenix, Arizona 85004
23   Telephone: (602) 542-0640
     John.LeSueur@azag.gov
24
     *Attorneys for Proposed Defendant-Intervenor*
25   *State of Arizona ex rel. Arizona Game and*
     *Fish Commission*
26
     * In compliance with Civil Local Rule 5-1(i),
27   the filer of this document attests that all
     signatories listed have concurred in its filing.
28

1  KEVIN G. CLARKSON                    DOUGLAS J. PETERSON
   Attorney General of Alaska          Attorney General of Nebraska
2

3  LESLIE RUTLEDGE                      WAYNE STENEHJEM
   Attorney General of Arkansas        Attorney General of North Dakota

4  LAWRENCE G. WASDEN                   SEAN REYES
   Attorney General of Idaho           Attorney General of Utah
5

6  DEREK SCHMIDT                        PATRICK MORRISEY
   Attorney General of Kansas          Attorney General of West Virginia

7  ERIC S. SCHMITT                      BRIDGET HILL
   Attorney General of Missouri        Attorney General of Wyoming
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Mot., Mot. to Intervene, & Mem. in Support
of Mot., Case No. 4:19-cv-05206-JST

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system, which will send notification of such to the attorneys of record.

DATED:  January 7, 2020

Respectfully submitted,

/s/ Paul Beard II
Paul Beard II (SBN 210563)
FisherBroyles LLP
5670 Wilshire Blvd., Ste. 1800
Los Angeles, CA 90036-5653
Telephone: (818) 216-3988
Fax: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

*Attorneys for Proposed Defendant-Intervenor State of Alabama*

Notice of Mot., Mot. to Intervene, & Mem. in Support
of Mot., Case No. 4:19-cv-05206-JST