UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID BERNHARDT, et al., <br><br> Defendants. | Case No. 19-cv-05206-JST <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: ECF No. 33 |

Before the Court is U.S. Secretary of the Interior David Bernhardt, Secretary of Commerce Wilbur Ross, U.S. Fish and Wildlife Service, and National Marine Fisheries Service ("Federal Defendants")'s motion to dismiss. ECF No. 33. The Court will grant the motion.

I.   **BACKGROUND**[1]

"The Endangered Species Act ("ESA") was enacted in 1973 to prevent the extinction of various fish, wildlife, and plant species." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003). The Act aims "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). "The responsibility for administration and enforcement of the ESA lies with the Secretaries of Commerce and Interior, who have delegated the responsibility to the [National Marine Fisheries Service ("NMFS")] with respect to marine species, and to the Fish and Wildlife Service ("FWS") with respect to terrestrial species." *Turtle Island*, 340 F.3d at

---

[1] In reviewing Federal Defendants' Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the Court takes the allegations in the plaintiffs' complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

973-74 (citing 50 C.F.R. § 402.01).

To accomplish its purposes, the Act "sets forth a comprehensive program to limit harm to endangered species within the United States." *California ex rel. Lockyer v. U.S. Dept. of Agriculture*, 575 F.3d 999, 1018 (9th Cir. 2009). Section 4 of the Act requires NMFS and FWS (collectively "the Services") to identify endangered and threatened species and designate their "critical habitats." 16 U.S.C. 1533(a)(1)-(3). Section 7 "imposes a procedural duty on federal agencies to consult with either the [NMFS] or the FWS before engaging in a discretionary action, which may affect listed species."[2] *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)). This consultation procedure aims to allow the Services "to determine whether the federal action is likely to jeopardize the survival of a protected species or result in the destruction of its critical habitat, and if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." *Id.* (citing 16 U.S.C. § 1536(b)(3)(A)). Section 9 prohibits the "take" (e.g. killing, harassing, harming, or collecting) of listed endangered fish and wildlife species and prohibits other actions with respect to listed endangered plant species. 16 U.S.C. §§ 1532, 1538. Section 4(d) authorizes the extension of Section 9 prohibitions to threatened species. *Id.* § 1533(d).

### A. Regulatory History

During the 1980s, the Services adopted joint regulations for implementation of Sections 4 and 7 of the ESA. *See, e.g.,* 45 Fed. Reg. 13,010 (Feb. 27, 1980); 49 Fed. Reg. 38,900 (Oct. 1, 1984); 51 Fed. Reg. 19,926 (June 3, 1986). "The ESA Regulations have not been substantially amended since that time, with only minor amendments adopted in 2015 and 2016." ECF No. 28 ¶ 37; *see* 81 Fed. Reg. 7,439 (Feb. 11, 2016); 81 Fed. Reg. 7,214 (Feb. 11, 2016); 80 Fed. Reg. 26,832 (May 11, 2015).

On July 25, 2018 the Services "issued three proposed regulatory packages revising the ESA regulations." ECF No. 28 ¶¶ 38-40; 83 Fed. Reg. 35,193 (July 25, 2018) ("Proposed Listing

---

[2] "When the acting agency is either the [NMFS] or the FWS, the obligation to consult is not relieved, instead, the agency must consult within its own agency to fulfill its statutory mandate." *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)).

2

Rule"); 83 Fed. Reg. 35,178 (July 25, 2018) ("Proposed Interagency Consultation Rule"); 83 Fed. Reg. 35,174 (July 25, 2018) ("Proposed 4(d) Rule") (collectively, the "Proposed Rules"). The "three proposed regulatory changes sought to carry out Executive Order 13777, which directs federal agencies to eliminate allegedly 'unnecessary regulatory burdens.'" *Id.* ¶ 38; 82 Fed. Reg. 12,285 (Mar. 1, 2017). The Services characterized the Proposed Rules as changes to assist and increase clarity and transparency in implementation of the ESA. ECF No. 38 ¶ 4. After accepting comments on the proposed revisions, *id.* ¶¶ 41, the Services issued three Final Rules: (1) the Listing Rule, 84 Fed. Reg. 45,020; (2) the Interagency Consultation Rule, 84 Fed. Reg. 44,976; and (3) the 4(d) Rule, 84 Fed. Reg. 44,753. *Id.* ¶¶ 44-93.

