KRISTEN L. BOYLES (CSBA # 158450)
PAULO PALUGOD (NYBA # 5047964)
*[Admitted Pro Hac Vice]*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA  98104
Ph: (206) 343-7340
kboyles@earthjustice.org
ppalugod@earthjustice.org

ANDREA A. TREECE (CSBA # 237639)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111
Ph: (415) 217-2089
atreece@earthjustice.org

*Attorneys for Plaintiffs*
*[Additional counsel listed at end]*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, NATIONAL PARKS CONSERVATION ASSOCIATION, WILDEARTH GUARDIANS, and THE HUMANE SOCIETY OF THE UNITED STATES, | Case No. 4:19-cv-05206-JST Related Cases: No. 4:19-cv-06013-JST No. 4:19-cv-06812-JST |
| *Plaintiffs*, | PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR |
| v. | |
| DEB HAALAND, U.S. Secretary of the Interior, U.S. FISH AND WILDLIFE SERVICE, GINA RAIMONDO, U.S. Secretary of Commerce, and NATIONAL MARINE FISHERIES SERVICE, | |
| *Defendants*, | |
| and | |
| STATE OF ALABAMA, *et al.*, | |
| *Defendant-Intervenors* | |

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 6

I.     REMAND *WITH* VACATUR IS THE APPROPRIATE REMEDY ................... 6

    A.     The 2019 Rules Suffer from Serious Substantive and Procedural Errors that Will Likely Result in a Different Outcome on Remand ......... 8

    B.     Remand Without Vacatur Would Cause Significant Disruptive Consequences and Harm to Imperiled Species and Habitat ................... 12

        1.     The 2019 Rules will continue to cause harm to Plaintiffs' interests by harming threatened and endangered species and their habitat ................................................................................ 13

        2.     Leaving the 2019 Rules in effect will cause legal turmoil and public confusion, while vacatur will not cause significant regulatory disruption ................................................. 18

        3.     Remand with vacatur is within the Court's equitable powers .......................................................................................... 21

II.     IN THE ALTERNATIVE, THE COURT SHOULD DENY THE SERVICES' MOTION FOR VOLUNTARY REMAND AND ADDRESS THE MERITS OF THIS CASE. ...................................................................... 23

CONCLUSION ..................................................................................................................... 25

TABLE OF AUTHORITIES

Page(s)

**Cases**

*All. for Wild Rockies v. Marten*,
2018 WL 2943251 (D. Mont. June 12, 2018)........................................................22

*All. for the Wild Rockies v. U.S. Forest Serv.*,
907 F.3d 1105 (9th Cir. 2018) .................................................................................6

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n.*,
988 F.2d 146 (D.C. Cir. 1993)...............................................................7, 8, 12, 13

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
No. 01-00640-SI, ECF 2396 (D. Or. Aug. 18, 2021) ...........................................16

*AquAlliance v. U.S. Bureau of Reclamation*,
312 F. Supp. 3d 878 (E.D. Cal. 2018)...................................................................21

*ASSE Int'l, Inc. v. Kerry*,
182 F. Supp. 3d 1059 (C.D. Cal. 2016) ............................................................7, 21

*Burke v. Coggins*,
521 F. Supp. 3d 31 (D.D.C. 2021).........................................................................20

*Cal. by & Through Becerra v. Azar*,
501 F. Supp. 3d 830 (N.D. Cal. 2020) ..................................................................19

*Cal. Cmtys. Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012) ................................................................6, 7, 13, 22

*California v. BLM*,
277 F. Supp. 3d 1106 (N.D. Cal. 2017) ................................................................22

*Center for Biological Diversity v. Haaland*,
Case No. 4:19-cv-05206- JST (N.D. Cal. filed Aug. 19, 2019)...........................1, 11

*Chlorine Chemistry Council v. EPA*,
206 F.3d 1286 (D.C. Cir. 2000)............................................................................24

*In re Clean Water Act Rulemaking*,
Nos. 20-04636-WHA, 20-04869-WHA, 20-06137-WHA, 2021 WL 4924844
(N.D. Cal Oct. 21, 2021*), appeals docketed and motions to stay filed by
defendant-intervenors*, Nos. 21-16958, 21-16960, 21-16961 (9th Cir.)................22

*Ctr. for Env't Health v. Vilsack*,
2016 WL 3383954 (N.D. Cal. June 20, 2016) ...................................................6, 18

*Ctr. For Food Safety v. Vilsack*,
734 F. Supp. 2d 948 (N.D. Cal. 2010) ...............................................................6, 13

*Ctr. for Native Ecosystems v. Salazar,*
   795 F. Supp. 2d 1236 (D. Colo. 2011)..........................................................................21, 22

*Humane Soc'y of the U.S. v. Locke,*
   626 F.3d 1040 (9th Cir. 2010) ................................................................................................6

*Idaho Farm Bureau Fed'n v. Babbitt,*
   58 F.3d 1392 (9th Cir. 1995) ...........................................................................................6, 13

*Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.,*
   109 F. Supp. 3d 1238 (N.D. Cal. 2015) ....................................................................7, 11, 21

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Pena,*
   2015 WL 1567444 (D. Or. Apr. 6, 2015) .............................................................................21

*California ex rel. Lockyer v. U.S. Dep't of Agric.,*
   575 F.3d 999 (9th Cir. 2009) ................................................................................................11

*N. Coast Rivers All. v. Dep't of the Interior,*
   2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ................................................................22, 23

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs,*
   454 F. Supp. 3d 985 (D. Mont. 2020) ..................................................................................16

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*
   2005 WL 1278878 (D. Or. 2005)..........................................................................................16

*National Audubon Soc'y v. U.S. Fish and Wildlife Serv.,*
   Order, No. 21-448 (S.D.N.Y. April 9, 2021) .........................................................................5

*North Carolina v. EPA,*
   531 F.3d 896 (D.C. Cir. 2008) ..........................................................................................8, 12

*Nw. Env't Advocs. v. EPA,*
   2018 WL 6524161 (D. Or. Dec. 12, 2018) .............................................................................6

*Or. Nat. Desert Ass'n v. Zinke,*
   250 F. Supp. 3d 773 (D. Or. 2017) .......................................................................................11

*Pascua Yaqui Tribe v. EPA,*
   2021 WL 3855977 (D. Ariz. Aug. 30, 2021) ........................................................................22

*Pollinator Stewardship Council v. EPA,*
   806 F.3d 520 (9th Cir. 2015) ..................................................................................... *passim*

*Scientists' Inst. for Pub. Info. v. Atomic Energy Comm'n,*
   481 F.2d 1079 (D.C. Cir. 1973)............................................................................................11

*SKF USA, Inc. v. United States,*
   254 F.3d 1022 (Fed. Cir. 2001).............................................................................................23

