TODD KIM
Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief
COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1000 S.W. Third Avenue
Portland, OR 97204
Phone: (503) 727-1023
Fax: (503) 727-1117
Email: coby.howell@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (Oakland)

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> HAALAND, ET AL., <br><br> Federal Defendants. | Case. No. 4:19-cv-05206-JST <br><br> **REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND** <br><br> Date: TBD[1] <br> Time: TBD <br> Place: Courtroom 6, 2nd Floor <br> Judge: The Honorable Jon S. Tigar |

---

[1] The Court has suspended the summary judgment briefing schedule while it considers the motion to remand and has indicated that it will issue an order on the motion to remand in February 2022 without oral argument.  ECF 171.

Reply in Support of Motion for Voluntary Remand, 19-cv-05206-JST

# TABLE OF CONTENTS

**Pages**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.   THE COURT SHOULD REMAND THE 2019 ESA RULES WITHOUT VACATUR. ................................................................................................................ 3

        A.    Remand is Appropriate. ........................................................................................ 3

        B.    Vacatur of the 2019 ESA Rules is Not Warranted. ...................................... 5

        C.    The Court Should Deny Plaintiffs' Alternative Request to Adjudicate the Merits. ........................................................................................................................... 9

CONCLUSION ................................................................................................................... 11

Table of Contents

**Cases**                                                                                                                          **Pages**

*Am. Rivers v. Arkansas*
  No. 21-16961 (9th Cir. Nov. 22, 2021)......................................................................11

*Cal. Cmtys. Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) ................................................................................ 4, 5

*California v. Haaland,*
  No. 19-cv-6013 (N.D. Cal., Sept. 25, 2019)...............................................................1

*FCC v. Fox Television Stations,*
  556 U.S. 502 (2009) .................................................................................................. 9

*In re Clean Water Act Rulemaking,*
  No. C 20-04636 WHA, 2021 WL 4924844 (N.D. Cal. Oct. 21, 2021) ..................... 10

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
  545 U.S. 967 (2005) .................................................................................................. 4

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*
  No. 01-00640-RE, 2005 WL 1278878 (D. Or. 2005) ................................................. 7

*Pascua Yaqui Tribe v. United States Env't Prot. Agency,*
  No. CV-20-00266-TUC-RM, 2021 WL 3855977 (D. Ariz. Aug. 30, 2021)............... 11

*SEC v. Chenery Corp.,*
  332 U.S. 194 (1947) .................................................................................................. 4

*Sovereign Inupiat for a Living Arctic v. Bureau of Land Mgmt.,*
  No. 3:20-cv-00290-SLG, 2021 WL 3667986 (D. Alaska Aug. 18, 2021)................ 6, 7

*State of California v. Regan,*
  No. 20-cv-03005-RS, 2021 WL 4221583 (N.D. Cal. Sept. 16, 2021) ...................... 11

*Sweet Home Chapter of Cmtys. for a Great Or. v. Babbitt,*
  1 F.3d 1 (D.C. Cir. 1993) .......................................................................................... 4

ii
Reply in Support of Motion for Voluntary Remand, 19-cv-05206-JST

*Town of Chester, N.Y. v. Laroe,*
   Ests., 137 S. Ct. 1645 (2017) .................................................................................... 7, 8

*Waterkeeper All., Inc. v. United States. Env'tl Prot. Agency,*
   No. 18-cv-03521-RS, 2021 WL 4221585 (N.D. Cal. Sept. 16, 2021) ........................ 11

*Weyerhaeuser Co. v. FWS,*
   139 S. Ct. 361 (2018) ...................................................................................................... 4

**Federal Statutes**

16 U.S.C. § 1533 .................................................................................................................. 10

16 U.S.C. § 1536(a)(2) ......................................................................................................... 10

**Federal Regulations**

84 Fed. Reg. 44753 ........................................................................................................... 1, 7

84 Fed. Reg. 44976 ............................................................................................................... 1

84 Fed. Reg. 45020 ............................................................................................................... 1

# INTRODUCTION

The Court should grant the Federal Defendants' motion for an order remanding, without vacatur, the Endangered Species Act ("ESA") rules promulgated by the U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") (collectively, "Services") in 2019. 84 Fed. Reg. 45020 ("Section 4 Rule"); 84 Fed. Reg. 44753 ("Section 4(d) Rule"); 84 Fed. Reg. 44976 ("Section 7(a)(2) Rule") (collectively, "2019 ESA Rules"). ECF 165.[2] In support of this request for voluntary remand, the Services provided the Third Declaration of Gary Frazer ("Third Frazer Decl.") (ECF 165-1) and the Fourth Declaration of Samuel Rauch ("Fourth Rauch Decl.") (ECF 165-2). These declarations identified legitimate and serious concerns with certain provisions of the 2019 ESA Rules, as well as with the adequacy of the record supporting the Services' National Environmental Policy Act ("NEPA") determinations. This request for voluntary remand was neither frivolous nor made in bad faith, and so it should be granted under prevailing precedent.

