UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DEB HAALAND, et al.,<br><br>    Defendants,<br><br>and<br><br>AMERICAN FARM BUREAU FEDERATION, *et al.*,<br><br>    Defendant-Intervenors. | Case No. 19-cv-05206-JST<br><br>**ORDER GRANTING MOTION TO REMAND AND VACATING CHALLENGED REGULATIONS**<br><br>Re: ECF No. 146 |
| STATE OF CALIFORNIA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DEB HAALAND, et al.,<br><br>    Defendants,<br><br>and<br><br>STATE OF ALABAMA, *et al.,*<br><br>    Defendant-Intervenors. | Case. No. 4:19-cv-06013-JST<br><br>Re: ECF No. 165 |

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br>　　　　　Plaintiff,<br>　v.<br>DEB HAALAND, et al.,<br>　　　　　Defendants,<br>　　and<br>STATE OF ALABAMA, *et al.,*<br>　　　　　Defendant-Intervenors. | Case No. 4:19-cv-06812-JST<br><br>Re:  ECF No. 109 |

Before the Court is a motion to remand without vacatur filed by Defendants Deb Haaland, U.S. Fish and Wildlife Service, Gina Raimondo, and National Marine Fisheries Service (collectively "the Services"). ECF No. 165. The Court will grant the motion for remand but will vacate the challenged regulations.[1]

## I.  BACKGROUND

### A.  The Endangered Species Act

The Endangered Species Act ("ESA") "was enacted in 1973 to prevent the extinction of various fish, wildlife, and plant species." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003). The ESA aims "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The ESA represents "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 180 (1978). It reflects "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Id.* at 185. "The responsibility for

---

[1] The Services filed identical motions in all three related cases: *Center for Biological Diversity v. Haaland*, No. 19-cv-05206-JST (N.D. Cal.); *State of California v. Haaland*, No. 19-cv-6013 (N.D. Cal.), and *Animal Legal Def. Fund v. Haaland*, 19-cv-06812 (N.D. Cal.). ECF No. 146 at 9 n.2 ("Federal Defendants are filing an identical motion and memorandum in all three cases."). The Court refers to the cases collectively in the singular tense.

2

administration and enforcement of the ESA lies with the Secretaries of Commerce and Interior, who have delegated the responsibility to the [National Marine Fisheries Service ("NMFS")] with respect to marine species, and to the Fish and Wildlife Service ("FWS") with respect to terrestrial species." *Turtle Island*, 340 F.3d at 973-74 (citing 50 C.F.R. § 402.01).

To accomplish its purposes, the ESA "sets forth a comprehensive program to limit harm to endangered species within the United States." *California ex rel. Lockyer v. U.S. Dept. of Agriculture*, 575 F.3d 999, 1018 (9th Cir. 2009). Section 4 of the ESA requires NMFS and FWS to identify endangered and threatened species and designate their "critical habitats." 16 U.S.C. 1533(a)(1)-(3).[2] Section 7 "imposes a procedural duty on federal agencies to consult with either the [NMFS] or the FWS before engaging in a discretionary action, which may affect listed species."[3] *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)). This consultation procedure aims to allow the Services "to determine whether the federal action is likely to jeopardize the survival of a protected species or result in the destruction of its critical habitat, and if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." *Id.* (citing 16 U.S.C. § 1536(b)(3)(A)). And Section 9 prohibits the "take" (e.g. killing, harassing, harming, or collecting) of listed endangered fish and wildlife species and prohibits other actions with respect to listed endangered plant species. 16 U.S.C. §§ 1532, 1538. Section 4(d) authorizes the extension of Section 9 prohibitions to threatened species. *Id.* § 1533(d).

### B. Procedural History

In August 2019, the Services enacted a series of regulations that modified how the Services implement the ESA (collectively "2019 ESA Rules"). The Listing Rule, 84 Fed. Reg. 45,020, modified how the Services add, remove, and reclassify endangered or threatened species and the

---

[2] The Act charges the Secretary of the Interior and Secretary of Commerce with this authority, 16 U.S.C. § 1532(15), but each has (respectively) delegated this authority to the FWS and NMFS. 50 C.F.R. § 402.01(b). For simplicity, this order refers to the Services and not the Secretaries, and distinguishes between the NMFS and FWS only when relevant.

