KRISTEN L. BOYLES (CSBA # 158450)
PAULO PALUGOD (NYBA # 5047964)
*[Admitted Pro Hac Vice]*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
Ph: (206) 343-7340
kboyles@earthjustice.org
ppalugod@earthjustice.org

ANDREA A. TREECE (CSBA # 237639)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111
Ph: (415) 217-2089
atreece@earthjustice.org

*Attorneys for Plaintiffs*
*[Additional counsel listed at end]*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, NATIONAL PARKS CONSERVATION ASSOCIATION, WILDEARTH GUARDIANS, and THE HUMANE SOCIETY OF THE UNITED STATES,

*Plaintiffs*,

v.

DEB HAALAND, U.S. Secretary of the Interior, U.S. FISH AND WILDLIFE SERVICE, GINA RAIMONDO, U.S. Secretary of Commerce, and NATIONAL MARINE FISHERIES SERVICE,

*Defendants*,

and

STATE OF ALABAMA, *et al.*,

*Defendant-Intervenors*.

Case No. 4:19-cv-05206-JST

Related Cases: No. 4:19-cv-06013-JST
No. 4:19-cv-06812-JST

PLAINTIFFS' JOINT RULE 59(e) MOTION TO ALTER OR AMEND ORDER AND JUDGMENT

Date: October 20, 2022
Time: 2:00 pm
Place: Courtroom 6, 2nd Floor
Judge: Hon. Jon S. Tigar

TABLE OF CONTENTS

NOTICE OF MOTION AND REQUESTED RELIEF ..... 1

INTRODUCTION AND REQUESTED RELIEF ..... 1

RULE 59(E) STANDARD ..... 3

PROCEDURAL BACKGROUND ..... 5

ARGUMENT ..... 7

I. THE COURT SHOULD ALTER OR AMEND THE JUDGMENT TO RESOLVE PLAINTIFFS' NEPA CLAIM ..... 8

A. The Court Should Alter or Amend Its Judgment to Prevent Manifest Injustice and Address the Legal Uncertainty Created by the Supreme Court's Order in *Louisiana*. ..... 9

B. The Services' Failure to Comply with NEPA Warrants Vacatur. ..... 11

II. THE COURT SHOULD SET A REMAND SCHEDULE AND DEADLINE. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Cases

Page(s)

*AARP v. U.S. Equal Emp. Opportunity Comm'n*, 292 F. Supp. 3d 238 (D.D.C. 2017) .......... 4

*Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981 (9th Cir. 1994) .......... 12

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) .......... *passim*

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101 (9th Cir. 2011) .......... 4

*Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181 (9th Cir. 2004) .......... 3

*Blakeney v. Ascension Servs., L.P.*, 2016 WL 6804603 (N.D. Cal. Nov. 17, 2016) .......... 4

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072 (9th Cir. 2011) .......... 2

*Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003) .......... 4

*Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957 (9th Cir. 2002) .......... 10

*California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999 (9th Cir. 2009) .......... 10

*California ex rel. Lockyer v. U.S. Dep't of Agric.*, 459 F. Supp. 2d 874 (N.D. Cal. 2006) .......... 11, 12

*Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022) .......... 2, 6, 7

*McDowell v. Calderon*, 197 F.3d 1253 (9th Cir. 1999) .......... 4

*N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir. 1988) .......... 11

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917 (9th Cir. 2008) .......... 12

*Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17 (D.D.C. 2004) .......... 4

*Pollinator Stewardship Council v. EPA*,
806 F.3d 520 (9th Cir. 2015) ....................5

*In re Qmect, Inc.*,
No. 04-41044, 2007 WL 4357566 (Bankr. N.D. Cal. Dec. 11, 2007) ....................4

*Sierra Club v. Marsh*,
872 F2d 497 (1st Cir. 1989) ....................11

*SKF USA Inc. v. United States*,
254 F.3d 1022 (Fed. Cir. 2001) ....................9

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
985 F.3d 1032 (D.C. Cir. 2021) ....................10

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
No. C 11-4991 CW, 2017 WL 9471951 (N.D. Cal. July 19, 2017) ....................4

*Tenn. Valley Auth. v. Hill*,
437 U.S. 153 (1978) ....................10

*Tripati v. Henman*,
845 F.2d 205 (9th Cir. 1988) ....................5

*W. Watersheds Project v. Zinke*,
336 F. Supp. 3d 1204 (D. Idaho 2018) ....................11

