UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DEB HAALAND, et al.,<br><br>　　　　Defendants,<br><br>　　and<br><br>AMERICAN FARM BUREAU FEDERATION, et al.,<br><br>　　　　Defendant-Intervenors. | Case No. 19-cv-05206-JST<br><br>**AMENDED ORDER GRANTING MOTION TO REMAND**<br><br>Re: ECF No. 146 |
| STATE OF CALIFORNIA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>DEB HAALAND, et al.,<br><br>　　　　Defendants,<br><br>　　and<br><br>STATE OF ALABAMA, et al.,<br><br>　　　　Defendant-Intervenors. | Case. No. 4:19-cv-06013-JST<br><br>Re:  ECF No. 165 |

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>  Plaintiff,<br><br>v.<br><br>DEB HAALAND, et al.,<br><br>  Defendants,<br><br>  and<br><br>STATE OF ALABAMA, et al.,<br><br>  Defendant-Intervenors. | Case No. 4:19-cv-06812-JST<br><br>Re: ECF No. 109 |

Before the Court is a motion to remand without vacatur filed by Defendants Deb Haaland, U.S. Fish and Wildlife Service, Gina Raimondo, and National Marine Fisheries Service (collectively "the Services"). ECF No. 165. The Court will grant the motion for remand.[1]

I.  **BACKGROUND**

   A.  **The Endangered Species Act**

The Endangered Species Act ("ESA") "was enacted in 1973 to prevent the extinction of various fish, wildlife, and plant species." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003). The ESA aims "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The ESA represents "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). It reflects "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Id.* at 185. "The responsibility for administration and enforcement of the ESA lies with the Secretaries of Commerce and Interior,

---

[1] The Services filed identical motions in all three related cases: *Center for Biological Diversity v. Haaland*, No. 19-cv-05206-JST (N.D. Cal.); *State of California v. Haaland*, No. 19-cv-6013 (N.D. Cal.), and *Animal Legal Def. Fund v. Haaland*, 19-cv-06812 (N.D. Cal.). ECF No. 146 at 9 n.2 ("Federal Defendants are filing an identical motion and memorandum in all three cases."). The Court refers to the cases collectively in the singular tense.

who have delegated the responsibility to the [National Marine Fisheries Service ("NMFS")] with respect to marine species, and to the Fish and Wildlife Service ("FWS") with respect to terrestrial species." *Turtle Island*, 340 F.3d at 973-74 (citing 50 C.F.R. § 402.01).

To accomplish its purposes, the ESA "sets forth a comprehensive program to limit harm to endangered species within the United States." *California ex rel. Lockyer v. U.S. Dept. of Agriculture*, 575 F.3d 999, 1018 (9th Cir. 2009). Section 4 of the ESA requires NMFS and FWS to identify endangered and threatened species and designate their "critical habitats." 16 U.S.C. 1533(a)(1)-(3).[2] Section 7 "imposes a procedural duty on federal agencies to consult with either the [NMFS] or the FWS before engaging in a discretionary action, which may affect listed species."[3] *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)). This consultation procedure aims to allow the Services "to determine whether the federal action is likely to jeopardize the survival of a protected species or result in the destruction of its critical habitat, and if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." *Id.* (citing 16 U.S.C. § 1536(b)(3)(A)). And Section 9 prohibits the "take" (e.g. killing, harassing, harming, or collecting) of listed endangered fish and wildlife species and prohibits other actions with respect to listed endangered plant species. 16 U.S.C. §§ 1532, 1538. Section 4(d) authorizes the extension of Section 9 prohibitions to threatened species. *Id.* § 1533(d).

### B. Procedural History

In August 2019, the Services enacted a series of regulations that modified how the Services implement the ESA (collectively "2019 ESA Rules"). The Listing Rule, 84 Fed. Reg. 45,020, modified how the Services add, remove, and reclassify endangered or threatened species and the criteria for designating listed species' critical habitat. The Blanket Rule Repeal, 84 Fed. Reg.

---

[2] The Act charges the Secretary of the Interior and Secretary of Commerce with this authority, 16 U.S.C. § 1532(15), but each has (respectively) delegated this authority to the FWS and NMFS. 50 C.F.R. § 402.01(b). For simplicity, this order refers to the Services and not the Secretaries, and distinguishes between the NMFS and FWS only when relevant.

[3] "When the acting agency is either the [NMFS] or the FWS, the obligation to consult is not relieved, instead, the agency must consult within its own agency to fulfill its statutory mandate." *Turtle Island*, 340 F.3d at 974 (citing 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14, 402.01(b)).

44,753, eliminated the FWS's former policy of automatically extending to threatened species the protections against "take" that Section 9 automatically affords to endangered species. And the Interagency Consultation Rule, 84 Fed. Reg. 44,976, changed how the Services work with federal agencies to prevent proposed agency actions that could harm listed species or their critical habitat.