### B. Procedural Background

On August 21, 2019, seven non-profit organizations – the Center for Biological Diversity, Defenders of Wildlife, the Natural Resources Defense Council, the National Parks Conservation Association, WildEarth Guardians, and the Humane Society of the United States (collectively "Conservation Group Plaintiffs" or "Plaintiffs") – brought this action to challenge the Services' decision to promulgate the Final Rules. ECF No. 1; ECF No. 28 ¶ 1. Conservation Group Plaintiffs allege that the Services' issuance of the Final Rules violates the ESA, the Administrative Procedure Act ("APA"), and the National Environmental Policy Act ("NEPA"). ECF No. 28 ¶¶ 5-7. The operative first amended complaint ("FAC") alleges six claims for relief: (1) "failure to prepare an adequate Environmental Impact Statement in violation of NEPA; (2) "failure to provide adequate notice and comment" in violation of the APA; (3) "failure of rational decisionmaking" and actions "contrary to law" with respect to ESA Section 7 regulatory revisions, in violation of the ESA and APA; (4) "failure of rational decisionmaking with respect to repeal of blanket 4(d) rule," in violation of the ESA and APA; (5) "failure of rational decisionmaking" and actions "contrary to law" with respect to ESA Section 4 regulatory revisions, in violation of the ESA and APA; and (6) failure to consult under ESA Section 7. *Id.* ¶¶ 94-128.

On December 6, 2019, Federal Defendants moved to dismiss Conservation Group Plaintiffs' FAC for lack of jurisdiction. ECF No. 33. Conservation Group Plaintiffs oppose this motion, ECF No. 48, and Federal Defendants have filed a reply, ECF No. 58.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction, and the suit must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Where, as here, defendants make a facial attack,[3] the court assumes that the allegations are true and draws all reasonable inferences in plaintiffs' favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted); *Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). A court addressing a facial attack must confine its inquiry to the allegations in the complaint. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## III. DISCUSSION

"Federal Defendants request that the Court dismiss Plaintiffs' Complaint because they lack Article III standing and the claims are not ripe for judicial review." ECF No. 33 at 2, 12. The Court will find that Conservation Group Plaintiffs lack standing to challenge the Services' promulgation of the Final Rules.

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ⸺ U.S. ⸺, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

---

[3] Defendants "move to dismiss the complaints on facial grounds." ECF No. 33 at 24.

imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Because "[t]he party invoking federal jurisdiction bears the burden of establishing these elements," they are "an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518, (1975)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, ––– U.S. –––, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

An organization has standing to bring suit on behalf of its members when (1) "its members would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482-83 (9th Cir. 2011) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)). An organization may also have "direct standing" to "seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (internal quotation mark and citation omitted); *Physicians for Integrity in Medical Research, Inc. v. Commissioner*, No. CV 11-08334 GAF (FMOx), 2012 WL 12882760, at *2 (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Where an organization seeks to sue on its own behalf, the Court "conduct[s] the same [standing] inquiry as in the case of an individual." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982).

### A. Standing on Behalf of Members

Federal Defendants argue that the Conservation Group Plaintiffs cannot demonstrate standing on behalf of its members because they do not "allege any specific *facts*" as to how members are harmed by the Final Rules. *See* ECF No. 33 at 26. The Court agrees.

5

"It is common ground that [] organizations can assert the standing of their members." *Summers v. Earth Inst.*, 555 U.S. 488, 494 (2009). To show the concrete and particularized injury that standing requires, an organization "must provide 'specific allegations establishing that at least one identified member [has] suffered or would suffer harm.'" *W. Watersheds Project v. Kraayenbrink*, 632 F.3d at 483 (citing *Summers*, 555 U.S. at 498). "While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." *Summers*, 555 U.S. at 494 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-36 (1972)).