*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.,*
   2021 WL 3667986 (D. Alaska Aug. 18, 2021).....................................................................16

*Tenn. Valley Auth. v. Hill*,
  437 U.S. 153 (1978) ..........................................................................................................17

*Util. Solid Waste Activities Grp. v. EPA*,
  901 F.3d 414 (D.C. Cir. 2018) ..........................................................................................24

*Wagner v. Principi*,
  370 F.3d 1089 (Fed. Cir. 2004) ........................................................................................24

**Statutes**

2019 Endangered Species Act ............................................................................. *passim*

Administrative Procedure Act.............................................................................. *passim*

Clean Water Act.........................................................................................................22

ESA § 4 .....................................................................................................................14

ESA § 7 ................................................................................................................ *passim*

ESA § 7(a)(2) ............................................................................................................15

Migratory Bird Treaty Act ..........................................................................................5

National Environmental Policy Act ..................................................................... *passim*

**Other Authorities**

84 Fed. Reg. 44,753 ("Section 4(d) Rule")..................................................... 1, 9, 19

84 Fed. Reg. 44,976 ("Section 7 Rule") ............................................................ *passim*

84 Fed. Reg. 45,020 ("Section 4 Rule") ............................................................ *passim*

84 Fed. Reg. 64,210 (Nov. 21, 2019)........................................................................15

86 Fed. Reg. 2,744, 2,845 (Jan. 13, 2021) ......................................................... 16, 17

86 Fed. Reg. 30,888, 30,890 (June 10, 2021) ...........................................................15

86 Fed. Reg. 31,668, 39,690–91 (June 15, 2021) .....................................................14

Executive Order 13990 ........................................................................................3, 5, 12

INTRODUCTION[1]

Federal defendants, the U.S. Fish and Wildlife Service and the National Marine Fisheries Service (collectively "the Services"), have filed a motion for voluntary remand *without* vacatur of the 2019 Endangered Species Act ("ESA") regulations challenged in these three related cases (the "2019 Rules").[2]   Remand without vacatur is simply not appropriate given the Services' own acknowledgement that the current rules are substantially flawed.  Those acknowledged flaws— which mirror the issues raised in Plaintiffs' motions for summary judgment—should compel this Court to deny the motion to remand without vacatur and either remand *with* vacatur or proceed to rule on the motions for summary judgment.

The Services' remand motion is remarkable for several reasons.  First, the Services admit to "substantial and legitimate" problems with the legality of the 2019 Rules—even noting at one point that they share many of Plaintiffs' concerns with the 2019 Rules.  *See* ECF 146,[3] ("Fed. Mot.") at 22–23; *see also id*. at 25 ("although we may disagree with Plaintiffs' substantive and procedural challenges, Plaintiffs identify many of the same concerns with the 2019 ESA Rules"). The Services do not defend the 2019 Rules at all, making no merits arguments on any claims raised in Plaintiffs' summary judgment motions.

Second, although this Court denied the Services' motion to stay the litigation in October 2021, the Services once again ask for essentially the same result: a permanent end to the litigation without any ruling by this Court on the merits and without any change in the currently

---

[1] Plaintiffs in each of the three related cases are filing the same joint opposition.

[2] The challenged ESA regulations are: 84 Fed. Reg. 45,020 ("Section 4 Rule"), 84 Fed. Reg. 44,753 ("Section 4(d) Rule"), and 84 Fed. Reg. 44,976 ("Section 7 Rule").

[3] Unless otherwise noted, all ECF references are to numbers from the earliest filed case, *Center for Biological Diversity v. Haaland*, Case No. 4:19-cv-05206- JST (N.D. Cal. filed Aug. 19, 2019).

controlling ESA regulations for an indefinite period of time.  The Services seek voluntary remand without vacatur, a path that would leave the illegal and harmful 2019 Rules in place for months, if not years, to come.  Plaintiffs already addressed their substantial concerns with a course of action that leaves the 2019 Rules in place for any significant length of time during the briefing and argument on the stay motion, *see* ECF 135 at 6–11; ECF 145 ("Stay Transcript") at 6–7, and the Court found that the harm from the continuing application of the 2019 Rules warranted denial of that motion.  Stay Transcript at 21–23.

Third, the Services now inform the Court and the parties that they have ceased work *entirely* on any proposed new rulemakings, despite having previously proffered a schedule for rulemaking and despite having made "significant progress" on the revised rules before pulling the plug once this Court denied the stay motion.  ECF 146-1, Third Frazer Decl. ¶¶ 12–13; ECF 146-2, Fourth Rauch Decl. ¶¶ 9–10.  During the briefing and hearing on the stay motion, the Services informed the Court that these new rulemakings were a high priority, and that they planned to submit two of the proposed rules to the Office of Management and Budget ("OMB") by October 18, 2021.  Instead of moving quickly to address their "substantial and legitimate" concerns with the 2019 Rules, the Services now state that, in light of this Court's denial of their stay motion, they have opted to do nothing at all—declining even to submit proposed rules to OMB for review—unless and until the Court grants the Services' motion for remand without vacatur or rules on Plaintiffs' pending summary judgment motions.  Fed. Mot. at 22–23; Third Frazer Decl. ¶¶ 12–14; Fourth Rauch Decl. ¶¶ 6, 9–11.  It is hard to see how delaying proposals that would address the Services' "substantial and legitimate" concerns with the 2019 Rules prioritizes the conservation of imperiled species and their habitat.  With no work being done on any proposed rule revisions or rescission, neither Plaintiffs nor the Court can be sure that the

Services will act in a timely way on remand, a situation that demands vacatur of the unlawful and harmful 2019 Rules as the baseline for species protection.

Granting the Services' motion for remand without vacatur would be contrary to law and would harm imperiled species, critical habitat, and Plaintiffs' conservation interests.  Plaintiffs consequently ask the Court to deny the Services' remand motion, and instead remand *with* vacatur, as the Services admit that the 2019 Rules suffer from significant deficiencies, and they have failed to meet their burden to show that equity demands leaving the rules in place.  In the alternative, if the Court declines to vacate the 2019 Rules, it should deny remand altogether and address the legal issues raised in Plaintiffs' motions for summary judgment, issues that the Services have failed entirely to defend, and in many respects, now acknowledge are unlawful and must be fixed.

BACKGROUND

In 2019, in three separate rulemakings, the Services issued sweeping regulatory changes to the longstanding rules interpreting and implementing the ESA, our nation's bedrock law to protect and recover imperiled species and their habitats.  This Court is familiar with what happened next.  Three sets of Plaintiffs challenged the 2019 Rules as violating the ESA, the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA").  After the cases were related, the Services moved to dismiss the complaints on standing and ripeness grounds.  When that effort failed, the Services produced a lengthy administrative record (with instruction from the Court), and Plaintiffs filed motions for summary judgment on January 18 and 19, 2021.