Seventeen States, the District of Columbia, and the City of New York ("State Plaintiffs"), the Center for Biological Diversity and other non-governmental organizations ("CBD Plaintiffs"), and the Animal Legal Defense Fund ("ALDF") (collectively, "Plaintiffs") acknowledge that Federal Defendants have identified

---

[2] Federal Defendants are filing an identical reply brief in all three related cases but will use the ECF numbers in *California v. Haaland*, 19-cv-6013 (N.D. Cal. 2019) unless otherwise noted.

substantial concerns with the 2019 ESA Rules and do not argue that the request for voluntary remand was frivolous or made in bad faith. ECF 170. Plaintiffs, however, oppose Federal Defendants' motion on the basis that the Court should vacate the 2019 ESA Rules.

The State Intervenors and Industry Intervenors similarly acknowledge that Federal Defendants' request meets the standard for voluntary remand and do not oppose the motion. ECF 172 at 7; ECF 174 at 5. The Landowner Intervenors do not argue that Federal Defendants' request for voluntary remand was frivolous or made in bad faith, but they oppose remand of the Section 4(d) Rule and a provision they term "Rule for Designating Unoccupied Areas" because the Services allegedly lack "discretion" to revise these regulatory provisions on remand. ECF 173 at 7-8. All of the Intervenors urge this Court not to vacate the 2019 ESA Rules.

Combined, no party disputes that the Services have shown substantial concerns with the 2019 ESA Rules, thereby meeting the standard for voluntary remand. The more pressing issue for this Court is whether it can or should vacate the 2019 ESA Rules. As explained in Federal Defendants' motion, the Court should not vacate the 2019 ESA Rules because the Services are well-equipped and best-positioned to address their substantial concerns with the rules on remand, vacatur would be disruptive and potentially confusing to the public, and Plaintiffs present no evidence of real and tangible harm likely to occur during the remand period.

In contrast, remand without vacatur will allow the Services to address specific regulatory provisions through notice and comment rulemaking under the

2
Reply in Support of Motion for Voluntary Remand, 19-cv-05206-JST

Administrative Procedure Act ("APA"), just as Congress envisioned.  Accordingly, the Court should grant Federal Defendants' motion for remand without vacatur and deny Plaintiffs' motions for summary judgment.

## ARGUMENT

### I. THE COURT SHOULD REMAND THE 2019 ESA RULES WITHOUT VACATUR.

#### A. Remand is Appropriate.

There is significant consensus among the parties that remand is appropriate under the circumstances here.  Plaintiffs, while preserving their objection regarding vacatur, do not ultimately oppose remand.  ECF 170 at 8 ("Plaintiffs consequently ask the Court to deny the Services' remand motion, and instead remand with vacatur . . . .").  State Intervenors are even more inclined towards remand: "Given the lenient standard for voluntary remand in this circuit, the State Defendant-Intervenors do not oppose the Federal Defendants' motion for voluntary remand without vacatur."  ECF 172 at 7.  Industry Intervenors similarly do not oppose.  ECF 174 at 5 ("[F]or the sake of judicial efficiency and economy, Industry Intervenors do not oppose the Government's motion for voluntary remand without vacatur . . . given the ongoing rulemaking process the outcome of which may narrow or moot this litigation.").  And although the Landowner Intervenors raise two concerns, they take "no position" on whether the Court should remand most of the 2019 ESA Rules.  ECF 173 at 7 ("Given the limited nature of their intervention, the

Private Landowners take no position on the remainder of the Federal Defendants' request for voluntary remand.").[3]

This consensus is unsurprising given that the Services have provided evidence of legitimate and substantial concerns with the 2019 ESA Rules. Third Frazer Decl. ¶ 4-10; Fourth Rauch Decl. ¶ 7-8.[4] The Services' request is neither frivolous, nor made in bad faith. It thus meets the standard for voluntary remand in this Circuit. *See Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir.