[3] "When the acting agency is either the [NMFS] or the FWS, the obligation to consult is not relieved, instead, the agency must consult within its own agency to fulfill its statutory mandate." *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)).

criteria for designating listed species' critical habitat.  The Blanket Rule Repeal, 84 Fed. Reg. 44,753, eliminated the FWS's former policy of automatically extending to threatened species the protections against "take" that Section 9 automatically affords to endangered species.  And the Interagency Consultation Rule, 84 Fed. Reg. 44,976, changed how the Services work with federal agencies to prevent proposed agency actions that could harm listed species or their critical habitat.

Soon after the regulations were finalized in 2019, Plaintiffs – environmental groups, states, and cities – challenged the 2019 ESA Rules as unlawful, arguing that they violate the ESA, the Administrative Procedure Act ("APA"), and the National Environmental Policy Act ("NEPA").  The Services moved to dismiss all three cases on standing and ripeness grounds.  ECF No. 33.  The Court granted the motions with respect to some plaintiffs and denied them as to other plaintiffs.  The latter group of plaintiffs were granted leave to amend and then filed amended complaints, which the Services answered.  The Court also granted motions to intervene filed by a different group of states ("State Intervenors"),[4] private landowners ("Landowner Intervenors"),[5] and various industry groups ("Industry Intervenors")[6] (collectively "Intervenor-Defendants").

On January 19, 2021, Plaintiffs in each case filed motions for summary judgment.  *E.g.,* ECF No. 116.  The next day, President Biden signed Executive Order 13990 (titled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis"), directing the Services to evaluate and, where appropriate, revise or rescind environmental and public health-related regulations that issued during the prior four years that conflicted with national objectives set forth in the Order.  86 Fed. Reg. 7037 (Jan. 20, 2021).  In a publication accompanying the Executive Order, the White House specifically directed the Services

---

[4] These intervenors are the states of Alaska, Arizona, Idaho, Kansas, Montana, Nebraska, West Virginia, and Wyoming.

[5] These intervenors are Ken Klemm, the Beaver Creek Buffalo Company, the Washington Cattlemen's Association, and the Pacific Legal Foundation.

[6] These intervenors are the American Farm Bureau Federation, the American Forest Resource Council, the American Petroleum Institute, the Federal Forest Resource Coalition, the National Alliance of Forest Owners, the National Association of Home Builders, the National Cattlemen's Beef Association, and the Public Lands Council.

4

1  to review the 2019 ESA Rules challenged in this case. As a result of the Services' review of these
2  regulations, on June 4, 2021, FWS announced its intent to rescind the Section 4(d) Rule and the
3  Services announced their intent to revise the Section 4 and Section 7 Rules.

4  Once the new presidential administration signaled that it would reevaluate the 2019 ESA
5  Rules and rescind many of them, the parties agreed to a series of litigation stays, which lasted a
6  total of 150 days. Because the Plaintiffs were then unwilling to agree to further stays, the Services
7  filed a motion to stay in August 2021. In October 2021, the Court denied the motion to stay,
8  finding that there was at least "a fair possibility that [a] stay will work damage" because of the
9  continuing applicability of the challenged regulations. ECF No. 145 at 21-23. The Court lifted
10 the parties' stipulated stay and restored the summary-judgment briefing schedule to calendar.

11 Plaintiffs then renoticed their motions for summary judgment. In response, the Services
12 filed this motion to remand without vacatur. Plaintiffs oppose the motion, asking that the Court
13 either (1) remand with vacatur – Plaintiffs' preferred outcome – or (2) deny the Services' motion
14 altogether and resume summary judgment briefing so the matter can be adjudicated on the merits.
15 The Intervenor-Defendants largely support remand without vacatur.