**Statutes**

Administrative Procedure Act ....................13

Clean Water Act § 401 ....................6

Endangered Species Act ....................2

National Environmental Policy Act .................... *passim*

**Other Authorities**

40 C.F.R. § 1508.18 ....................12

Fed. R. App. P. 4(a)(4)(A)(iv) ....................5

Fed. R. Civ. P. 59(e) .................... *passim*

NOTICE OF MOTION AND REQUESTED RELIEF[1]

PLEASE TAKE NOTICE that the following Motion to Alter or Amend Judgment will be heard by the Honorable Jon S. Tigar of the United States District Court for the Northern District of California on October 20, 2022 at 2 p.m. in Courtroom 6 on the 2nd floor of the Oakland Courthouse in Oakland, California, or as soon thereafter as counsel can be heard.

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiffs Center for Biological Diversity *et al.* (No. 19-05206-JST), State of California *et al.* (No. 19-06013-JST), and Animal Legal Defense Fund (No. 19-06812-JST) move to alter or amend this Court's Order Granting Motion to Remand and Vacating Challenged Regulations ("Order"), ECF 168, and Judgment, ECF 169, both entered by this Court on July 5, 2022. This motion is based on the pleadings, briefs, and administrative record filed in this case, and the points and authorities discussed below. Counsel for Plaintiffs have conferred with all parties regarding this motion; counsel for Federal Defendants U.S. Fish and Wildlife Service and National Marine Fisheries Service ("the Services") stated that the United States reserves its position at this time and intends to file a response to the motion; and counsel for Intervenors stated they will reserve their position on the motion until they have had the opportunity to review it and any supporting papers.

INTRODUCTION AND REQUESTED RELIEF

Plaintiffs find themselves in the unusual position of requesting an amendment to this Court's Order and Judgment even though that Order granted the relief Plaintiffs requested when opposing the Services' motion for remand without vacatur. Plaintiffs do not take this step lightly; they make this request to preserve the substance of this Court's Order and Judgment and avoid significant prejudice in the wake of legal uncertainty created by a recent order of the U.S. Supreme Court.

[1] Plaintiffs are filing the same motion in each of the three related cases. Unless otherwise noted, all ECF references are to numbers from the earliest filed case, *Center for Biological Diversity v. Haaland*, Case No. 4:19-cv-05206-JST.

Specifically, this Court recently granted the Services' request to voluntarily remand this action, and Plaintiffs' request to vacate the invalid 2019 Endangered Species Act regulations ("2019 ESA Rules") during the administrative rulemaking. This Court noted the Services' "substantial concerns with the 2019 ESA Rules"—on many of the same grounds raised by Plaintiffs here—and also signaled its own sense that the 2019 ESA Rules were "fundamental[ly] flaw[ed]," as Plaintiffs' prior briefing had established. Order at 8–10. But this Court did not ultimately decide the merits of any of Plaintiffs' claims before vacating the rules under its inherent equitable authority. Order at 6–7.

Intervenors now move for a stay of the vacatur portion of this Court's ruling, arguing that a recent order from the Supreme Court's emergency docket calls into question this Court's authority to vacate the 2019 ESA Rules without reaching the merits. *See generally* ECF 171; *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (Apr. 6, 2022). That order—issued after the parties to this case had completed briefing on the Services' motion to remand—took the extraordinary step of staying, without explanation, another Northern California District Court judge's ruling similarly vacating a federal regulation without finally determining the merits of the challenges to that rule. Plaintiffs intend to oppose Intervenors' stay request and defend this Court's vacatur decision. Nevertheless, Intervenors' interpretation of the legal effect of the Supreme Court's unexplained order casts uncertainty over this case. And as Plaintiffs have previously explained, the harm that would flow from *not* vacating the 2019 ESA Rules would be severe, immediate, and in contravention of the statutory mandates of the Endangered Species Act.

Accordingly, and pursuant to Federal Rule of Civil Procedure 59(e), Plaintiffs respectfully move this Court to alter or amend its Order and Judgment to resolve a key, overarching legal issue raised in the complaints and summary judgment motions, and briefed by all parties in supplemental briefs: whether the Services failed to comply with the requirements of the National Environmental Policy Act ("NEPA") in promulgating the 2019 ESA Rules. If the Court finds such a NEPA violation on the merits, vacatur is the standard remedy. See *Cal.*

*Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011); *Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181, 1185 (9th Cir. 2004).