Soon after the regulations were finalized in 2019, Plaintiffs – environmental groups, states, and cities – challenged the 2019 ESA Rules as unlawful, arguing that they violate the ESA, the Administrative Procedure Act ("APA"), and the National Environmental Policy Act ("NEPA"). The Services moved to dismiss all three cases on standing and ripeness grounds. ECF No. 33. The Court granted the motions with respect to some plaintiffs and denied them as to other plaintiffs. The latter group of plaintiffs were granted leave to amend and then filed amended complaints, which the Services answered. The Court also granted motions to intervene filed by a different group of states ("State Intervenors"),[4] private landowners ("Landowner Intervenors"),[5] and various industry groups ("Industry Intervenors")[6] (collectively "Intervenor-Defendants").

On January 19, 2021, Plaintiffs in each case filed motions for summary judgment. *E.g.*, ECF No. 116. The next day, President Biden signed Executive Order 13990 (titled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis"), directing the Services to evaluate and, where appropriate, revise or rescind environmental and public health-related regulations that issued during the prior four years that conflicted with national objectives set forth in the Order. 86 Fed. Reg. 7037 (Jan. 20, 2021). In a publication accompanying the Executive Order, the White House specifically directed the Services to review the 2019 ESA Rules challenged in this case. As a result of the Services' review of these

---

[4] These intervenors are the states of Alaska, Arizona, Idaho, Kansas, Montana, Nebraska, West Virginia, and Wyoming.

[5] These intervenors are Ken Klemm, the Beaver Creek Buffalo Company, the Washington Cattlemen's Association, and the Pacific Legal Foundation.

[6] These intervenors are the American Farm Bureau Federation, the American Forest Resource Council, the American Petroleum Institute, the Federal Forest Resource Coalition, the National Alliance of Forest Owners, the National Association of Home Builders, the National Cattlemen's Beef Association, and the Public Lands Council.

regulations, on June 4, 2021, FWS announced its intent to rescind the Section 4(d) Rule and the Services announced their intent to revise the Section 4 and Section 7 Rules.

Once the new presidential administration signaled that it would reevaluate the 2019 ESA Rules and rescind many of them, the parties agreed to a series of litigation stays, which lasted a total of 150 days. Because the Plaintiffs were then unwilling to agree to further stays, the Services filed a motion to stay in August 2021. In October 2021, the Court denied the motion to stay, finding that there was at least "a fair possibility that [a] stay will work damage" because of the continuing applicability of the challenged regulations. ECF No. 145 at 21-23. The Court lifted the parties' stipulated stay and restored the summary-judgment briefing schedule to calendar.

Plaintiffs then renoticed their motions for summary judgment. In response, the Services filed this motion to remand without vacatur. Plaintiffs oppose the Services' motion, asking that the Court either (1) remand with vacatur – Plaintiffs' preferred outcome – or (2) deny the Services' motion altogether and resume summary judgment briefing so the matter can be adjudicated on the merits. The Intervenor-Defendants largely support remand without vacatur.

## II.     JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

When an agency's action is challenged in federal court, "it may seek remand [of the challenged regulations] even absent any intervening events, without confessing error, to reconsider its previous position." *In re Clean Water Act Rulemaking*, No. CV-20-04636 WHA, 2021 WL 4924844, at *4 (N.D. Cal. Oct. 21, 2021). "Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012).

In determining whether to vacate agency action concurrently with remand, the Court considers two factors: how serious the agency's errors are and "the disruptive consequences of an interim change that may itself be changed." *Id.* (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Com'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993)) (internal quotation marks omitted). In analyzing the first factor, courts assess "whether the agency . . . could adopt the same rule on

remand, or whether [the] fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council v. E.P.A.*, 806 F.3d 520, 532 (9th Cir. 2015). "[C]ourts in the Ninth Circuit decline vacatur only in rare circumstances." *Klamath-Siskiyou*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (citing *Humane Soc'y v. Locke,* 626 F.3d 1040, 1053 n.7 (9th Cir. 2010)). "Vacatur is the presumptive remedy." *Hunters v. Marten*, 470 F. Supp. 3d 1151, 1181 (D. Mont. 2020), *appeal dismissed sub nom. Helena Hunters & Anglers Ass'n v. Marten*, No. 20-35771, 2020 WL 8678109 (9th Cir. Dec. 28, 2020) (citation omitted).

## IV. DISCUSSION

### A. Motion for Remand

No party argues that the Services' request for remand in this case is frivolous or in bad faith. The Court grants the Services' motion for remand.

### B. Vacatur

The Court next turns to the question of vacatur. The Court must first address the threshold question of whether the Court can vacate the 2019 ESA Rules without fully adjudicating the merits of Plaintiffs' claims. The Court concludes that it cannot grant pre-merits vacatur on voluntary remand. *See Louisiana v. American Rivers*, 142 S. Ct. 1347 (2022) (mem.) (granting application for stay of district court pre-merits vacatur order); *In re: Wash. Cattlemen's Ass'n*, No. 22-70194, 2022 WL 4393033 (9th Cir. Sept. 21, 2022).

## CONCLUSION

For the reasons stated above, the Court grants the Services' motion for voluntary remand. All other pending motions are denied as moot.

**IT IS SO ORDERED.**

Dated: November 16, 2022

_____
JON S. TIGAR
United States District Judge