Conservation Group Plaintiffs allege that "their members use threatened and endangered species and their critical habitat located in California and other states nationwide for recreational, scientific, and aesthetic purposes." ECF No. 28 ¶ 13. While Plaintiffs claim that their "members" derive "scientific, recreational, aesthetic, and conservation benefits" from "threatened and endangered species and their critical habitat," *id.*, the FAC fails to show that "at least one *identified* member [has] suffered or would suffer harm." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d at 483 (9th Cir. 2011) (emphasis added) (citation omitted). Therefore, Conservation Group Plaintiffs fail to demonstrate injury-in-fact with respect to their members. *Summers*, 555 U.S. at 498 ("[O]ur prior cases . . . have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm."); *Campbell v. Jilik*, No. C09-1305-JCC, 2010 WL 2605239, at *5 (W.D. Wash. June 25, 2010) ("Because the complaint fails to identify any of the group's members, the group cannot invoke this Court's jurisdiction in order to litigate the rights of injured members."); *but see Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("We are not convinced that *Summers* . . . stands for the proposition that an injured member of an organization must *always* be specifically identified in order to establish Article III standing for the organization. . . . However, even if *Summers* and other cases are read to require that an organization always identify by name individual members who have been or will be injured in order to satisfy Article III, the district court erred in dismissing the complaint without granting leave to amend.") (emphasis added).

In support of their opposition to Federal Defendants' motion to dismiss, Conservation Group Plaintiffs filed several declarations which identify members with alleged "concrete interest[s]" stemming from their "use and enjoyment of imperiled species and their habitat throughout the country." ECF No. 48 at 13-14, 20-21; *see* ECF Nos. 48-1, 48-2, 48-3, 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-12, 48-13, 48-14, 48-15, 48-16, 48-17, 48-18, 48-19, 48-21, 48-22, 48-23, 48-24. "However, defendants' motion is a facial challenge, which means the court may look only to the complaint and any documents attached thereto; it cannot consider extrinsic evidence." *EduMoz, LLC v. Republic of Mozambique*, No. CV 13-02309 MMM (CWx), 2014 WL 12802921, at *8 (C.D. Cal. July 24, 2014); *see Savage*, 343 F.3d at 1039 n.2 (9th Cir. 2003) (A court addressing a facial attack "confin[es] the inquiry to allegations in the complaint."); *Cal. Sportfishing Protection Alliance v. All Star Auto Wrecking, Inc.*, 860 F. Supp. 2d 1144, 1150-51 ("Though both parties have supplied the Court with extrinsic evidence, Defendants' motion to dismiss clearly attacked the sufficiency of the allegations in the FAC to establish jurisdiction on its face."); ECF No. 33 at 24 ("Here, we move to dismiss the complaints on facial grounds."). Therefore, the FAC fails to establish a concrete and particularized injury in fact with respect to Conservation Group Plaintiffs' members.

### B.   Direct Standing

An organization suing on its own behalf can establish an injury when it suffers "'both a diversion of its resources and a frustration of its mission.'" *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002)). "It cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *Id.* (citing *Fair Emp't Council v. BMC Mktg. Corp.,* 28 F.3d 1268, 1276-77 (D.C. Cir.1994)). "However, when an organization is forced to divert its resources to 'identify and counteract' unlawful activity that frustrates its mission, 'there can be no question that [the] organization has suffered an injury in fact' sufficient 'to warrant [its] invocation of federal-court jurisdiction.'" *Animal Legal Defense Fund v. Great Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 WL 2568685 (quoting *Havens Realty Corp*, 455 U.S. at 378-79); *Comite de*

*Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc).

Conservation Group Plaintiffs allege that "by unlawfully requiring that economic analyses be prepared before any species may be listed, the regulations require [them] to spend resources addressing economic considerations that under the prior regulatory regime and the statute itself have no role in the Service's listing process." ECF No. 28 ¶ 15. In particular, "the insertion of economic factors into the listing process. . . exacerbate[es] the Services' delays in responding to listing petitions" and "requir[es] the expenditure of further resources as plaintiffs expend time and effort (on notice letters and other communications with the Services) attempting to ensure that its petitions are addressed in a timely manner." *Id.* Plaintiffs also allege that "the regulatory changes greatly frustrate and impede the [Center for Biological Diversity's] core mission to obtain critically important legal and practical protections for species at grave risk of extinction." *Id.* ¶ 14.