Upon taking office on January 20, 2021, President Biden immediately issued Executive Order 13990, directing the Services to review the 2019 Rules with an eye toward maximizing

environmental protections.  Plaintiffs then agreed to three successive stays to allow the Services time to review and determine whether to rescind or revise the 2019 Rules—despite the fact that the Services continued to apply aspects of the rules in many of their decisions to the detriment of protected species and habitat.  But when the Services moved to extend the stay until at least December 2022 and January 2023—the dates on which the Services estimated they would issue new ESA rules, ECF 132 at 1, 8, 10—Plaintiffs opposed such a prolonged stay.

After argument on October 7, 2021, the Court denied the Services' stay motion and ordered the parties to submit a proposed schedule to re-commence summary judgment briefing. ECF 138.  The Court specifically found that "the government has conceded today that the Services continue to apply aspects of the challenged rules in their decisions, potentially or actually injuring the interests that plaintiffs filed this litigation to protect."  Stay Transcript at 21. The Court continued:

> The government argues that the plaintiffs' challenge is as applied and not as to
> any particular agency decision.  But I am not persuaded by that argument.  It's not
> that the plaintiffs don't want these regulations applied in a particular situation.
> They don't want them applied in any situation.  And so while they're on the
> books, I think that the plaintiffs make out a case of a possible damage.

*Id*. at 22–23.

Pursuant to the parties' stipulated and court-approved summary judgment briefing schedule, Plaintiffs re-filed their motions for summary judgment on October 15, 2021.  On December 10, 2021, the Services filed "Federal Defendants' Motion for Voluntary Remand; Response to Plaintiffs' Motions for Summary Judgment; and Memorandum of Points and Authorities."  ECF 146.  Despite its title, the Services' filing does not touch upon the substance of Plaintiffs' motions for summary judgment and, instead, is solely focused on advocating for voluntary remand *without* vacatur.  In essence, despite the Court's recent denial of the Services'

stay motion, the Services are again asking this Court to keep the rules in effect indefinitely

without any ruling on the merits.

At the same time, it is now clear that the rulemakings will take even longer than

previously represented, as the Services ceased all work on the rulemakings immediately

following the Court's order denying their stay motion.  According to the Services:

> Due to the uncertainty surrounding the possible status of the challenged rules after
> the Court resolves Plaintiffs' motions for summary judgment, DOI does not
> intend to submit proposed rules to OMB until after the Court issues a decision on
> the motions.  Instead, DOI is moving on to other agency priorities in the near
> term.  However, should the Court remand the rules to the Services as requested,
> FWS would again make the rulemaking revisions a high priority, and rulemaking
> would once again proceed expeditiously.

Third Frazer Decl. ¶ 14; *see also* Fourth Rauch Decl. ¶ 11 (same).  Given this capricious

response to the Court's denial of their stay motion, it is hard to countenance the Services'

position that these rules purportedly would rise to a "high priority" even after a remand,

especially if these cases are no longer pending.[4]

In support of their current motion, the Services also acknowledge that they have

"substantial and legitimate concerns over many aspects of these rules."  Fed. Mot. at 22–23;

Fourth Rauch Decl. ¶ 7 ("NOAA has substantial concerns about whether portions of the 2019

Joint ESA Rules are consistent with the goals and purposes of the ESA and EO 13990"); Third

Frazer Decl. ¶ 4 ("After completing its review of the regulations, DOI has identified substantial

concerns that warrant reexamination of each of the challenged rules").  The Services identify

---

[4] Ongoing litigation has not precluded the Services from working on, and in fact expediting, new
rulemakings to reverse prior administration rules.  For example, in litigation over Migratory Bird
Treaty Act rules, FWS did not stop working on a new rulemaking after the court stated it was
"highly unlikely to entertain additional requests to delay this case due to the pendency of a new
regulation" and plaintiffs filed for summary judgment.  *National Audubon Soc'y v. U.S. Fish and
Wildlife Serv.*, Order, No. 21-448 (VEC) (S.D.N.Y. April 9, 2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

numerous specific "substantial concerns" with various sections of the 2019 Rules.  Fed. Mot. at 20, 23–25; Third Frazer Decl. ¶¶ 4–11; Fourth Rauch Decl. ¶¶ 7–8.  In fact, in a brief with a 10-page argument section, the Services' list of substantial concerns spans half of the pages.  And despite the fact that many of these concerns mirror those raised by Plaintiffs, the Services make no attempt to actually address the arguments raised in Plaintiffs' summary judgment briefs.

ARGUMENT

I.     REMAND *WITH* VACATUR IS THE APPROPRIATE REMEDY.

Vacatur is the normal remedy in cases where a court orders a remand of a challenged agency action.  *See, e.g., All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018).  Remand without vacatur is an unusual and disfavored remedy, ordered only in "rare circumstances" when the balance of equities requires that the rules remain in place pending reconsideration.  *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010); *see Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) ("We order remand without vacatur only 'in limited circumstances' … only 'when equity demands' that we do so") (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) and *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)); *Ctr. For Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 951 (N.D. Cal. 2010) ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely serious irreparable environmental injury.").  Because vacatur is the "ordinary remedy," the Services "bear[] the burden of demonstrating vacatur is inappropriate."  *Nw. Env't Advocs. v. EPA*, 2018 WL 6524161, at *3 (D. Or. Dec. 12, 2018); *see also Ctr. for Env't Health v. Vilsack,* 2016 WL 3383954, at *13 (N.D. Cal. June 20, 2016) ("[G]iven that vacatur is the presumptive remedy for a ... violation such as this, it is Defendants' burden to show that vacatur is unwarranted").

When weighing the equities of leaving a challenged rule in place while an agency reconsiders it, courts in the Ninth Circuit apply the two-part test described in *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n.*, 988 F.2d 146 (D.C. Cir. 1993).[5]  The *Allied-Signal* test evaluates both: (1) the seriousness of the agency's errors, and (2) the potential disruptive consequences of vacatur.  *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citing *Allied-Signal*, 988 F.2d at 150–51).  In analyzing the first factor, courts assess "whether the agency ... could adopt the same rule on remand, or whether [the] fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand."  *Pollinator Stewardship Council*, 806 F.3d at 532.  As to the second factor, "courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error."  *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (internal quotations and citations omitted).