---

[3] There is no merit to Landowner Intervenors' argument that the Services lack discretion to engage in future rulemaking for the Section 4(d) Rule and what they call "Rule for Designating Unoccupied Areas" on remand. ECF 173 at 21. The agencies have discretion to arrive at a different result on remand because no court has foreclosed the agencies' discretion by finding the relevant statutory provisions unambiguous. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005) (agency interpretations are foreclosed only if the courts find the statute is unambiguous); *Sweet Home Chapter of Cmtys. for a Great Or. v. Babbitt*, 1 F.3d 1, 8 (D.C. Cir. 1993) (finding the relevant statutory provision to be ambiguous). The Supreme Court in *Weyerhaeuser Co. v. FWS*, 139 S. Ct. 361 (2018), in fact, declined to pre-ordain the precise regulatory criteria for the designation of unoccupied critical habitat. *Id.* at 365-66. In any event, limits on agency discretion need not foreclose rulemaking. An agency, after all, can issue rules that comport with those limits, as the Services here could following a remand. *SEC v. Chenery Corp.*, 332 U.S. 194 (1947).

[4] Industry Intervenors argue that Plaintiffs have only challenged certain regulatory provisions, while the Services intend to address only specific regulatory provisions highlighted in the Third Frazer and Fourth Rauch Declarations on remand. ECF 174 at 9-11. This argument misconstrues the Services' declarations. The examples were provided to support the request for voluntary remand, but the agencies also have publicly stated that other potential revisions are under discussion, and they would accept public comment on the entirety of all three 2019 ESA Rules. Second Frazer Decl. ¶ 12 (ECF 150-1); Third Rauch Decl. ¶ 10 (ECF 150-2). Industry Intervenors' point thus illustrates why remand without vacatur is appropriate—it would allow the Services to address all facets of the 2019 ESA Rules through APA notice and comment rather than potentially severing certain regulatory provisions through partial vacatur.

4
Reply in Support of Motion for Voluntary Remand, 19-cv-05206-JST

2012).  In light of the Services' concerns and the relative agreement among the parties, the Court should remand the 2019 ESA Rules.

### B. Vacatur of the 2019 ESA Rules is Not Warranted.

Once the Court addresses the question of remand, it must then decide whether vacatur is warranted.  Under these circumstances, it is not.  Federal Defendants previously explained that vacatur of the 2019 ESA Rules is not warranted because the Services could substantiate their decisions on remand, vacatur would disrupt implementation of the ESA, and Plaintiffs demonstrated no real harm warranting vacatur during the remand.  ECF 165 at 33-37.

The first two points are supported by the Services' evidence:

> Vacatur by the Court would be disruptive of ongoing and future implementation of ESA consultations and listing actions.  It would cause confusion among the public, other agencies, and stakeholders, and impede the efficiency of ESA implementation, by abruptly altering the applicable regulatory framework and creating uncertainty about which standards to apply.  In contrast, remand would establish an orderly process in which the Services would have the opportunity to present a proposed rule, explain the rationale for proposed changes, take public comment, and then, in a final rule, explain to the public and stakeholders which changes were adopted and provide further explanation on their interpretation and application.

Fourth Rauch Decl. ¶ 12; *see also* Second Frazer Decl. ¶ 12.  Plaintiffs do not meaningfully contest that vacatur would be disruptive and potentially confusing as these regulations have been in effect for over two years, and vacatur could abruptly alter implementation, thereby creating uncertainty about which standards to apply pending final resolution of the litigation.  *Id.*

As for Federal Defendants' third point, Plaintiffs still have not established any real or tangible harm from implementation of the 2019 ESA Rules. Once again, Plaintiffs revert to their now-familiar examples speculating about uncertain outcomes of ESA implementation. ECF 170 at 19-22. But these examples merely suggest a possibility of harm, at most, rather than real or tangible harm that warrants vacatur.

As explained previously in Federal Defendants' briefing on the motion to stay, Plaintiffs' two critical habitat references—involving the Mount Rainier white-tailed Ptarmigan and Texas hornshell mussel—are both at the proposed rule stage. ECF 170 at 19-20; *but see* ECF 156 at 14-16. Until there are final rules, it is entirely unclear whether the Services will continue their reliance on these regulatory provisions. Similarly inapposite, the cited case involving the Willow project in the western Arctic was a challenge to the Incidental Take Statement ("ITS") and, while the new regulations were discussed in that opinion, the outcome did not turn on the new regulations as they do not address ITSs. *See Sovereign Inupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 3:20-cv-00290-SLG, 2021 WL 3667986, at *41 (D. Alaska Aug. 18, 2021) ("the new regulations do not eliminate the requirement in the ESA and the regulations that the ITS '[s]pecifies [ ] measures that are necessary to comply with [the Marine Mammal Protection Act],' . . . .").