16 **II.    JURISDICTION**

17 This Court has jurisdiction under 28 U.S.C. § 1331.

18 **III.   LEGAL STANDARD**

19 When an agency's action is challenged in federal court, "it may seek remand [of the
20 challenged regulations] even absent any intervening events, without confessing error, to reconsider
21 its previous position." *In re Clean Water Act Rulemaking*, No. CV-20-04636 WHA, 2021 WL
22 4924844, at *4 (N.D. Cal. Oct. 21, 2021). "Generally, courts only refuse voluntarily requested
23 remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics*
24 *v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012).

25 In determining whether to vacate agency action concurrently with remand, the Court
26 considers two factors: how serious the agency's errors are and "the disruptive consequences of an
27 interim change that may itself be changed." *Id.* (quoting *Allied-Signal, Inc. v. U.S. Nuclear*
28 *Regulatory Com'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993)) (internal quotation marks omitted). In

5

analyzing the first factor, courts assess "whether the agency . . . could adopt the same rule on remand, or whether [the] fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council v. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015). "[C]ourts in the Ninth Circuit decline vacatur only in rare circumstances." *Klamath-Siskiyou*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (citing *Humane Soc'y v. Locke,* 626 F.3d 1040, 1053 n.7 (9th Cir. 2010)). "Vacatur is the presumptive remedy." *Hunters v. Marten*, 470 F. Supp. 3d 1151, 1181 (D. Mont. 2020), *appeal dismissed sub nom. Helena Hunters & Anglers Ass'n v. Marten*, No. 20-35771, 2020 WL 8678109 (9th Cir. Dec. 28, 2020) (citation omitted).

## IV. DISCUSSION

### A. Motion for Remand

No party argues that the Services' request for remand in this case is frivolous or in bad faith. The Court grants the Services' motion for remand.

### B. Vacatur

#### 1. Adjudication on the Merits

The Court next turns to the question of vacatur. Before addressing the two *Allied-Signal* factors, the Court first addresses a threshold question: whether the Court can vacate the 2019 ESA Rules without fully adjudicating the merits of Plaintiffs' claims.

As the Services acknowledge, "[c]ourts have recognized that definitive findings on the merits are not required in order to vacate a challenged agency action." ECF No. 146 at 34 n.10 (citing *In re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013, 2021 WL 4924844, at *5 (N.D. Cal. 2021) ("Other district courts in our circuit have consistently acknowledged they have the authority to vacate agency actions upon remand prior to a final determination of the action's legality."), *appeal filed*, Case No. 21-16961 (9th Cir. Nov. 22, 2021), *stay granted*, *Louisiana v. Am. Rivers*, 142 S. Ct. 1347, 1347 (2022); *Pascua Yaqui Tribe v. United States Env't Prot. Agency*, 557 F. Supp. 3d 949, 954 (D. Ariz. 2021)). In fact, the majority of district courts in the Ninth Circuit have so ruled. *See, e.g., All. for Wild Rockies v. Marten*, 2018 WL 2943251, at *2-3 (D. Mont. June 12, 2018) (vacating Forest Service Record of Decision upon remand for

1  completion of additional analysis where "there is no error attributable to the agency but that it is
2  unlikely the ROD will stand on remand"); *N. Coast Rivers All. v. Dep't of the Interior*, 2016 WL
3  8673038, at *6 (E.D. Cal. Dec. 16, 2016) ("vacation of an agency action without an express
4  determination on the merits is well within the bounds of traditional equity jurisdiction" (citing *Ctr.*
5  *For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241-42 (D. Colo. 2011)); *but see*
6  *Alaska Wildlife All. v. Haaland*, No. 3:20-CV-00209-SLG, 2022 WL 1553556, at *3 (D. Alaska
7  May 17, 2022) ("Given the Supreme Court's recent stay order and the dearth of Ninth Circuit
8  authority on the matter, the Court is not persuaded that it has the authority to vacate the challenged
9  agency action absent a merits determination."). These orders generally proceed under the
10 reasoning that "because vacatur is an equitable remedy, and because the APA does not expressly
11 preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur
12 without a decision on the merits." *In re Clean Water Act Rulemaking*, 568 F. Supp. 3d at ___[7]
13 (quoting *Ctr. For Native Ecosystems*, 795 F. Supp. 2d at 1241-42 (D. Colo. 2011)). Finding that
14 reasoning persuasive, "this order agrees with the foregoing opinions from district judges within
15 our circuit that, when an agency requests voluntary remand, a district court may vacate an
16 agency's action without first making a determination on the merits." *Id.*[8]
17     Thus, vacatur in this case would not be inconsistent with any district court authority in this
18 district.