An amendment or alteration of the Order and Judgment is warranted to conserve judicial resources and ensure that the invalid 2019 ESA Rules are not potentially reinstated during the remand and appeal processes. If the 2019 ESA Rules are reinstated prior to any replacement rules becoming effective, it would seriously prejudice Plaintiffs by leaving them with no avenue for challenging the merits of these regulations, and it would further harm imperiled species and their habitat. Altering or amending the Court's Order and Judgment to address the NEPA issue on the merits and to order vacatur and remand based on that merits ruling would provide additional grounds for this Court's decision and avoid an unjust result.[2] Resolving the NEPA claim in Plaintiffs' favor would also provide additional support for the Court's finding on the first *Allied-Signal* factor regarding the seriousness of the agencies' errors and ensure that the Services understand and adhere to those mandatory statutory requirements during the rulemaking process on remand.

In addition, Plaintiffs respectfully request that the Court alter or amend the Order and Judgment to require the Services to complete the rulemaking process on remand within one year and require them to provide quarterly reports to the Court and the parties. A court order setting a deadline and schedule for the Services' anticipated rulemaking processes on remand will ensure a timely and transparent remand process for all parties.

RULE 59(e) STANDARD

Federal Rule of Civil Procedure 59(e) permits a court to "alter or amend" a judgment upon motion filed within 28 days after entry of judgment. *See* Fed. R. Civ. P. 59(e). There are

---

[2] Prior to issuing the Order, on February 24, 2022, the Court requested that all parties submit supplemental briefs analyzing "whether the Services properly invoked the categorical exclusions under NEPA when they promulgated the challenged regulations and whether, under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146 (D.C. Cir. 1993), vacatur is the proper remedy for a violation of NEPA." ECF 155 at 2. The Services submitted their supplemental brief on March 4, 2022, and all other parties submitted their supplemental briefs on March 12, 2022. ECF 156–160.

four basic grounds upon which a Rule 59(e) motion may be granted: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted). A court is not limited to these four situations, and district courts enjoy "considerable discretion in granting or denying the motion." *Id.* (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)); *see also SunEarth, Inc. v. Sun Earth Solar Power Co*., No. C 11-4991 CW, 2017 WL 9471951, at *1 (N.D. Cal. July 19, 2017) ("court considering a Rule 59(e) motion is not limited to these four situations. [] It has 'considerable discretion'" in deciding when to alter or amend); *In re Qmect, Inc.*, No. 04-41044, 2007 WL 4357566, at *2 (Bankr. N.D. Cal. Dec. 11, 2007) (explaining that "[w]hether to grant or deny [a 59(e)] motion is entrusted to the sound judgment of the trial court").

Plaintiffs fully understand that courts have cautioned that Rule 59(e) motions should be granted "sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Plaintiffs submit that this is one of those rare circumstances. When analyzing a Rule 59(e) motion, "the Court addresses whether the unintended legal consequences of the Court's order creates manifest injustice, which requires showing that the court made an error that is direct, obvious, and observable." *Blakeney v. Ascension Servs., L.P.*, 2016 WL 6804603, *6 (N.D. Cal. Nov. 17, 2016) (cleaned up). Other courts have noted that there is no precise definition of what constitutes "manifest injustice," *Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 22 (D.D.C. 2004), *as amended* (May 13, 2004), although the term undoubtedly contemplates prejudice to the moving party like that Plaintiffs face here. *AARP v. U.S. Equal Emp. Opportunity Comm'n*, 292 F. Supp. 3d 238, 241 (D.D.C. 2017). And while the Supreme Court's order was issued in a different case, Intervenors rely heavily on their interpretations of that order and the legal uncertainty created by it in their

stay motion in this case. ECF 171 at 1, 2 (Supreme Court order "compels the result in this case" and is "*very* persuasive authority"). As explained below, granting Plaintiffs' Rule 59(e) motion and amending the Court's Order and Judgment is warranted to prevent manifest injustice and is justified due to the questions raised by the Supreme Court's intervening order.[3]

PROCEDURAL BACKGROUND

In its Order, this Court granted the Services' motion for remand, but with vacatur of the 2019 ESA Rules. Order at 6. Before addressing the factors set forth in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150–51 (D.C. Cir. 1993), the Court addressed the threshold question of whether it could vacate the 2019 ESA Rules without fully adjudicating the merits of Plaintiffs' claims. The Court noted that doing so would not be inconsistent with any Ninth Circuit district court authority, Order at 7, and that a majority of district courts in this Circuit have so ruled. *Id.* at 6. The Court also emphasized that the "substantial concessions regarding the infirmity of the 2019 ESA Rules" made by the Services weighed in favor of the Court's authority to vacate the rules without a merits determination in this case. *Id.* at 7, n.8.