Federal Defendants argue that the FAC fails to show that the regulations require Conservation Group Plaintiffs to "divert any resources from core organizational functions." ECF No. 58 at 26. The argument is well-taken. The Ninth Circuit has found organizational standing where an association is forced to direct resources "to combat the particular [conduct] in question" rather than expending such resources toward the group's core organizing activities or some other aspect of their organizational purpose. *See, e.g., Smith v. Pacific Properties and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (Plaintiff had "to divert its scarce resources from other efforts" so it could "monitor the violations and educate the public regarding the discrimination"); *Comite de Jornaleros*, 657 F.3d at 943 ("[R]esources spent in assisting day laborers during their arrests and meeting with workers about the status of the ordinance would have otherwise been expended toward [the advocacy group's] core organizing activities."); *Nat'l Council of La Raza*, 800 F.3d at 1040 ("But for defendants' violations . . . Plaintiffs 'would be able to allocate substantial resources to other activities central to [their] mission[s].'"). The Ninth Circuit has rejected standing, however, where an organization is "merely going about its business as usual" rather than "diverting[] any resources." *Am. Diabetes Association v. U.S. Dept. of the Army*, 938 F.3d 1147, 1154-55 (9th Cir. 2019).

Conservation Group Plaintiffs fail to allege any diversion or reallocation of resources from their core mission and activities. Plaintiffs allege that the Final Rules "require[] the expenditure of further resources as plaintiffs expend time and effort (on notice letters and other communications with the Services) attempting to ensure that its petitions are addressed in a timely manner." ECF No. 28 ¶ 15. However, they fail to show how this "expenditure of further resources," *id.*, diverts any resources from its core mission or deviates from "going about its business as usual." *See Am. Diabetes Association*, 938 F.3d at 1154-55. Given that the Center for Biological Diversity "routinely submits formal petitions for the listing of imperiled species as endangered or threatened," ECF No. 28 ¶ 14, the insertion of economic considerations into these listing petitions and expenditure of additional time and effort to communicate with the Services about these petitions does not divert resources from the Center's core activities and purposes. *Id.* ¶ 15. Plaintiffs' alleged "additional expenditures [are] consistent with [their] typical activities" and, thus, are insufficient to demonstrate injury-in-fact. *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 286 (3d Cir. 2014).[4]

### C.  Procedural Standing

"To establish an injury-in-fact, a plaintiff challenging the violation of a procedural right must demonstrate (1) that he has a procedural right that, if exercised, could have protected his concrete interests, (2) that the procedures in question are designed to protect those concrete interests, and (3) that the challenged action's threat to the plaintiff's concrete interests is reasonably probable." *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (citing *Citizens for Better Forestry*, 341 F.3d 961, 969-70 (2003)).

Conservation Group Plaintiffs argue that they have standing to sue based on several "procedural injuries that . . . affect concrete interests of their members in specific regions and to

---

[4] In support of their opposition to Federal Defendants' motion to dismiss, Conservation Group Plaintiffs filed several declarations which note "forced expenditure and diversion of resources" beyond those alleged in the FAC. "However, defendants' motion is a facial challenge, which means the court may look only to the complaint and any documents attached thereto; it cannot consider extrinsic evidence." *EduMoz*, 2014 WL 12802921, at *8; *see Savage*, 343 F.3d at 1039 n.2 (A court addressing a facial attack "confin[es] the inquiry to allegations in the complaint."). The Court therefore declines to consider these declarations.

specific species throughout the country." ECF No. 48 at 23. As discussed above, Plaintiffs have failed to allege any underlying concrete interests with respect to its members or itself. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496 ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction."). Therefore, Plaintiffs' alleged procedural injuries are insufficient to create Article III standing. *See Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010) ("[P]rocedural injury, standing on its own, cannot serve as an injury-in-fact.").

## CONCLUSION[5]

For the foregoing reasons, the Court grants Federal Defendants' motion to dismiss. Any amended complaint must be filed within 21 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: May 18, 2020



JON S. TIGAR

United States District Judge

---

[5] Because the Court has found that Conservation Group Plaintiffs lack standing, it need not address whether Plaintiffs' claims are ripe for judicial review.