Here, the Services fail to meet the high bar for remand without vacatur.  For the reasons detailed in Plaintiffs' summary judgment briefs, the 2019 Rules violate the ESA, NEPA, and the APA.  *See generally* ECF 142.  Indeed, the Services concede that the 2019 Rules have substantial flaws, that their continued implementation will cause confusion and disruption, and, as a result, the Services plan to reconsider and replace the rules.  Fed. Mot. at 23–25; Third Frazer Decl. ¶¶ 4–11; Fourth Rauch Decl. ¶¶ 7–8; Stay Transcript at 14–25.  Moreover, the Services have made only a faint attempt to demonstrate why equity demands that the 2019 Rules be left in place.  Yet the overwhelming and potentially irreversible harms from continuing to apply the 2019 Rules for an unspecified, and likely lengthy, new rulemaking period vastly

---

[5] "Courts faced with a motion for voluntary remand employ the same equitable analysis" that "courts use to decide whether to vacate agency action after a rul[ing] on the merits."  *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064 (C.D. Cal. 2016) (quotations omitted).

outweigh any disruption from vacating the rules promptly and restoring the previous long-standing regulatory framework that is familiar to the Services, Plaintiffs, regulated entities, and the public.  Accordingly, because both *Allied-Signal* factors strongly support the ordinary and favored remedy of vacatur, the Court should exercise its equitable authority and vacate the 2019 Rules on remand.

A.  The 2019 Rules Suffer from Serious Substantive and Procedural Errors that Will Likely Result in a Different Outcome on Remand.

Vacatur of the 2019 Rules is justified because the 2019 Rules are unlawful, as discussed in detail in Plaintiffs' summary judgment motions, and the Services have offered no defense. The first *Allied-Signal* factor is met, as the seriousness of an agency's errors turns on "the extent of doubt whether the agency chose correctly."  *Allied-Signal*, 988 F.2d at 150 (quotation omitted).  In other words, if the agency is likely to be able to justify its decision on remand, the errors were likely not serious and vacatur may not be appropriate.  *See id.* at 150–51.  But if the outcome of a rule is likely to change on remand, as here, vacatur is warranted to address the agency's serious errors while the agency reconsiders the challenged rule.  *Id.*; *see also Pollinator Stewardship Council*, 806 F.3d at 532 (to meet its burden of proof regarding no vacatur, an agency must be able to show that it "could adopt the same rule on remand"); *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008) (finding that the court must vacate agency rule where its "fundamental flaws" foreclose the agency "from promulgating the same standards on remand") (quotation omitted).

Here, the Services committed a number of serious substantive and procedural errors that will change the outcome and preclude readoption of the same rules on remand, and they failed to offer any defense of the 2019 Rules at all in response to Plaintiff's Motion for Summary Judgment.  *See* Fed. Mot. at 22–23, 25, 30; Third Frazer Decl. ¶¶ 4–11; Fourth Rauch Decl. ¶¶

7–8.  For example, FWS eliminated the Blanket 4(d) Rule, the 40-year-old rule that provided immediate protection to threatened species, without offering a rational connection between the facts found and the choice made, or providing an adequate justification for its change in long-standing policy.  *See* ECF 142 at 15–19.  FWS now admits to substantial concerns regarding elimination of the Blanket 4(d) Rule, acknowledging that the Section 4(d) Rule (eliminating the Blanket 4(d) Rule) "provides less flexibility and may require additional resources at the time of listing as compared to the blanket rule," and that their "prior practice worked to conserve threatened species efficiently by providing protections for every newly listed threatened species in the absence of species-specific 4(d) rules."  Third Frazer Decl. ¶ 5; *see also* Fed. Mot. at 23.  For the Section 4(d) Rule, remand will change the outcome without question, as FWS plans to rescind the rule entirely.  Third Frazer Decl. ¶ 5; Fed. Mot. at 17.

The Section 4 and Section 7 Rules also violate the ESA for the many reasons detailed in Plaintiffs' motions for summary judgment.  *See, e.g.*, ECF 142 at 7 ("[I]nject[ing] economic considerations into the listing process violates the plain language of the ESA and is arbitrary and capricious." (quotations omitted)); *id.* at 7–8 (definition of foreseeable future "violates the ESA's plain language, its best available science requirement, and Congress's intent to give the benefit of the doubt to the species." (quotations omitted)); *id.* at 9–10 (changes to the delisting process undermine the conservation purpose of the ESA); *id.* at 20 ("[R]evisions to [the Services'] longstanding regulations governing consultation violate the plain language of Section 7, ... undermine the ESA's conservation purposes and contradict Congress's intent to prioritize species protection over the primary missions of federal agencies.").

Again, the Services do not defend these violations, but instead acknowledge significant concerns with the legality of the 2019 Rules.  For example, with regard to the Section 4 Rule, the

Services admit to "similar concerns" with their removal of regulatory language that reinforces the statutory mandate that the Services may not consider economic information in their listing decisions.  Fed. Mot. at 23 (the removal of this language "has the potential to cause confusion regarding the Services' intentions" and may also "create a risk that economic information may influence the listing determination, which would run afoul of the statutory language"); Third Frazer Decl. ¶¶ 6–7; *see also* Fourth Rauch Decl. ¶ 7.  In fact, the Services previously committed to remove this language in its entirety and reinstate the prior language, a 180-degree change from the 2019 Rules.  Fed. Mot. at 17, 23.

The Services further admit to having "substantial concerns" about several other provisions in the Section 4 and Section 7 Rules.  Fed. Mot. at 24–25.  These include provisions: (1) expanding the circumstances under which the Services may determine it is "not prudent" to designate critical habitat; (2) limiting the circumstances under which the Services may designate currently unoccupied critical habitat; and (3) redefining the "effects of the action" for purposes of Section 7 inter-agency consultation.  Third Frazer Decl. ¶¶ 7–9, 11; *see also* Fourth Rauch Decl. ¶ 7.  Some of the statements in the Third Frazer Declaration on these aspects of the 2019 Rules are, again, strikingly similar to the arguments made in Plaintiffs' summary judgment motions.[6]  The Services further note that aspects of the Section 7 revisions could result "in

---

[6] *See* Third Frazer Decl. ¶¶ 7–9 (among other acknowledged issues and concerns with the 2019 Rules: (1) the "not prudent" rule erroneously suggested that the Services can "regularly decline to designate critical habitat for species threatened by climate change"; (2) revisions regarding unoccupied habitat "may go beyond their intended purpose" of ensuring that critical habitat designations "actually contribute to" species conservation; and (3) "changes to related to 'effects of the action' could be erroneously interpreted by other agencies or the public to narrow the type and/or extent of effects of a proposed federal agency action that the Services will consider during the consultation process").

allocation of resources that could detract from the Services' effective implementation of Section 7." Third Frazer Decl. ¶ 9.