Plaintiffs' reference to the Columbia River litigation remains self-defeating. ECF 170 at 21; ECF 156 at 15. The same contested issue

Plaintiffs highlight—analysis of the environmental baseline—was present under the prior regulations as well. *Id.* (citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. 01-00640-RE, 2005 WL 1278878, at *9-11 (D. Or. 2005)). And Plaintiffs still cannot muster one example of how the Section 4(d) Rule harms their interests, as each threatened listing has included a species-specific 4(d) rule. *See* 84 Fed. Reg. 44753. Although the agencies have been implementing these regulations for over two years, Plaintiffs have not identified one clear example in which application of the 2019 ESA Rules harmed their interests in some real or tangible way.[5] Vacatur must be based on something more than the mere possibility of harm, especially when it will frustrate the Services' effective implementation of the ESA. Third Rauch Decl. ¶ 14.

Likewise, Plaintiffs' concern that the 2019 ESA Rules would languish "indefinitely" on remand is not well-founded. ECF 170 at 23. The Services previously prioritized efforts to engage in rulemaking to address their concerns with the regulations, precisely as should occur under the APA. Plaintiffs now lament the Services' decision to pause the rulemaking given uncertainties raised by this litigation and argue the rulemaking pause is a reason to vacate the rules. ECF 170 at 7. But the Services' rulemaking

---

[5] The lack of any concrete harm from application of the 2019 ESA Rules applies equally to Intervenor-Defendants. *Town of Chester, N.Y. v. Laroe Ests.*, 137 S. Ct. 1645, 1651 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.").

pause is both reasoned and understandable.  If the Court were to vacate the rules or adjudicate the merits, the agencies would have to revise or redo any proposed rule previously developed or published.  It makes little sense to divert finite and scarce government resources from other priority ESA implementation activities to develop a proposed rule that may become obsolete—a point Plaintiffs notably do not confront.  The agencies, moreover, have made clear that if the Court grants the remand without vacatur they "would again make the rulemaking revisions a high priority, and rulemaking would once again proceed expeditiously."  Fourth Rauch Decl. ¶ 11; Third Frazer Decl. ¶ 14.  Plaintiffs provide no evidence that casts doubt on these representations.  The Services can complete this remand in a timely manner, if given the chance, and they are prepared to resume their rulemaking processes expeditiously upon remand.  *Id.*

Plaintiffs also suggest that, because the Services have identified substantial concerns with the 2019 ESA Rules, continued implementation would force the application of "unlawful" regulations and "insulate the 2019 Rules from judicial review, locking in years' worth of harm to imperiled species and their critical habitat with no legal recourse."  ECF 170 at 23, 28.  This argument is overstated.  The Services' identification of substantial concerns is different from a legal confession of error.  Instead, the Services identify these concerns to substantiate how they would like to revisit some of the prior decisions on remand, which is well within their authority.  *FCC v.*

*Fox Television Stations*, 556 U.S. 502, 515 (2009).  Continued implementation is thus not unlawful.  Moreover, if Plaintiffs truly believed that the Services were implementing the rules in an unlawful manner, their recourse lies with an as-applied challenge.

It is against this backdrop the Services request the opportunity in the first instance to bring their ESA expertise to bear on remand.  The Services here are doing exactly what they should do.  When faced with concerns over existing rules, the law charts the appropriate path forward—notice and comment rulemaking adhering to the requirements of the APA.  Allowing the Services to engage in rulemaking in accordance with the APA benefits the entire public, including Plaintiffs.  Vacatur, in contrast, would disturb this orderly approach.  When the disruptive consequences and potential for confusion are balanced against the lack of any real harm to Plaintiffs, vacatur is not warranted.  *See* Fourth Rauch Decl. ¶ 14.

### C. The Court Should Deny Plaintiffs' Alternative Request to Adjudicate the Merits.

Plaintiffs argue in the alternative that if the Court is inclined to leave the rules in place, it should deny Federal Defendants' motion for voluntary remand and then adjudicate the merits of their claims.  ECF 170 at 28.  The Court should deny this alternative request as well.