---

[7] As of the date of this order, pincites for this case were not available on Westlaw.

[8] Certain intervenors argue that "the better approach to requests for voluntary remand is reflected in the decision of yet another court in this District presiding over challenges to the EPA's rulemaking for defining and determining 'waters of the United States' . . . under the Clean Water Act." ECF No. 153 at 15 (citing *California v. Regan*, No. 20-cv-03005-RS, 2021 WL 4221583 (N.D. Cal. Sept. 16, 2021) and *Waterkeeper All., Inc. v. U.S. Env't Prot. Agency*, No. 18-cv-03521-RS, 2021 WL 4221585 (N.D. Cal. Sept. 16, 2021). In those cases, however, Judge Seeborg did not hold that vacatur is only appropriate after full adjudication of the merits. Rather, he held that he "would not be inclined to impose vacatur" because "there has been no evaluation of the merits – *or concession by defendants* – that would support a finding that the rule should be vacated." *Regan*, 2021 WL 4221583, at *1 (emphasis added); *Waterkeeper*, 2021 WL 4221585, at *1 (same). Thus, Judge Seeborg did not require a full evaluation of the merits as a precondition of vacatur. Moreover, as set forth below, the Services have made substantial concessions regarding the infirmity of the 2019 ESA Rules.

### 2. Allied-Signal Factors

The first Allied-Signal factor is the seriousness of an agency's errors. *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 881 (E.D. Cal. 2018). In analyzing this factor, courts assess "whether the agency . . . could adopt the same rule on remand, or whether [the] fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council*, 806 F.3d 520, 532 (9th Cir. 2015).

Here, the Services themselves concede that they "have substantial concerns with the 2019 ESA Rules, both with respect to certain substantive provisions as well as certain procedures that were utilized in promulgating these regulatory revisions." ECF No. 146 at 32; *see also id.* at 29-30 (stating that "they have substantial and legitimate concerns over many aspects of these rules"). These include "substantial concerns about the Section 4(d) Rule that eliminated the so-called 'blanket' protections for species listed as threatened following promulgation of that rule." *Id.* at 30. That is because "the Section 4(d) Rule reduces FWS' flexibility and may require additional resources at the time of listing as compared to the blanket rule." *Id.* (citation and quotation omitted). The Services also identify several "legitimate bases to revisit the Section 4 Rule." *Id.* Removal of the regulatory language "without reference to possible economic or other impacts of such determination," previously contained in 50 C.F.R. § 424.11(b), "has the potential to cause confusion regarding the Services' intentions pertaining to consideration of economics in listing determinations, or intentions to collect and present economic impact information stemming from the listing of species." *Id.* (citation and quotation omitted). "The removal of this regulatory language may also create a risk that economic information may influence the listing determination, which would run afoul of the statutory language." *Id.* (citation and quotation omitted). The Services also express "substantial concerns" with "certain aspects of the Section 7(a)(2) Rule" and "the NEPA documents they prepared when promulgating the 2019 ESA Rules." *Id.* at 32. Indeed, as the Services acknowledge, many of their concerns about the ESA Rules are the ones that Plaintiffs raised in filing this litigation. *Id.*

Nor have the Services evinced any desire to keep the 2019 ESA Rules intact. To the contrary, "FWS [has] announced its intent to rescind the Section 4(d) Rule and the Services

1 announced their intent to revise the Section 4 and Section 7 Rules." ECF No. 146 at 9.
2 Accordingly, on this record, the Court has no difficulty in concluding that "fundamental flaws in
3 the agency's decision make it unlikely that the same rule[s] would be adopted on remand."
4 *Pollinator*, 806 F.3d at 532.