Turning to the first *Allied-Signal* factor regarding the seriousness of the agency's errors, the Court again highlighted the Services' admission of substantial and legitimate concerns about the 2019 ESA Rules. *Id.* at 8–9 ("substantial and legitimate concerns over many aspects of these rules"; "legitimate bases to revisit the Section 4 Rule"; Rule "has the potential to cause confusion"). The Court had "no difficulty in concluding that 'fundamental flaws in the agency's decision make it unlikely that the same rules[s] would be adopted on remand.'" *Id.* at 9, quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

On the second *Allied-Signal* factor regarding the disruptive consequences of vacatur, the Court found no serious or irremediable harm from vacatur, quoting the Services themselves explaining just the opposite: that leaving the 2019 ESA Rules in place would cause harm and

---

[3] A timely motion under Rule 59(e) suspends the finality of the judgment for purposes of appeal. *Tripati v. Henman*, 845 F.2d 205, 206 (9th Cir. 1988); Fed. R. App. P. 4(a)(4)(A)(iv).

equal or greater confusion than vacating them would. *Id.* at 9. In addition, the Court observed that the Services had already "put the public on notice that the regulations' existence in their current form is unlikely," and that it consequently was "doubtful that vacatur would add to" any existing regulatory uncertainty. *Id*. Further, the Court disagreed with Intervenors' arguments that they would be harmed by vacatur of the 2019 ESA Rules, finding that any allegations of harm to them rested on assumptions that the 2019 ESA Rules would continue in force, an assumption the Court found unsupported by the record given the Services' clearly stated intentions to revise the rules on remand. *Id.* at 10 ("[R]egardless of whether this Court vacates the 2019 ESA Rules, they will not remain in effect in their current form").

Yet Intervenors have now filed a joint motion for stay pending appeal, relying in large part on the U.S. Supreme Court's order in *Louisiana*, 142 S. Ct. 1347.[4] ECF 171 at 1 ("The Supreme Court's stay in *Louisiana* … compels the result in this case"). The issues on appeal in the *Louisiana* case were whether the district court had authority to vacate a regulation without finally deciding the merits of the challenges to that rule in response to the federal government's request for a voluntary remand. In that case, state and environmental plaintiffs challenged a regulation promulgated in 2020 regarding Section 401 of the Clean Water Act ("CWA rule"). Similar to the instant case, the district court (Judge Alsup, N.D. Cal.) granted the Environmental Protection Agency's ("EPA's") motion for remand and vacated the CWA rule without declaring the rule unlawful. The district court and the Ninth Circuit both denied the intervenors' post-judgment motions for stay of the vacatur portion of the district court's ruling pending appeal.

[4] The Supreme Court issued its order on April 6, 2022, after all parties had fully briefed the Services' remand motion, and submitted supplemental briefs on Plaintiffs' NEPA claim as requested by the Court. Plaintiffs reasonably believed that, in light of the Court's supplemental briefing order and the Services' concessions, the Court was preparing to rule on the merits of Plaintiffs' NEPA claims, and they also did not anticipate that the application for a stay of vacatur in *Louisiana* would necessarily pose any barrier to vacatur. The Services and Defendant-Intervenors submitted notices of the Supreme Court's order, ECF 164, 165, 166; no party, however, specifically briefed the effect of such order on the proceedings in this case.

EPA did not appeal the district court's ruling and opposed requests to stay the district court's vacatur order.

The intervenors in *Louisiana* then took the unusual and extraordinary step of asking the Supreme Court to grant a stay of the vacatur order pending appeal, or in the alternative, to decide the case on the merits before the Ninth Circuit had ruled on the appeal. Plaintiffs and EPA again opposed this request. The Supreme Court granted the stay request in a one paragraph order. The Supreme Court did not provide any substantive explanation for its decision, and granted the stay "without full briefing and argument." *See Louisiana*, 142 S. Ct. at 1349 (Kagan J. dissenting).