The Services also violated NEPA in adopting the 2019 Rules. *See* ECF 142 at 29–36. The Services again acknowledge "substantial concerns" relating to their NEPA compliance. Fed. Mot. at 25; Third Frazer Decl. ¶ 10; Fourth Rauch Decl. ¶ 8. The Services did not engage in any NEPA review of the 2019 Rules, despite the fact that these regulations constitute major federal actions for which an environmental review is required. *See* ECF 142 at 29–36; *Scientists' Inst. for Pub. Info. v. Atomic Energy Comm'n*, 481 F.2d 1079, 1088 (D.C. Cir. 1973). The Services admit that the record fails to support their decision to rely on categorical exclusions to avoid NEPA review.[7] Fed. Mot. at 25; Third Frazer Decl. ¶ 10; Fourth Rauch Decl. ¶ 8 (Services "will reconsider the categorical exclusions in the context of any future rulemaking"). The Services' failure to engage in NEPA review is a particularly compelling reason for vacatur, as failure to comply with NEPA undermines every section of the 2019 Rules. *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1020 (9th Cir. 2009) (upholding vacatur and reinstatement of prior regulation based on NEPA violation).

These serious deficiencies in the 2019 Rules go far beyond "mere technical or procedural formalities that the [Services] can easily cure" and which would justify remand without vacatur. *Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1244. Rather, contrary to the Services' argument (Fed. Mot. at 28), their errors go to the very core of the 2019 Rules, "contravening the purposes of the statute in question"—the ESA. *Or. Nat. Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773, 774 (D. Or. 2017); Third Frazer Decl. ¶ 4 ("DOI has identified substantial concerns that

---

[7] The Services do not address the *Center for Biological Diversity* Plaintiffs' claim about the failure to engage in inter-agency Section 7 consultation prior to adopting the 2019 Rules at all. ECF 142 at 36–39.

warrant reexamination of *each of* the challenged rules") (emphasis added); Fourth Rauch Decl. ¶ 7 ("NOAA has substantial concerns about whether portions of the 2019 … Rules are consistent with the goals and purposes of the ESA and EO 13990").

Significantly, these "fundamental flaws" also "make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council*, 806 F.3d at 532; *see also North Carolina v. EPA*, 531 F.3d at 929–30 (vacating rule upon remand given agency's "fundamentally flawed" approach).  The Services admit that for several of the challenged provisions, they will not simply supply "better reasoning" on remand such that the "same rule would be adopted," but will instead rescind or substantially revise those sections, and potentially a number of other provisions as well.  *See Pollinator Stewardship Council*, 806 F.3d at 532; Fed. Mot. at 22–23 (declaring Services' intent, at the direction of President Biden and "[f]ollowing their review and evaluation of the challenged rules, … to engage in rulemaking to revise and rescind the challenged 2019 ESA Rules because they have substantial and legitimate concerns over many aspects of these rules"); Third Frazer Decl. ¶ 11 (Services considering rescinding or revising specified provisions of the 2019 Rules, as well as other unspecified revisions to both the Section 4 and Section 7 Rules).  Having acknowledged that there are serious legal problems and concerns with the 2019 Rules, the Services effectively admit there is no "serious possibility that [they] will be able to substantiate [their] decision on remand." *Allied-Signal*, 988 F.2d at 151.  This fact, as well as the magnitude of the Services' substantive and procedural errors, weigh heavily in favor of vacating the 2019 Rules.

B.     Remand Without Vacatur Would Cause Significant Disruptive Consequences and Harm to Imperiled Species and Habitat.

Regarding the second *Allied-Signal* factor, a remand without vacatur is only appropriate if the "disruptive consequences of an interim change" justify leaving a rule temporarily in place

while the agency reconsiders it. *Allied-Signal*, 988 F.2d at 150–51. But the opposite is true here. Allowing the Services to continue implementing the 2019 Rules would create legal turmoil and result in continued environmental harms—effects the Services themselves acknowledge. By contrast, vacating the 2019 Rules would not cause significant disruptions and would ensure against harm to Plaintiffs and their interests; the Services make no credible attempt to meet their burden to demonstrate otherwise.

        1.      *The 2019 Rules will continue to cause harm to Plaintiffs' interests by harming threatened and endangered species and their habitat.*

In weighing the consequences of remand with or without vacatur, courts favor the remedy that best avoids environmental harm. *See, e.g., Pollinator Stewardship Council*, 806 F.3d at 532 (vacating a challenged rule where leaving the rule in place "risks more potential environmental harm than vacating it"); *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405–06 (vacatur of listing rule was not appropriate because it would risk potential extinction of an endangered snail); *Cal. Cmtys. Against Toxics*, 688 F.3d at 994 (vacatur of air quality rule inappropriate because it could lead to increased air pollution); *Ctr. For Food Safety*, 734 F. Supp. 2d at 951 ("[T]he Ninth Circuit has only found remand without vacatur warranted by equity concerns in limited circumstances, namely serious irreparable environmental injury."). Here, vacatur is the only option that avoids continuing environmental harms to listed species and their habitat due to the loss of, or significant reductions in, ESA protections that the Services themselves appear to admit are a direct and ongoing consequence of the 2019 Rules.

As this Court has already held, Plaintiffs have been harmed by the promulgation and ongoing application of the 2019 Rules, and the Services' request for voluntary remand without vacatur would continue to cause Plaintiffs concrete and specific harm. *See* ECF 135; ECF 90, ¶¶ 12–16 and attached declarations at ECF 90-2 to 90-26; Case No. 4:19-cv-06013-JST: ECF 162-1

(Decl. of C. Dibble), ECF 162-2 (Decl. of E. Schluter), ECF 162-3 (Decl. of T. Jones), ECF 162-4 (Decl. of D. Feldkirchner); Case No. 4:19-cv-06812-JST: ECF 62-2 (Decl. of A. Fetters), ECF 62-3 (Decl. of L. Garner), ECF 62-5 (Decl. of L. Patten).  Until vacated by this Court or revised/withdrawn by the Services, the 2019 Rules are binding on the agencies.  Without vacatur, the 2019 Rules will continue to govern the Services' actions and decisions with respect to imperiled species and critical habitat designations.  *See, e.g.*, ECF 90-25, Whitehurst Decl. ¶¶ 11–13 (One Lake Project biological opinion and use of 2019 Section 7 Rule defining destruction or adverse modification of critical habitat); ECF 90-7, Donnelly Decl. ¶ 11 (Lee Canyon Ski Area biological opinion and critical habitat definition).  Indeed, the Services' use of and reliance on the 2019 Rules has only continued since this litigation was filed in 2019, as has the harm to species, habitats, and Plaintiffs' interests.  The Services admit that the 2019 Rules are in effect and continue to be applied.  *See* Stay Transcript at 25 (Mr. Howell: "I will concede we are applying the regulations as we speak today").