The statutory provisions at issue confer substantial discretion to the Services.  These broad statutory mandates leave considerable room for the Services' interpretations of the ESA.  *See* 16 U.S.C. §§ 1533, 1536(a)(2).

While Plaintiffs believe that the Services "will benefit from the Court's reasoning when they proceed with any new rulemakings" if Plaintiffs' challenges are upheld, ECF 170 at 29, such an outcome is far from clear. Moreover, proceeding to the merits would unnecessarily heighten the chances of protracted litigation and appeals on a rule that may be substantially altered through the normal rulemaking process.

The expenditure of additional litigation resources is unnecessary. Granting Federal Defendants' motion would provide Plaintiffs with all the relief they would be entitled to if they succeeded on the merits of their claims. The remand would result in a rulemaking that provides an opportunity for public comment on the entirety of the 2019 ESA Rules and for this Administration to bring its expertise to bear on the ESA regulations. This remedy is reasoned and narrowly tailored, and equitably resolves Plaintiffs' claims. Because the Services are willing to consider whether to rescind or revise the 2019 ESA Rules on remand, continuing to adjudicate Plaintiffs' claims does not serve any useful purpose besides perpetuating litigation and would enmesh the court in issues that should be resolved in the first instance by the expert agencies.

Finally, both Plaintiffs and Intervenors recognize the split in authorities in this District over whether a court must adjudicate the merits of Plaintiffs' claims before vacating challenged regulations. *See, e.g.*, ECF 170 at 27; ECF 174 at 15 (citing *In re Clean Water Act Rulemaking*, No. C 20-

04636 WHA, 2021 WL 4924844, at *4 (N.D. Cal. Oct. 21, 2021), *appeals docketed*, *Am. Rivers v. Am. Petroleum*, No. 21-16958, *Am. Rivers v. Arkansas*, No. 21-16961 (9th Cir. Nov. 22, 2021); *Pascua Yaqui Tribe v. United States Env't Prot. Agency*, No. CV-20-00266-TUC-RM, 2021 WL 3855977, at *4 (D. Ariz. Aug. 30, 2021), *appeal docketed*, No. 21-16791 (9th Cir. Oct. 26, 2021); *State of California v. Regan*, No. 20-cv-03005-RS, 2021 WL 4221583 (N.D. Cal. Sept. 16, 2021); *Waterkeeper All., Inc. v. United States Env'tl Prot. Agency*, No. 18-cv-03521-RS, 2021 WL 4221585 (N.D. Cal. Sept. 16, 2021). The Court, however, need not reach this issue as it is well within the Court's equitable discretion to remand without vacatur.

## CONCLUSION

Plaintiffs and Intervenors' oppositions present a stark contrast. Plaintiffs argue that the 2019 ESA Rules should be vacated in their entirety, while Intervenors largely contend that the Services will have no choice on remand but to repromulgate the 2019 ESA Rules. The Services seek a more modest solution. If given the chance on remand, the Services will bring their expertise to bear on all of the regulatory provisions addressed in the 2019 ESA Rules. And they will do so using the APA's rulemaking procedures, which will allow the public to participate and provide comments on any regulatory changes. Vacatur, by contrast, would disrupt this more orderly approach; it would stifle rulemaking on important issues and continue to divert scarce resources to litigation. This is unnecessary given the Services

willingness to engage in rulemakings on remand.  The Court should grant Federal Defendants' motion, remand the 2019 ESA Rules without vacatur, and deny Plaintiffs' motions for summary judgment.

DATED: January 3, 2022.

        TODD KIM
        Assistant Attorney General
        SETH M. BARSKY, Chief
        MEREDITH L. FLAX, Assistant Chief

        */s/ Coby Howell.*
        COBY HOWELL, Senior Trial Attorney
        U.S. Department of Justice
        Environment & Natural Resources Division
        Wildlife & Marine Resources Section
        MICHAEL R. EITEL, Senior Trial Attorney
        U.S. Department of Justice
        Environment & Natural Resources Division
        Wildlife & Marine Resources Section
        1000 S.W. Third Avenue
        Portland, OR 97204
        Phone: (503) 727-1023
        Fax: (503) 727-1117
        Email: coby.howell@usdoj.gov

        *Attorneys for Federal Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

/s/ Coby Howell
COBY HOWELL, Senior Attorney