5   The second *Allied-Signal* factor is "the disruptive consequences that would result from
6 vacatur." *AquAlliance*, 312 F. Supp. 3d at 881. As to that factor, "courts may decline to vacate
7 agency decisions when vacatur would cause serious and irremediable harms that significantly
8 outweigh the magnitude of the agency's error." *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242
9 (internal quotations and citations omitted).

10   No such serious and irremediable harm appears in this record. The Services' chief
11 argument is that vacatur "would cause confusion among the public, other agencies, and
12 stakeholders, and impede the efficiency of ESA implementation, by abruptly altering the
13 applicable regulatory framework and creating uncertainty about which standards to apply." ECF
14 No. 146 at 36. But, as the Services themselves explain many times, leaving the regulations in
15 place will cause equal or greater confusion, given the flaws in the drafting and promulgation of
16 those regulations. *See id.* at 30 (removal of the "economic or other impacts" from the Section 4
17 Rule "has the potential to cause 'confusion regarding the Services' intentions pertaining to
18 consideration of economics in listing determinations, or intentions to collect and present economic
19 impact information stemming from the listing of species' (internal citation and quotation omitted);
20 *id.* at 31 (revisions to the "not prudent" language in the Section 4 Rule create "the potential for
21 public confusion"); *id.* (the revised definition of "effects of the action" language in the Section
22 7(a)(2) Rule create "potential confusion"). Also, as previously noted, the Services have already
23 announced their intention to reexamine and revise the regulations. In so doing, they put the public
24 on notice that the regulations' existence in their current form is unlikely. It therefore seems
25 doubtful that vacatur would add to whatever "uncertainty [exists] about which standards to apply."
26 ECF No. 146 at 36.

27   The Intervenors' various arguments regarding the second *Allied-Signal* factor are no more
28 persuasive. The State Intervenors argue that "vacatur would resurrect the unlawful 2016

9

regulations that the State Intervenors challenged in court and settled with the Federal Defendants based on their promise to reconsider the rules." ECF No. 151 at 21-22. They further state that "[t]he 2019 Rules were enacted at least in part to respond to the needs of States to work with stakeholders in ways that allowed landowners to view the presence of threatened or endangered species as assets, not liabilities." *Id.* at 23. The Landowner Intervenors and the Industry Intervenors make similar arguments. *See* ECF No. 152 at 28-29 ("An abrupt return [to the prior regulatory regime] has significant implications for theirs and their members' abilities to run their businesses, manage their properties, and pursue their conservation goals."); ECF No. 153 at 24 ("The 2019 Section 4 Rule provides greater transparency to the Industry Intervenors' members whose land may be subject to the ESA and will consequently help limit unwarranted listings and overbroad critical habitat designations—which do not promote species conservation, place unnecessary burdens on regulated industry, and stymy private conservation efforts.")

These arguments all assume that the 2019 ESA Rules would remain in effect absent vacatur. That assumption is not supported by the record. Rather, as stated above, the Services have requested remand precisely to address their "substantial concerns with the 2019 ESA Rules." ECF No. 146 at 32. According to the Assistant Director for the Ecological Services Program of the FWS, the Services intend to jointly propose revisions to the 2019 Section 4 and Section 7 rules, and the FWS intends to rescind the ESA Section 4(d) rule and to reinstate its blanket 4(d) rule. ECF No. 146-1 at 6. Thus, regardless of whether this Court vacates the 2019 ESA Rules, they will not remain in effect in their current form. There is no reliance interest for vacatur to injure.

Because neither of the *Allied-Signal* factors weighs against vacatur, this is not the "rare circumstance" in which remand without vacatur would be appropriate. *Humane Soc.*, 626 F.3d at 1053 n.7.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the reasons stated above, the Court grants the Services' motion in part. This case is remanded and the 2019 ESA Rules are vacated.

**IT IS SO ORDERED.**

Dated: July 5, 2022



JON S. TIGAR
United States District Judge

11