The Supreme Court's order created substantial prejudice to the plaintiffs in the *Louisiana* case by reinstating the challenged CWA rule pending the remand and appeal process. As a result, the challenged CWA rule will now remain in effect for an undetermined period of time while proceedings continue in the Ninth Circuit on motions to dismiss and briefing on the substantive issues or until the CWA rule is rescinded or revised by EPA and the pending appeals become moot.

It is this tortured procedural path that Intervenors here wish to travel, and Plaintiffs wish to avoid.

## ARGUMENT

In granting the motion for voluntary remand and vacating the regulations, the Court's Order reinstated the prior regulatory status quo—which had been in effect for over 30 years prior to the 2019 ESA Rules—while the Services reconsidered the approach taken in the 2019 ESA Rules and determined the best path forward. Altering or amending the Court's Order to include a determination on the merits of Plaintiffs' NEPA claim would preserve that just result, notwithstanding any uncertainty Intervenors assert was created by the Supreme Court's order in *Louisiana*. Such an amendment or alteration would solidify the basis for this Court's order and prevent the manifest injustice that would result if the 2019 ESA Rules are resuscitated during the appeal process in this case.

In addition, a merits ruling on the NEPA claim would conserve judicial resources, prevent prejudice to Plaintiffs and harm to listed species and their habitat, provide additional support for the Court's finding on the first *Allied-Signal* factor, and provide necessary guidance for the Services concerning their NEPA obligations on remand.

Separately, an amendment to the Order and Judgment is warranted to set deadlines for the Services' rulemaking process on remand, and to provide status reports to ensure the Services complete the rulemaking process on remand in a timely and transparent manner.

## I. THE COURT SHOULD ALTER OR AMEND THE JUDGMENT TO RESOLVE PLAINTIFFS' NEPA CLAIM.

The Court should grant Plaintiffs' Rule 59(e) motion and amend its Order and Judgment to resolve Plaintiffs' NEPA claim. Importantly, Plaintiffs agree with the Court that, under applicable Ninth Circuit case law, it has inherent equitable authority to remand and vacate the 2019 ESA Rules in order to honor the Services' request for voluntary remand and return the regulatory background to the longstanding status quo, without first ruling on the merits of Plaintiffs' claims. In addition, as Plaintiffs explained in their opposition to the Services' motion to remand, permitting a remand *without* vacatur would be inherently inequitable in that it would leave the invalid 2019 ESA Rules—which Plaintiffs contend are unlawful on their face and *ultra vires*—in effect for potentially several more years. This would strip Plaintiffs of any ability to challenge the procedural and substantive merits of those nationwide rules during the entirety of the remand and appeal process. On the other hand, a decision to resolve the summary judgment motions—Plaintiffs' alternative proposed path—would have burdened the Court with ruling on numerous provisions of the 2019 ESA Rules that the Services had ceased to defend. At the time the parties briefed the issues, the Plaintiffs' request to remand and vacate struck a reasonable balance between these two outcomes.

But now Intervenors have invoked the Supreme Court's action in *Louisiana*, claiming that the Supreme Court's unexplained order staying the district court's vacatur of the CWA rule

without any substantive briefing or ruling on the merits casts doubt over this Court's Order here. To prevent manifest injustice and conserve judicial resources, this Court should rule on Plaintiffs' fully briefed NEPA claims now.

### A. The Court Should Alter or Amend Its Judgment to Prevent Manifest Injustice and Address the Legal Uncertainty Created by the Supreme Court's Order in *Louisiana*.

This Court should grant Plaintiffs' motion to alter or amend the Court's Order and Judgment to address the merits of their NEPA claims, for three reasons. First, the legal uncertainty generated by the Supreme Court's stay order in *Louisiana* has altered the potential impacts of a voluntary remand and raised issues of litigation over a stay, an increased expenditure of judicial resources, a greater degree of prejudice to Plaintiffs, and an increase in the amount and extent of harm to listed species and their habitat of such ruling. All of these effects—which this Court's vacatur was meant to avoid—warrant amendment of the Court's judgment to address the merits of Plaintiffs' NEPA claims in order to avoid manifest injustice. Courts have discretion to take into account the potential prejudice to the plaintiffs, as well as the need for conservation of judicial resources, when deciding whether to grant a remand request. *See, e.g.*, *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) ("Although a court need not necessarily grant such a remand request, remand may conserve judicial resources…").