For example, several recent proposed critical habitat designations under ESA Section 4 have relied on the 2019 Rules to omit important areas from protection as critical habitat.  In its proposed listing of the Mount Rainier white-tailed Ptarmigan as threatened, FWS determined that it was not prudent to designate *any* critical habitat because the primary threats to the bird were posed by climate change and "[t]here are no management actions … that could address the impacts of climate change on the habitat and microrefugia that support this subspecies"—a rationale grounded in a provision of the 2019 Rules Plaintiffs challenge.  86 Fed. Reg. 31,668, 39,690–91 (June 15, 2021).[8]

---

[8] The Services now admit that this regulatory language is problematic and was not intended to allow the Services to "regularly decline to designate critical habitat for species threatened by

This "not prudent" analysis echoes that in the final rule listing two species of stonefly as threatened in 2019. Although FWS had previously found designation of critical habitat to be "prudent but not determinable," the final rule relied on the 2019 Section 4 Rule to decline to protect any habitat because the primary impact to the fly's habitat was climate change: "[t]here are no management actions resulting from consultations under section 7(a)(2) of the Act that could address the impacts of climate change and drought on the meltwater sources that supply the habitats for these species." 84 Fed. Reg. 64,210 (Nov. 21, 2019); *see also* ECF 90-17, Nagano Decl. ¶¶ 10–11, 14–16; *id*. at ¶ 20 ("FWS's failure to protect the stoneflies' critical habitat, based on the Service's revisions to the ESA's implementing regulations challenged in this case, harms my interest in the stoneflies as it deprives them of essential protections and makes it less likely that they will remain in their native habitats for me to hopefully see and enjoy.").

In the proposed critical habitat designation for the Texas hornshell, a freshwater mussel, FWS relied on the 2019 Rules throughout, finding that it will "only consider unoccupied areas to be essential where a critical habitat designation limited to geographical areas occupied by the species would be inadequate to ensure the conservation of the species." 86 Fed. Reg. 30,888, 30,890 (June 10, 2021). Plaintiffs also have challenged provisions of the 2019 Rules that permit the Services to exclude unoccupied habitat or to refuse to designate critical habitat as "not prudent" on a wide variety of grounds.

The Services similarly have been applying challenged provisions of the 2019 Rules in inter-agency consultations under ESA Section 7. For example, the ConocoPhillips Willow

---

climate change." Third Frazer Decl. ¶ 7. Yet clearly, that is how the 2019 Rules are being used and have been since their promulgation.

project in the western Arctic threatens imperiled species like polar bears and caribou.  Yet the Biden Administration relied on the challenged, revised Section 7 mitigation requirements in the 2019 Rules to defend these permit approvals.  *See Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 2021 WL 3667986, at *39–41 (D. Alaska Aug. 18, 2021).

Likewise, in the long-running litigation over federal management of four dams on the lower Snake River, the 2020 biological opinion addressing harm to threatened salmon and orcas relied on the challenged, revised definition of the term "environmental baseline" in the 2019 Rules to support its analysis.  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, No. 01-00640-SI, ECF 2396, Corrected Eighth Suppl. Compl. (D. Or. Aug. 18, 2021) (excerpt previously filed at ECF 135-1).  Yet the court in that case had previously found that same path to truncated Section 7 consultation analysis invalid.  *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 2005 WL 1278878, at *9–11 (D. Or. 2005) (subsequent history omitted) (finding that comparing the effects of *proposed* dam operations to the effects of *previous* dam operations, as opposed to effects without *any* dam operations, "conflicts with the structure, purpose, and policy behind the ESA").

The U.S. Army Corps of Engineers is also relying on the 2019 Rules to justify its failure to undertake ESA consultation on permits concerning oil and gas pipelines.  Several of the conservation plaintiffs here brought and won a lawsuit challenging the Corps' failure to engage in programmatic Section 7 consultation on the effects of a nationwide permit on protected species.  *See N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 454 F. Supp. 3d 985 (D. Mont. 2020).  Nonetheless, in 2021, the Corps issued new nationwide permits and again failed to engage in any programmatic Section 7 consultation, specifically relying on the "current ESA section 7 regulations," to justify that failure.  86 Fed. Reg. 2,744, 2,845 (Jan. 13, 2021).  The Corps also emphasized that the changes made in the 2019 Rules, particularly the "reasonably

certain to occur" standard, and the regulatory language stating that adverse effect determinations must be based on "clear and substantial information," would control whether site-specific consultations would even be done.  *Id*.

These examples illustrate what this Court has already found in ruling on the Services' motions to dismiss and motion to stay—that Plaintiffs are harmed by the challenged regulations. Stay Transcript at 21–22; Case No. 4:19-cv-06013-JST, ECF 98 ("Order Denying Motion to Dismiss").  As the Services begrudgingly admit, Fed. Mot. at 29–30, this Court found that "an enhanced risk of biodiversity loss and degradation of fish and wildlife natural resources clearly follows from the Services' alleged weakening of ESA safeguards."  Order Denying Motion to Dismiss at 9.  The Court also noted that, "[b]ecause declines in species populations and extinction of species is difficult or impossible to remedy, plaintiffs need not wait until these harms occur before challenging the government action leading to the potential destruction."  *Id*. at 10 (citation and quotation omitted); *see also* Stay Transcript at 22.  As the U.S. Supreme Court recognized over forty years ago, the value of endangered species is "incalculable" and listed species must be conserved "whatever the cost."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184, 187 (1978).

While the Services vaguely claim that this Court's prior findings of harm or potential harm to Plaintiffs from implementation of the 2019 Rules is different from the demonstration of harm required for remand with vacatur (Fed. Mot. at 30), they fail to explain why or how the two standards differ, either legally or practically.  The Services also incorrectly claim that Plaintiffs "fail to present even one concrete example of how implementation of the 2019 Rules harms their stated interests," when in fact Plaintiffs have offered many examples in their complaints and oppositions to the motions to dismiss and stay.  Regardless, it is the moving party's burden to

show that the balance of equities favor remand without vacatur, a burden which the Services have wholly failed to meet here. *Ctr. for Env't Health,* 2016 WL 3383954, at *13.

> **2.** *Leaving the 2019 Rules in effect will cause legal turmoil and public confusion, while vacatur will not cause significant regulatory disruption.*

Beyond continued harm to imperiled species and their habitat, and contrary to the Services' assertion (Fed. Mot. at 29), increased legal disruptions and public confusion will result from leaving the 2019 Rules in place. Remand without vacatur means the Services would continue to be subject to the unlawful 2019 Rules and tasked with continuing to implement them. Moreover, the Services admit that these rules are riddled with fundamental legal errors and are currently causing public confusion and regulatory uncertainty. *See* Third Frazer Decl. ¶¶ 4–11; Fourth Rauch Decl. ¶¶ 7–8. Consequently, remand without vacatur is untenable as it would lead to unsupported and unauthorized regulatory decisions with serious environmental consequences, applying regulations that the Services themselves concede are unlawful, not adequately supported, and confusing to both the public, regulated entities, and other federal agencies taking actions subject to ESA requirements. *Id.* From a practical standpoint, it makes no sense for the Services to be applying concededly invalid and vulnerable regulations on an ongoing basis while they are being revised.