If this Court's vacatur ruling is stayed or reversed, Plaintiffs will be severely prejudiced, as the challenged regulations would be reinstated for an indefinite period of time while the Services reconsider and revise them, and Plaintiffs will be prevented from litigating their challenges to the 2019 ESA Rules. The public also will be harmed and confused by the "regulatory whipsaw" of an uncertain regulatory regime, as the Services themselves have admitted. Order at 9 (quoting Services' statements about various provisions creating "the potential for public confusion"). Most importantly, imperiled species and their habitat also will be harmed by 2019 ESA Rules, *see, e.g.*, ECF 48, 135, 142, 149, directly contrary to Congress'

intent in enacting the ESA that agencies must "afford first priority to the declared national policy of saving endangered species." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978). Moreover, reaching the NEPA issues will not prejudice any party, as these issues have been briefed by all parties to this case.

Furthermore, the prospect that a court may subsequently determine that vacatur is unavailable unless accompanied by a determination on the merits means that a voluntary remand in lieu of litigating Plaintiffs' summary judgment motions would now waste judicial resources instead of conserving them. Indeed, the Order vacating the 2019 ESA Rules has already led to three appeals challenging the Court's authority to do so. To prevent such manifest injustice, the Court should amend its judgment to resolve the NEPA claim raised in these cases.

Second, a ruling on the merits of Plaintiffs' NEPA claims would provide further support for the Court's vacatur ruling and its analysis of the first *Allied-Signal* factor regarding the seriousness of the Services' errors. The Services' NEPA violations are plainly "serious" under the first *Allied-Signal* factor; indeed, they strike at the very heart of NEPA. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1053 (D.C. Cir. 2021) ("application of [the *Allied-Signal*] factors suggests that NEPA violations are serious notwithstanding an agency's argument that it might ultimately be able to justify the challenged action"). Indeed, vacatur is the standard remedy for a NEPA violation because the fundamental point of NEPA is to require an adequate review *before* taking an action affecting the environment. *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1012 (9th Cir. 2009); *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 963 (9th Cir. 2002) (NEPA "force[s] agencies to publicly consider the environmental impacts of their actions before going forward.").

Third, a ruling on the merits of Plaintiffs' NEPA claim would provide necessary guidance for the Services' reconsideration of the 2019 ESA Rules on remand by instructing them on how NEPA applies to the promulgation of regulations. Without the Court's guidance, there are "real dangers" of "[b]ureaucratic rationalization and bureaucratic momentum" if the Services embark

on a path of justifying or bolstering decisions already made rather than truly reconsidering them. *W. Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204, 1240 (D. Idaho 2018) (quoting *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1158 (9th Cir. 1988)); *see also Sierra Club v. Marsh*, 872 F2d 497, 504 (1st Cir. 1989) (noting "the difficulty of stopping a bureaucratic steam roller, once started") (Breyer, J.). Leaving the NEPA claim unresolved increases the likelihood that the Services will commit the same NEPA errors in promulgating any revised ESA rules on remand. It is in the interest of all parties for the Court to address this overarching procedural claim now as it will apply to any subsequent proposed rules following remand.

B. The Services' Failure to Comply with NEPA Warrants Vacatur.

As more fully described in Plaintiffs' Joint Supplemental Brief, ECF 160, the 2019 ESA Regulations were issued in violation of NEPA. The Services failed to conduct any NEPA review of the 2019 ESA Rules whatsoever—contravening their past, lawful practice of conducting NEPA review when substantively amending ESA regulations—and instead invoked inapplicable categorical exclusions they now admit "may not be adequately supported by the record." ECF 160 at 1, 4. The 2019 ESA Rules were significant federal actions that required NEPA review, *id.* at 5–6, and they are substantive, not administrative or procedural, and they present extraordinary circumstances. *Id.* at 7–10.