If the Court grants the Services' motion, it would effectively guarantee that the 2019 Rules will remain in place *indefinitely* without any firm commitment to changing provisions that the Services themselves admit raise "substantial concerns." Contrary to their prior representations in the stay motion that the proposed revised rules would be submitted to the OMB by October 18, 2021, the Services have now withdrawn the proposed revised rules from OMB review and have offered no revised timeline for new rulemakings. *See* Third Frazer Decl. ¶¶ 12–14; Fourth Rauch Decl. ¶¶ 6, 9–11. Instead, the Services state that the previously-

promised timeframes were contingent upon the Court granting their stay motion, and that,

despite their having made "significant progress on draft proposals to revise the Section 4 and

Section 7 regulations," the Court's denial of the stay caused the agencies to shift their focus

"back to the litigation and away from the rulemakings."  Third Frazer Decl. ¶ 13; Fourth Rauch

Decl. ¶¶ 10.[9]

In contrast, vacatur of the 2019 Rules—which have only been in place for a little over

two years and have been under a significant litigation cloud for that entire time—would return

the regulatory framework to the *status quo ante* of a regulatory program that was in effect for the

past 30 years or more.  *See, e.g.*, Third Frazer Decl. ¶ 5 (prior Section 4(d) rule "had been in

effect for approximately forty years" and "worked to conserve threatened species efficiently"), ¶

6 (expressing concern re 2019 Rule's "elimination of longstanding regulatory language"

regarding listing decisions).  Consequently, vacatur would not cause an abrupt alteration of the

regulatory program or regulatory uncertainty as the Services claim.  *See* Fed. Mot. at 29.  The

Services have decades of experience implementing the pre-2019 regulations, and there is

extensive federal court analysis and precedent governing those rules, including multiple U.S.

Supreme Court decisions.  Returning to that status quo would result in the least disruption for the

Services, the public, and the courts, while mitigating the ongoing environmental harm caused by

continued implementation and application of the 2019 Rules.  *See Cal. by & Through Becerra v.*

*Azar*, 501 F. Supp. 3d 830, 843 (N.D. Cal. 2020) ("[V]acating the agency's action simply

preserves a status quo that has existed since at least the early 1990's while the agency takes the

---

[9] The Services are now reevaluating the schedule to revise the 2019 Rules in light of the pending litigation, and state that they will only commit to doing so "expeditiously" if the Court grants their motion to remand *without vacatur*.  Third Frazer Decl. ¶ 14; Fourth Rauch Decl. ¶¶ 6, 11.

time it needs to give proper consideration to the matter"); *see also Burke v. Coggins*, 521 F.

Supp. 3d 31, 44 (D.D.C. 2021) ("[R]eturn to the status quo causes little or no disruption").

There is also no merit to the Services' claim that remand with vacatur would cause

disruptive consequences due to the risk of "confusion among the public, other agencies, and

stakeholders." Fed. Mot. at 29. The Services' own declarants contradict this argument. *See,*

*e.g.*, Third Frazer Decl. ¶ 7 (stating that new Section 4 Rule "created confusion for the public").

The public is well aware that there is a new Administration and that the Services intend to

rescind and revise the 2019 Rules, as they publicly announced in June 2021. Fed. Mot. at 17 n.9.

In fact, it seems much more likely that leaving the invalid rules in place for an indefinite period

while work to rescind or revise them goes on behind the scenes will cause far greater confusion

and uncertainty. Furthermore, the Services can hardly complain about "public confusion" and

uncertainty when they presented schedules for revised rulemakings to Plaintiffs, this Court, and

the public a few months ago only to abandon those timelines. The Services' decision to pull the

plug on rulemaking proposals on which they had already made "significant progress" is surely

the primary cause of the confusion and uncertainty in this matter. Third Rauch Decl. ¶ 13;

Fourth Rauch Decl. ¶ 10.

The Services further argue that remand without vacatur would not result in any

disruptions because "remand would establish an orderly process in which the Services would

have the opportunity to present a proposed rule, explain the rationale for the proposed changes,

take public comment" and then publish a final rule. Fed. Mot. at 29. But the Services can and

must undertake this "orderly process" under the APA, NEPA, and other laws for any new

rulemaking, regardless of whether the 2019 Rules are vacated. Moreover, vacating and

remanding the 2019 Rules "does not dictate how the agency should comply with the law in the

future.  Rather, it leaves to the agency the discretion of how to appropriately proceed." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Pena*, 2015 WL 1567444, at *5 (D. Or. Apr. 6, 2015).  The Court would not be interfering with the Services' APA process; the Services would be free to revisit the analysis underpinning the 2019 Rules on a clean slate.

Ultimately, the Services' arguments are insufficient to justify departing from the ordinary remedy of remand with vacatur.  The Services have not given any "indication that [they] … or anyone else would be seriously harmed or disrupted" if the 2019 Rules were vacated.  *ASSE Int'l, Inc.*, 182 F. Supp. 3d at 1065.  And the Services fail to demonstrate that vacatur would result in such "serious and irremediable harms that [they] significantly outweigh the magnitude of the [Services'] error."  *Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1242 (citation omitted).  Even if vacatur resulted in some additional burden to the Services, such "possible procedural difficulties" simply do not "warrant departure from the default of vacatur." *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 882 (E.D. Cal. 2018); *see Ctr. for Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1243 (D. Colo. 2011) (concluding that harms associated with delay and cost due to compliance with requirements to protect endangered species that would be reinstated as a result of vacatur are "irrelevant" to the court's analysis because such harms contradict Congressional intent to protect endangered species). Consequently, the Court should vacate the 2019 Rules to ensure that imperiled species and their habitat are protected while the Services revisit the rules.

### 3.    Remand with vacatur is within the Court's equitable powers.

The Court should vacate the 2019 Rules because they are unlawful.  And, as the Services admit, "[c]ourts have recognized that definitive findings on the merits are not required in order to vacate a challenged agency action.").  Fed. Mot. at 27 n.10.  Another court in this district

recently vacated a Clean Water Act regulation promulgated during the Trump Administration which EPA sought to remand without vacatur.  *In re Clean Water Act Rulemaking*, Nos. 20-04636-WHA, 20-04869-WHA, 20-06137-WHA, 2021 WL 4924844 (N.D. Cal Oct. 21, 2021*), appeals docketed and motions to stay filed by defendant-intervenors*, Nos. 21-16958, 21-16960, 21-16961 (9th Cir.).  The court in *In re Clean Water Act Rulemaking* sided with other district courts in this Circuit that have found the authority to vacate agency actions upon remand without a final determination of the action's legality.  *Id*. at *7 (citing *Pascua Yaqui Tribe v. EPA*, 2021 WL 3855977 (D. Ariz. Aug. 30, 2021)); *All. for Wild Rockies v. Marten*, 2018 WL 2943251, at *2–3 (D. Mont. June 12, 2018); *N. Coast Rivers All. v. Dep't of the Interior*, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016)).  The *In re Clean Water Act Rulemaking* court found the reasoning in *Center for Native Ecosystems* persuasive: "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits."  795 F. Supp. 2d at 1241– 42.