Indeed, courts have found NEPA review required in remarkably similar circumstances. For example, in *California ex rel. Lockyer v. U.S. Department of Agriculture*, 459 F. Supp. 2d 874 (N.D. Cal. 2006), *aff'd* 575 F.3d 999 (9th Cir. 2009), a court in this District rejected the Forest Service's contention that its rule repealing nationwide national roadless area protections was "purely procedural" and covered by a categorical exclusion for "routine administrative procedures" similar to the exclusion invoked here. *Id.* at 894. The repealing rule, the Court concluded, constituted a "new regime," altering the "environmental status quo," and accordingly was a major federal action requiring further NEPA review under 40 C.F.R. § 1508.18. *Id.* at 895, 899. Here, too, the Court should conclude that the Services violated NEPA in promulgating a

new regulatory regime that significantly altered the status quo under an inapplicable categorical exclusion without any NEPA review.

II. THE COURT SHOULD SET A REMAND SCHEDULE AND DEADLINE.

In addition to a ruling on merits, Plaintiffs ask the Court to alter its judgment to set a remand schedule and deadline for the Services' rulemaking proceedings on remand to ensure that the Services' stated intent to reconsider and revise the 2019 ESA Rules is accomplished in a timely and transparent manner. As the Ninth Circuit has recognized, so long as the Court does not prescribe the substantive outcome of the inquiries, it can direct many of the procedures and activities the Services must undertake on remand. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937 (9th Cir. 2008) (upholding remand order imposing deadline and requiring status reports and coordination with states and tribes as Service developed a new decision on remand). "The district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Alaska Ctr. for the Env't v. Browner,* 20 F.3d 981, 986 (9th Cir. 1994).

The Court's "broad latitude" to guide the remand process encompasses the reasonable procedural steps Plaintiffs request here: a one-year deadline for the remand and quarterly progress reports from the Services to the Court and the parties. *Id.* Transparency is especially important for broad, high-visibility, nationwide regulations such as the 2019 ESA Rules, and yet the Services have not been forthcoming. While the Services publicly announced their intent to revise the 2019 ESA Rules in June 2021, almost six months later they informed Plaintiffs and the Court that they had ceased work on revised rules entirely. ECF 146-1, Third Frazer Decl. ¶¶ 12–13; ECF 146-2, Fourth Rauch Decl. ¶¶ 9–10. A deadline and regular reporting will ensure the Services' prompt compliance with this Court's order while simultaneously reducing the harm to both Plaintiffs and Intervenors by eliminating any ongoing regulatory uncertainty and providing timely public notice and opportunity for all interested parties to comment on the proposed revised rules under the Administrative Procedure Act.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Rule 59(e) motion and amend its Order and Judgment to resolve the NEPA claims on the merits to conserve judicial resources, prevent prejudice to Plaintiffs and harm to listed species and their habitat, provide additional support for the Court's finding on the first *Allied-Signal* factor, and guide the Services' NEPA review on remand. In addition, Plaintiffs ask the Court to impose a deadline of one year on any remand and require quarterly status reports from the Services.

Respectfully submitted this 28th day of July, 2022.

*s/ Kristen L. Boyles*
KRISTEN L. BOYLES (CSBA # 158450)
PAULO PALUGOD (WSBA # 55822)*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
Ph: (206) 343-7340
kboyles@earthjustice.org
ppalugod@earthjustice.org

ANDREA A. TREECE (CSBA # 237639)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111
Ph: (415) 217-2089
atreece@earthjustice.org

*Attorneys for Plaintiffs Center for Biological Diversity, Defenders of Wildlife, Sierra Club, National Parks Conservation Association, WildEarth Guardians, and The Humane Society of the United States*

REBECCA RILEY (ISBA # 6284356)*
NATURAL RESOURCES DEFENSE COUNCIL
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
Ph: 312-651-7900
rriley@nrdc.org

*Attorney for Natural Resources Defense Council*

KARIMAH SCHOENHUT (DCB #1028390)*
SIERRA CLUB
50 F. St. NW, 8th Floor
Washington, DC 20001
Ph: 202-548-4584
karimah.schoenhut@sierraclub.org

*Attorney for Sierra Club*

RYAN ADAIR SHANNON (OSB # 155537)*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
Ph: 503-283-5474 ext. 407
rshannon@biologicaldiversity.org

*Attorney for Center for Biological Diversity*

**Admitted pro hac vice*

CERTIFICATE OF SERVICE

I hereby certify that on today's date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Dated: July 28, 2022.

*s/ Kristen L. Boyles*
KRISTEN L. BOYLES (CSBA # 158450)