As discussed above, remands, including voluntary remands, are typically accompanied by vacatur of the challenged rule; courts only leave agency actions in place "when equity demands." *Cal. Cmtys. Against Toxics*, 688 F.3d at 992.  And equity fundamentally demands vacatur here because "leaving an agency action in place while the agency reconsiders may deny the petitioners the opportunity to vindicate their claims in federal court and would leave them subject to a rule they have asserted is invalid."  *In re Clean Water Act Rulemaking*, 2021 WL 4924844, at *4; *see also California v. BLM*, 277 F. Supp. 3d 1106, 1126 (N.D. Cal. 2017) (departing from the default remedy of vacatur risks giving agencies a "free pass ... to exceed their statutory authority and ignore their legal obligations under the APA, making a mockery of the statute").

That concern is particularly acute here where the 2019 Rules suffer from serious and pervasive legal deficiencies, the Services acknowledge substantial flaws in the 2019 Rules, and the Services fail to defend the 2019 Rules.  Granting voluntary remand without vacatur would insulate the 2019 Rules from judicial review, locking in years' worth of harm to imperiled species and their critical habitat with no legal recourse.  Consequently, if the Court remands the 2019 Rules, it should only do so with vacatur.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD DENY THE SERVICES' MOTION FOR VOLUNTARY REMAND AND ADDRESS THE MERITS OF THIS CASE.

If the Court decides that it cannot remand the 2019 Rules with vacatur at this time, then Plaintiffs ask the Court, in the alternative, to deny the Services' remand motion in its entirety and proceed to hear and rule on the merits of the Plaintiffs' motions for summary judgment.  Courts have broad discretion to deny an agency's remand request when the primary questions concern issues of statutory interpretation: judicial discretion to deny remand applies if "the agency is either compelled or forbidden by the governing statute to reach a different result" than the challenged decision.  *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *see also N. Coast Rivers All.*, 2016 WL 8673038, at *3 ("Courts in [the Ninth Circuit] generally look to the Federal Circuit's decision in *SKF USA* for guidance when reviewing requests for voluntary remand").

Here, the Court has discretion to deny a remand because the Services are compelled by the ESA, NEPA, and the APA to reach a different result than the 2019 Rules, and concomitantly were forbidden by these statutes to adopt the 2019 Rules, on both substantive and procedural grounds.  *See SKF USA*, 254 F.3d at 1029.  Given the Court's broad discretion in this matter, denial of voluntary remand is entirely appropriate.  First, by continuing to the merits of Plaintiffs' summary judgment claims, and as discussed in Plaintiffs' opposition to the stay

motion, the Services will benefit from the Court's reasoning when they proceed with any new rulemakings. *See Wagner v. Principi*, 370 F.3d 1089, 1092–97 (Fed. Cir. 2004) (exercising discretion to reach the merits of a statutory interpretation issue, rather than granting a voluntary remand). Rather than potentially committing the same legal errors that plague the 2019 Rules, and being subject to yet another legal challenge, the Services would be able to revise the rules grounded in this Court's legal analysis.

Second, as explained above, denial of remand without vacatur is necessary to avoid undue prejudice to Plaintiffs. *See, e.g.*, *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018) (denying voluntary remand where remand would prejudice environmental petitioners); *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (noting denial of agency request for voluntary remand where plaintiffs were left "subject to a rule they claimed was invalid"). The Services may take years on remand to rescind and revise these unlawful rules; despite previous assurances to the Court and Plaintiffs about the rulemaking schedule, they have already delayed all further action on proposed rules that were almost ready for review at OMB. Third Frazer Decl. ¶ 13; Fourth Rauch Decl. ¶ 10. In addition, new rulemakings might address some of Plaintiffs' claims, but plainly not all of them. And without vacatur, new rulemakings would do nothing to address the ongoing harm caused by the 2019 Rules in the meantime, including the failure to comply with NEPA before promulgation. Therefore, if the Court does not remand with vacatur, the Court should deny the Services' motion for voluntary remand and instead rule on Plaintiffs' summary judgment motions.[10]

---

[10] The Services have already spoken on summary judgment: "[b]ecause the Services intend to reconsider the 2019 ESA Rules, the request for voluntary remand also constitutes Federal Defendants' response to Plaintiffs' motions for summary judgment." Fed. Mot. at 19.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Services' motion for voluntary remand without vacatur and instead either remand *with* vacatur of the 2019 Rules, or, in the alternative, proceed to rule on the Plaintiffs' pending motions for summary judgment.

Respectfully submitted this 23rd day of December, 2021.

*s/ Kristen L. Boyles*
KRISTEN L. BOYLES (CSBA # 158450)
PAULO PALUGOD (WSBA # 55822)*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
Ph: (206) 343-7340
kboyles@earthjustice.org
ppalugod@earthjustice.org

ANDREA A. TREECE (CSBA # 237639)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111
Ph: (415) 217-2089
atreece@earthjustice.org

*Attorneys for Plaintiffs Center for Biological Diversity, Defenders of Wildlife, Sierra Club, National Parks Conservation Association, WildEarth Guardians, and The Humane Society of the United States*

REBECCA RILEY (ISBA # 6284356)*
NATURAL RESOURCES DEFENSE COUNCIL
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
Ph: 312-651-7900
rriley@nrdc.org

*Attorney for Natural Resources Defense Council*

1    KARIMAH SCHOENHUT (DCB #1028390)*
     SIERRA CLUB
2    50 F. St. NW, 8th Floor
     Washington, DC 20001
3    Ph: 202-548-4584
     karimah.schoenhut@sierraclub.org
4
     *Attorney for Sierra Club*
5
     RYAN ADAIR SHANNON (OSB # 155537)*
6    CENTER FOR BIOLOGICAL DIVERSITY
     P.O. Box 11374
7    Portland, OR 97211
     Ph: 503-283-5474 ext. 407
8    rshannon@biologicaldiversity.org
9
     *Attorney for Center for Biological Diversity*
10
     *Admitted pro hac vice*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Dated: December 23, 2021.

*s/ Kristen L. Boyles*
KRISTEN L. BOYLES (CSBA # 158450)